**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
**Barbara Schwab, et al.,**

                **Plaintiffs,**

    -against-

**Philip Morris USA Inc., et al.,**

                **Defendants.**
-------------------------------------------------------X

**MEMORANDUM**
**and ORDER**
**04-CV-1945 (JBW)**

**GOLD, S., U.S.M.J.:**

Introduction

Plaintiffs bring this action under the RICO statute, 18 U.S.C. §§ 1961 *et seq.*, alleging, among other things, that defendants fraudulently represented that "light cigarettes" offered health benefits to smokers. Plaintiffs seek to certify a class of all purchasers of light cigarettes in the United States, and seek to recover on behalf of the class "economic damages stemming from their purchases of light cigarettes." First Am. Compl. ¶ 32.

Currently pending before the court is defendants' motion for leave to depose absent class members. Defendants seek to depose 650 absent class members – ten for each of 65 different brands of light cigarettes – in preparation for their opposition to plaintiffs' motion for class certification. In addition, defendants seek to depose at least 40,560 absent class members, the smallest number they contend will yield statistically significant results, as part of merits discovery.

Defendants do not explain in their moving papers how they intend to identify, make contact with and bring in tens of thousands of absent class member for deposition, or indicate the amount of time required to conduct the depositions they seek. However, during argument on

defendants' motion, which was held before me on May 6, 2005, defendants represented that absent class members could be identified from consumer lists defendants already maintain, and proposed that they be afforded one-half day of questioning for each deposition. Tr. of May 6, 2005 at 21-22.

Courts considering motions for leave to take discovery of nonrepresentative or absent class members have noted that such discovery is generally disfavored, but not *per se* unavailable. Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 1998 WL 241279, *1 (S.D.N.Y. May 12, 1998). Discovery of absent class members will be permitted only when "(1) the defendant demonstrates a clear need for the information ..., (2) the court is satisfied that the discovery requests are narrowly tailored to their purpose and (3) the discovery is not intended to, and will not, impose undue burdens on the absent class members." Id. See also McCarthy v. Paine Webber Group, Inc., 164 F.R.D. 309, 313 (D. Conn. 1995). The burden of persuading the court rests with the party seeking to take discovery of absent class members and is particularly heavy when depositions are sought. Redmond v. Moody's Investor Serv., 1995 WL 276150, *1 (S.D.N.Y. May 10, 1995). Thus, with respect to discovery of absent class members, "a number of courts ... deem document requests and interrogatories as preferable to depositions of [absent] class members." Laborers Local 17, *1. See also Transamerican Refining Corp. v. Dravo Corp., 139 F.R.D. 619, 621 (S.D. Tex. 1991).

### Discovery in Aid of Opposition to Class Certification

Defendants anticipate opposing class certification at least in part by arguing that there are critical questions of fact which are not common to the proposed class, and that the claims of the representatives are not typical of the absent class members. More specifically, defendants expect

to argue in opposition to class certification that different brands of light cigarettes are marketed to consumers and perceived by them differently, and that smokers of different light cigarette brands therefore may not properly be joined in a single class. Defendants further contend that at least ten smokers of each of the 65 brands of light cigarettes must be deposed for a meaningful showing on this point to be made.

Defendants have articulated a specific need for discovery from absent class members. It seems reasonable to expect that a court considering class certification in a fraud case would find it relevant if, as defendants claim, they are able to show significant differences in the health-related claims made by manufacturers, and in the resulting perceptions held by consumers, with respect to different brands of light cigarettes. Moreover, it seems reasonable to conclude that, as defendants assert, depositions of at least ten smokers of a particular brand are needed before meaningful inferences of differentiation may be drawn.

I do not agree, however, that defendants have demonstrated a need to depose smokers of each of the 65 different brands of cigarettes in issue. Rather, defendants' argument in opposition to certification will be made adequately if they are able to demonstrate for illustrative purposes that the degree of difference they claim exists with respect to a small number of brands. In the event the court finds evidence concerning a limited number of brands to be insufficient and seeks additional information about variation among brands, additional depositions may be approved at that time. Moreover, a half-day of questioning seems to be more than is necessary to develop testimony concerning the limited issues involved.

Accordingly, defendants' motion to take discovery of absent class members is granted to the extent that defendants will be permitted to select four brands of light cigarettes and to depose

3

ten absent class member smokers of each of the four brands selected. Each smoker shall be deposed for no longer than two hours, with defendants' total time for questioning lasting no longer than 90 minutes and any questioning by plaintiffs lasting no longer than 30 minutes. Defendants' motion is in all other respects denied.

