UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x

BARBARA SCHWAB, et al.,

        Plaintiffs,

-against-

PHILIP MORRIS USA INC., et al,

        Defendants.

----------------------------------------------------------x

MEMORANDUM
04-CV-1945

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JUN 07 2005 ★

BROOKLYN OFFICE

APPEARANCES:

For Plaintiffs:

    Cohen, Milstein, Hausfeld & Toll
    1100 New York Avenue, N.W.
    Washington D.C. 20005
    By:    Michael D. Hausfeld
           Brent W. Landau
           James J. Pizzirusso

For Defendant Philip Morris USA, Inc.:

    Arnold & Porter
    555 Twelfth Street, N.W.
    Washington D.C. 20004
    By:    Murray R. Garnick
           Judith Bernstein-Gaeta

For Defendant R.J. Reynolds Tobacco Company:

    Jones Day
    901 Lakeside Avenue
    Cleveland, Ohio 44114
    By:    Mark A. Belasic



For Defendant British American Tobacco Ltd.:

> Chadbourne & Parke
> 30 Rockefeller Plaza
> New York, New York 10112
> By: Joseph G. Falcone

For Defendant Liggett Group, Inc.:

> Kasowitz, Benson, Torres & Friedman
> 1633 Broadway
> New York, New York 10019
> By: Leonard A. Feiwus
> Julie R. Fischer

JACK B. WEINSTEIN, Senior United States District Judge:

This memorandum continues the conversation at the May 26, 2005 hearing. It is based on prior proceedings and the Memorandum in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Co-Lead Counsel ("Plaintiffs' Motion"). Discovery, preparation of defendants' papers in response to the Plaintiffs' Motion, and preparation for the scheduled September 12, 2005 hearing on Plaintiffs' Motion go forward. The court has some preliminary reflections and questions. They are listed below, but not necessarily in order of importance. None of them should suggest that the court has any preconceptions about cogency or answers.

1. Does a civil suit under RICO, for monetary loss based on the price paid for a product sold in violation of federal mail and wire fraud substantive law, split a cause of action for the physical or other harm caused by use of the product based on fraud under state substantive law? Can members of the present putative class of plaintiffs recover on a federal RICO "loss of value" theory while they and others sue, or can sue, separately for physical damages or other claims

under various state laws? *Compare Price v. Phillip Morris*, No. 00-L-112, 2003 WL 22597608 (Ill. Cir. Mar. 21, 2003) (10.1 billion dollars for deceptive marketing of "light" cigarettes), *with In re Simon II Litig.*, 407 F.3d 125, 138 (2d Cir. 2005) ("In certifying a class that seeks an assessment of punitive damages prior to an actual determination and award of compensatory damages [for physical harm], the district court's Certification Order would fail to ensure that a jury will be able to assess an award that, in the first instance, will bear a sufficient nexus to the actual and potential harm to the plaintiff class, and that will be reasonable and proportionate to those harms."). The *Price* case, like the instant case, contained no claims for personal injury or addiction. *See Miles v. Philip Morris*, No. 00-L-112, 2001 WL 34366710, at *1 (Ill. Cir. Feb. 1, 2001). The court in *Price* rejected defendants' challenge of splitting. *Id.* at *3.

The RICO statute relied upon by plaintiffs appears to preclude personal injury awards so that physical harms could not be compensated for under that federal substantive provision. *See* 18 U.S.C. § 1963(c) ("Any person *injured in his business or property* by reason of a violation of section 1962 [prohibited activities] of this chapter may sue . . . .") (emphasis added). State substantive law would be required for such recoveries, would it not? *See 2., infra.*

2. Assuming there were a settlement in the instant case, what would be the nature and scope of the release? Would it be possible for the release to encompass theories of fraud and related theories in personal injury cases arising out of what is essentially the same charged "lights" cigarette fraud? *See 1., supra.* Would the class have to be extended, with additional representatives and counsel, to provide in essence two major subclasses as follows:

> A. Those who claim economic damages for reduced value received as "defrauded" purchasers of "lights" under RICO; and

3

B. Those who assert fraud or related theories in personal injury cases claiming physical, emotional, and related damages as purchasers and users of "lights" under state laws?

What would be the effect of a class action so modified on other "lights" actions pending or threatened based on the law of various states?

3. Returning to the issue raised in 1., *supra*, the court reads plaintiffs' present claims as based on a simple RICO-federal-mail-wire-fraud concept rather than on state substantive consumer fraud law. Nevertheless, the court is not clear on the relationship between the two sets of fraud laws – federal and state. Can, and if so should, the instant class action exclude fraud claims based on the consumer fraud law of jurisdictions such as that in *Price* and other such suits commenced and not yet commenced? Can the damages for a single fraud transaction (no matter how extensive) be recovered both under non-state RICO substantive federal mail-wire fraud law *and* under state fraud and other law?

Does a loss by defendant under state consumer fraud law, as in *Price*, which is arguably essentially the same as RICO-federal-mail-wire-fraud substantive law in its primary elements, have a collateral estoppel effect preventing the losing defendant from contesting the same elements of the RICO fraud claim?

What, if any, collateral estoppel effect would there be in a loss by defendants in the RICO case by the government in *United States v. Phillip Morris*, 99-CV-02496 (D.D.C.)? *See, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) (offensive collateral estoppel).

Does a win by plaintiffs under either federal or state law result in precluding another claim based on the same fraud under the other law? Thus, for example, if *Price* stands up on

4

appeal, would sales of light cigarettes in Illinois during the Illinois conspiracy period be excluded from the recovery base in the instant case? *See, e.g., Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991) (collateral estoppel and double recovery); *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (choice of law in collateral estoppel); *Bajwa v. Metropolitan Life Ins. Co.*, 208 Ill.2d 414 (2004) (Illinois collateral estoppel rule). Would the Illinois class have to be carved out of the present RICO class (as it appears to be in paragraph 32 of the first amended complaint)?