Merits Discovery

As noted above, defendants seek to take a minimum of 40,560 depositions of non-smokers as part of merits discovery. Defendants assert that they require this discovery "to defend themselves by showing, for example, that particular class members or groups of class members never believed that light cigarettes were safer, purchased light cigarettes for reasons having nothing to do with tar yields or health concerns, or actually received lower tar and nicotine from light cigarettes." Defendants' Mem. in Supp. of Mot. for Leave to Obtain Discovery from Absent Class Members at 18. Defendants' expert statistician, William Wecker, opines that 40,560 depositions is the minimum number necessary for reasonably precise, statistically significant sampling. Wecker Decl., Ex. 1 to Defendants' Mot. for Leave to Obtain Discovery From Absent Class Members, ¶ 4.

Defendants were asked by the court during an earlier conference to consider surveys or questionnaires as an alternative to deposing absent class members. Although defendants assert that depositions will provide more complete and reliable information, this concern is inadequate to warrant the enormous undertaking defendants propose. There is no reason to believe that a properly conducted survey could not yield meaningful evidence on the points defendants seek to establish by deposing absent class members. Moreover, plaintiffs have made clear that they

intend to establish their case through expert testimony based upon statistical information drawn from survey data, and not by calling a parade of individual smokers to testify at trial. Defendants will have a fair opportunity to meet this proof with expert testimony of their own.

Defendants further argue that denying them this discovery and permitting plaintiffs to proceed with aggregate proof would violate their constitutional rights to due process and trial by jury. Defendants made these very arguments in prior tobacco litigation, and they were addressed in exhaustive detail and ultimately rejected by Senior United States District Judge Weinstein. See In re Simon II Litigation, 211 F.R.D. 86 (E.D.N.Y. 2002), rev'd on other grounds, __ F.3d __, 2005 WL 1052659 (2d Cir. May 6, 2005) (reversing district court's order certifying punitive damages class "because there is no evidence by which the district court could ascertain the limits of either the fund or the aggregate value of the claims against it, such that the postulated fund could be deemed inadequate to pay all legitimate claims," * 1, and specifically declining to address the propriety of "the district court's proposed statistical aggregation of proof." * 11).

Defendants contend that the district court's Simon II decision must be considered in light of the subsequent ruling by the Second Circuit requiring more individualized proof in Blue Cross and Blue Shield v. Philip Morris, 344 F.3d 211 (2d Cir. 2003), answer to certified question conformed to, 393 F.3d 312 (2d Cir. 2004). Defendants rely in particular on the discussion reported at 344 F.3d at 217-18, where the court expressed concern that plaintiff Empire had never provided "individualized information about the claims to which Empire alleged it was subrogated." When the entire discussion is read in context, however, it becomes clear that, at the point in its decision emphasized by defendants, the Second Circuit was concerned with the

5

common law principles governing subrogation actions and not with due process or jury trial rights. Moreover, the Second Circuit went on to hold in <u>Blue Cross</u> that plaintiffs' presentation of aggregated evidence of causation and harm, at least in connection with its direct claims, did *not* violate defendants' due process or jury trial rights, 344 F.3d at 225-27, and expressed concern that individualized proof might be necessary only when considering, as noted above, the common law elements of a subrogation claim, and again when addressing the requirements of New York State's consumer protection statute, N.Y. Gen. Bus. L. § 349. 344 F.3d at 228.

Defendants also express concern that the court may find the use of surveys and questionnaires inadequately reliable to support admissibility of the results at trial. However, Judge Weinstein, who is presiding over this case, has already indicated his willingness to receive survey evidence. <u>In re Simon II</u>, 211 F.R.D. at 149 ("Sampling and survey techniques are a well-accepted alternative for the trial judge facing crippling discovery and evidentiary costs."). Moreover, Judge Weinstein has entered an order in this case providing that depositions be kept to a minimum and authorizing the parties to "use written surveys in place of extensive depositions." Docket Entry 158. Finally, if defendants choose, they may share any survey protocol they develop with counsel for plaintiffs and solicit comments before the protocol is executed, and thereby have an opportunity to anticipate plaintiffs' objections and modify their protocol to meet them.

For all these reasons, defendants' motion for leave to take depositions of at least 40,560 absent class members is denied. This ruling is made without prejudice to defendants' right to

submit a more practical proposal for discovery of absent class members.

**SO ORDERED.**

_____/s/_____
**STEVEN M. GOLD**
**United States Magistrate Judge**

Brooklyn, New York
May 12, 2005

*C:\MyFiles\Schwab 051205.wpd*

7