4. Assuming that a single federal substantive theory applies under RICO, does each state's law have any application at all under that theory? If so, how are they related?

5. *If* individual state substantive law has some bearing under A. or B. of 2., *supra*, which states do members of the class fit into – the states where they resided at the commencement of the suit, where they were smoking, etc.? In *Price* the state where the cigarettes were bought was apparently deemed crucial in figuring class damages. *See Price v. Phillip Morris*, No. 00-L-112, 2003 WL 22597608, at *17 (Ill. Cir. Mar. 21, 2003).

6. *If* individual state substantive law has some bearing under A. or B. of 2., *supra*, can groups of states be treated as providing essentially the same substantive law, and how much difference does that characterization tolerate? Are class representatives from states or groups of states with different substantive rules required?

7. *If* plaintiffs in the instant case win on their present single RICO theory, will any future state punitive damages then be available in view of the fact that RICO provides a form of punitive damages in its multiplication provision? *See* 18 U.S.C. § 1964(c). How does individual state substantive punitive damages law (as limited by federal constitutional law) impact on this issue, if at all? Would a treble RICO recovery prevent punitive state law damages in future state

law based claims? *Cf. Simon II* in 1., *supra*. Would punitive damages already awarded or yet to be awarded in state based claims preclude RICO trebling?

8. *If* plaintiffs in the instant case win, how can or should a recovery be divided? Will a disbursing facility be required, and if so, what will be its method and plan of operations?

9. *If* individual state law differences have some bearing on the present single RICO theory, can the experts estimate the numbers of lights smokers and damages by different states or groups of states?

10. How should the jury be charged in the case as it now stands? Will the plaintiffs draft a proposed charge in time for the September 12 hearing so that the viability of the litigation can be better evaluated? Should there be special findings? If so, how should they be phrased? Note that *Price* was non-jury with findings by the court.

11. For argument's sake only, accepting Parts I, II, and III of the statement of "facts" in Plaintiffs' Motion as true, and assuming that named plaintiffs are appropriate representatives, and that they and counsel satisfy all Rule 23 requirements, how do plaintiffs propose to confront the legal and administrative problems of certifying, notifying, and trying the case? As one class? As a consolidation of subclasses? As excluding persons recovering in other actions? *See* 1. and 2., *supra*, and 21., *infra*. A detailed proposed litigation plan to help the court decide on the litigation's practicability might be helpful.

What evidence can the court consider in deciding certification questions? *See* May 26, 2005 Trans. at 21.

12. Assuming for argument's sake only that plaintiffs' factual claims are supported – *i.e.*, that defendants have conspired to commit a continuing fraud on "lights" smokers knowing that

6

many would die or suffer from diseases, in order to make profits on cigarettes they sold as "safer" than prior cigarettes, thus defrauding those who bought the cigarettes of the difference between the value they thought they were getting and that they received – is some procedural modification on proof or burdens of proof available? *See* May 26, 2005 Trans. at 26.

13. Plaintiffs' Motion was filed under "seal." Why? The courts discourage unnecessary sealing particularly in a matter of public interest such as a national class action.

14. Can discovery and evidence in other cases be used in the present case against defendants to reduce costs? Against plaintiffs?

15. Is it possible to try the case in whole or in part on stipulated facts and experts' evidence or on written direct testimony or other appropriate techniques? What classes and number of witnesses and classes of evidence does either side plan to provide at the trial?

16. What public reports and other data can be introduced without further witnesses at trial?

17. Can a conspiracy theory support evidence of statements (admissions) of some defendant parties and non-parties against other defendants? Which ones? Are there two conspiracies – one for "lights," and an earlier one for "regulars" – and do both, either, or neither provide a basis for evidence admissibility against all or some members of the conspiracy? *See* Rule 801(d)(2)(E) of the Federal Rules of Evidence.

18. To what extent can experts project the behavior of plaintiffs or defendants as a group or sub-group based on samples? How should such samples be selected? How should sample information be obtained – by questionnaire, deposition, a mix, etc.?

19. If members of the class would have smoked anyway (perhaps because they were

addicted or for other reasons), what monetary loss did they suffer by buying "lights" instead of regular cigarettes at what was essentially the same price?

20. What relevant knowledge, reliance, motivation, differences in methods of smoking, or other factors can be attributed to all or some members of the class, and how can partial knowledge or other differences attributable to some class members be translated into impact on possible monetary damages of the class? Would these factors affect distribution of possible proceeds? *See* 8., *supra*.

21. In viewing the alleged conspiracy and alleged congeries of tobacco cigarette harms from a transactional perspective, *see* 12., *supra*, might the totality of possible claims be approached in a variety of ways to take into account various state and federal causes of action and differing effects on individual smokers? In light of the fact that limited cases have been brought on different theories with different individuals and classes of aggrieved persons, is a rational solution to the broad controversy, while perhaps difficult, possible? Have the tactics of defendants' and plaintiffs' counsel in cigarette cases as well as the rulings of courts suggesting limits on a unified approach to a mass tort created the risk of duplication and splitting? Would that strategic and tactical history prevent an appropriate disposition of the instant and related litigations? *See, e.g.*, 1. and 3., *supra*, on splitting a cause of action and double recovery.

Jack B. Weinstein
Senior United States Judge

Dated: Brooklyn, N. Y.
June 6, 2005