## TABLE OF CONTENTS

TABLE OF AUTHORITIES  ii

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT .............................................................................................................................. 5

      THE VERDICT IN *HENLEY* FINDING THAT
      PHILIP MORRIS CONSPIRED TO DEFRAUD
      THE PUBLIC ABOUT THE HEALTH HAZARDS
      OF SMOKING PRECLUDES PHILIP MORRIS
      FROM RELITIGATING THEIR PARTICIPATION
      IN THE SAME ALLEGED CONSPIRACY IN
      THIS ACTION. .................................................................................................... 5

      A.     Parties May Not Relitigate Issue Previously
             Adjudicated After Having a Full and Fair
             Opportunity to Be Heard ............................................................................ 6

      B.     The Conspiracy that the *Henley* Jury Found
             Philip Morris Engaged in is Identical to that
             Pled Here by Plaintiffs ............................................................................... 9

      C.     Estopping Philip Morris Would Not Be Unfair ......................................... 12

CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen v. McCurry*,
   449 U.S. 90 (1980) ............................................................................................. 6, 7

*Beck v. Levering*,
   947 F.2d 639 (2d Cir. 1991) ................................................................................ 6

*Beck v. Prupis*,
   529 U.S. 494 (2000) ............................................................................................ 12

*Blue Cross Blue Shield of New Jersey v. Philip Morris, Inc.*,
   113 F. Supp. 2d 345 (E.D.N.Y. 2000) ................................................................ 9

*Blue Cross Blue Shield of New Jersey v. Philip Morris, Inc.*,
   36 F. Supp. 2d 560 (E.D.N.Y. 1999) .................................................................. 11

*Blue Cross Blue Shield of New Jersey v. Philip Morris, Inc.*,
   178 F. Supp. 2d 198 (E.D.N.Y. 2001) ................................................................ 12

*Cipollone v. Liggett Group, Inc.*,
   693 F. Supp. 208 (D.N.J. 1988) ......................................................................... 13

*DeGennaro v. Town of Riverhead*,
   836 F. Supp. 109 (E.D.N.Y. 1993) ..................................................................... 7

*GAF Corp. v. Eastman Kodak Co.*,
   519 F. Supp. 1203 (S.D.N.Y. 1981) ................................................................... 13

*Haines v. Liggett Group, Inc.*,
   140 F.R.D. 681 (D. N.J. 1992), *rev'd on other grounds*, 975 F.2d 81 (3d
   Cir. 1992) ........................................................................................................... 14

*In re Ivan F. Boesky Sec. Litigation*,
   848 F. Supp. 1119 (S.D.N.Y. 1994) .................................................................... 6

*Kremer v. Chemical Construction Corp.*,
   456 U.S. 461 (1982) ............................................................................................ 6

*Migra v. Warren City School Dist. Bd. of Ed.*,
   465 U.S. 75 (1984) ............................................................................................. 7

*Parklane Hosiery Co. v. Shore,*
    439 U.S. 322 (1979) .................................................................................. 7, 8, 12

*Philip Morris, Inc. v. Henley,*
    125 S. Ct. 1640 (2005) ..................................................................................... 5, 9

*Philip Morris USA, Inc., v. Henley,*
    125 S. Ct. 376 (2004) .......................................................................................... 4

*Tillman v. National City Bank of New York,*
    118 F.2d 631 (2d Cir. 1941) ............................................................................... 6

*United States v. Turkette,*
    452 U.S. 576 (1981) ......................................................................................... 8, 9

## STATE CASES

*Bernhard v. Bank of America,*
    122 P.2d 892 (Cal. 1942) ................................................................................ 7, 15

*Clemmer v. Hartford Insurance Co.,*
    587 P.2d 1098 (Cal. 1978) ................................................................................. 15

*Engle v. Philip Morris, Inc., et al,*
    No. 94-082732000 WL 33534572 (Fla. Cir. Ct. Nov. 16, 2000),
    *rev'd on other grounds*, sub nom. *Liggett Group Inc. v. Engle,*
    853 So. 434 (Fla. Dist. Ct. App. 2003) ............................................................. 13

*Engle v. Philip Morris, Inc.*
    873 So. 2d 1222 (Fla. 2004) .............................................................................. 13

*Henley v. Philip Morris, Inc.,*
    9 Cal. Rptr. 3d (Cal. Ct. App. 2004) ........................................................ *passim*

*Henley v. Philip Morris, Inc.,*
    88 P.3d 497 (Cal 2004) ........................................................................................ 5

*Henley v. Philip Morris Inc.,*
    97 P.3d 814 (2004) ............................................................................................... 4

*Henley v. Philip Morris, Inc.,*
    113 Cal. Rptr. 2d 494 (Cal. Ct. App. 2001) ................................................. 2, 14

*Henley v. Philip Morris, Inc.*,
    No. 995172, 1999 WL 221076 (Cal. Ct. App. Apr. 6, 1999) .................................. *passim*

*Henley v. Philip Morris, Inc.*,
    9 Cal. Rptr. 3d (Cal. Ct. App. 2004) ....................................................................... *passim*

*Imen v. Glassford*,
    201 Cal. App. 3d 898, 247 Cal. Rptr. 514 (Cal. Ct. App. 1988) ..................................... 13

*Mountain Home Props. v. Pine Mountain Lake Ass'n.*,
    185 Cal. Rptr. 623 (Cal. Ct. App. 1982) .......................................................................... 7

*People v. Taylor*,
    527 P.2d 622 (Cal. 1974) ............................................................................................... 15

*Sprague v. Equifax, Inc.*,
    213 Cal. Rptr. 69 (Cal. Ct. App. 1985) .......................................................................... 12

*Taylor v. Hawkinson*,
    306 P.2d 797 (Cal. 1957) ............................................................................................... 15

## FEDERAL STATUTES

18 U.S.C. § 1962(c) ................................................................................................... 6, 10

18 U.S.C. § 1962(d) ......................................................................................................... 6

Fed. R. Civ. P. 56 .............................................................................................................. 4

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BARBARA SCHWAB et al., individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. CV 04-1945 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| PHILIP MORRIS USA, INC. et al., | ) |  |
|  | ) |  |
| Defendants. | ) ) |  |

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR COLLATERAL
ESTOPPEL AND PARTIAL SUMMARY JUDGMENT

## INTRODUCTION

Defendants engaged in a fifty-year conspiracy to deceive the American public about the health effects of smoking. (The "Conspiracy") Second Am. Compl., ¶ 2. The Conspiracy entailed, among other things, misleading consumers on the health risks of smoking; staunching efforts to market safer cigarettes; and suppressing information on compensation that would undermine their implicit marketing of "light" cigarettes as safer. Defendants carried out the Conspiracy through trade organizations and industry groups, such as the Tobacco Institute, and the Center for Tobacco Research in the United States, and CORESTA, and INFOTAB, overseas.

In *Henley v. Philip Morris, Inc.*, No. 995172 (Ca. Super. Ct., San Francisco) a jury found

that Defendant Philip Morris engaged in a conspiracy to defraud: to conceal or suppress, or to

misrepresent information regarding the health effects of cigarettes smoking.  Philip Morris had a

full and fair opportunity to litigate that issue, appealed the verdict all the way to the U.S.

Supreme Court, and at long last, lost.  Since the conspiracy at issue in *Henley* is identical to the

Conspiracy alleged herein, Plaintiffs seek summary judgment as to their claim that Defendant

Philip Morris conspired to violate RICO by defrauding the public on smoking and health.

## STATEMENT OF FACTS

On February 10, 1999, a California jury found for Patricia Henley in a suit against Philip

Morris, Inc., the predecessor-in-interest of Defendant Philip Morris, USA, Inc..  Henley had

smoked Marlboro, and then Marlboro Lights.  Her decision to switch to Marlboro Lights was

summarized by a California appellate court as follows:

> Plaintiff's first regular brand of cigarettes was Marlboro, and it remained her
> favorite brand throughout almost all of her 35-year smoking history.  From age 15
> until she was about 43 years old (around 1989), she apparently smoked one-and-a-
> half to two packs a day of "Marlboro Red," a brand rated to deliver relatively high
> amounts of tar and nicotine.  At that age, however, she switched to Marlboro
> Lights, a lower-tar brand, on what the jury was entitled to view as the direct
> advice of a Philip Morris agent.  Plaintiff testified  that around that time she began
> to hear that "low-tar cigarettes were better.  You wouldn't get as much tar and
> nicotine and, you know, their advertising on the low-tar cigarettes was really out
> there.  I'm thinking, 'Well, okay.  Maybe there's something to this.'  So when I was
> approximately 43, I decided that, 'Well, I'll check into this and maybe I'll change
> from the Reds to the Lights.'  So I did indeed call the Marlboro, Philip Morris
> company and expressed, you know, my concerns as to, 'Is it really true?  Is there
> less tar in this or less nicotine?'  And I was assured at the time that if I was
> concerned that, yes, I could switch to the Lights...."  She did so and, in a few
> weeks, had more or less doubled her intake, to three-and-a-half packs a day.

*Henley v. Philip Morris, Inc.*, 9 Cal. Rptr. 3d 29, 40-41 (Cal. Ct. App. 2004).  Henley had eight

causes of action which included intentional misrepresentation, fraudulent concealment, and

conspiracy to defraud, to wit, by concealment, suppression, or misrepresentation of the health

effects of cigarette smoking. *Id.* at 54. At the end of the trial, the jury was given a special verdict

form. As to the conspiracy count, the verdict had the following three questions:

> Question No. 1: Did defendant, Philip Morris, and other tobacco companies enter
> into an agreement to conceal or suppress, or to misrepresent, information
> regarding the health effects of smoking?
>
> Question No. 2: Was such an agreement entered into with the intent on the part of
> defendant Philip Morris, and the other tobacco companies to defraud the public,
> including plaintiff?
>
> Question No. 3: Did defendant, Philip Morris, or other tobacco companies,
> pursuant to such agreement, conceal or suppress, or misrepresent, information
> regarding the health effects of cigarette smoking with the intent to defraud the
> public, including plaintiff?

*See Henley v. Philip Morris Inc.*, No. 995172 (Cal. Super. Ct., San Francisco), Special Verdict

Form dated February 9, 1999 ("Special Verdict Form") (attached hereto at Ex. 1). The jury

checked "YES" as to each of the questions. *Id.* The jury also agreed that Ms. Henley did not

know the information the conspirators acted to conceal, and that such concealment caused her

damages. *Id.*

The jury found for Ms. Henley on all eight theories of liability, and awarded

compensatory and punitive damages in the amount of $51.5 Million. *Henley*, 9 Cal, Rptr. 3d at

38, 54. Defendant Philip Morris appealed the verdict in several courts at several levels. Philip

Morris moved for a new trial and for judgment notwithstanding the verdict on the grounds that

the jury's punitive damages award was excessive. *Henley v. Philip Morris Inc.*, No. 995172,

1999 WL 221076, *9 (Cal. App. Super. Apr. 6, 1999). The California Superior Court denied

Philip Morris's motion for a judgment notwithstanding the verdict and granted in part and denied

in part the motion for a new trial. *Id.* The court granted a motion for a new trial only as to

amount of punitive damages. *Id.* at \*6-\*7; *Henley v. Philip Morris Inc.*, 113 Cal. Rptr. 2d 494

(Cal. Ct. App. 2001) (affirming trial court).

On one of its appeals, Philip Morris challenged the trial court's instructions on the

conspiracy charge for its failure to inform jurors not to consider conduct after passage of the

Federal Cigarette Labeling Act on July 1, 1969. *Henley*, 9 Cal. Rptr. 3d at 53. The Court of

Appeals found Philip Morris fell "far short of demonstrating that an instruction barring liability

for conspiracy to conceal after 1969 would probably have affected the outcome." *Id.* at 53-54.

The court reasoned:

> The jury found for plaintiff on *all eight* legal theories embodied in the instructions
> ... The jury also found that defendant committed conspiracy to defraud by
> concealment, suppression, or misrepresentation of the health effects of cigarette
> smoking. Only one of these findings (conspiracy to commit fraudulent
> concealment) is affected by the alleged error before us, and it is only partially
> affected; a holding in defendant's favor would only mean the jury could not find
> for plaintiff on that theory on the basis of post-1969 conduct. On the face of the
> special verdict alone, it appears unlikely that such a limitation would have had any
> effect on the ultimate finding of liability.

*Id.* at 54. The court likewise rejected Philip Morris's appellate arguments that introduction of

documents pertaining to the conspiracy after 1969 prejudiced the jury. *Id.* at 54-55.

After reconsidering the evidence and Philip Morris's arguments, the court found sufficient

evidence existed to supported the jury's verdicts, including on the conspiracy to conceal count:

> Our review of the record satisfies us that there was substantial evidence, which
> defendant does not cogently dispute for purposes of this appeal, that it engaged in
> a conscious, deliberate scheme to deceive the public, and individual smokers and
> potential smokers (many or most of whom it knew to be adolescents), about the
> health hazards and addictive effects of cigarette smoking. **The jury could
> properly find that commencing no later than 1953 and continuing at least**

4

**until the time of plaintiff's diagnosis, defendant and other cigarette manufacturers acted both in concert and individually to issue innumerable false denials and assurances concerning the dangers of smoking, deliberately fostering a false impression by the public, or more precisely by smokers and prospective smokers, that assertions of health risk were overblown products of puritanical prejudice, that any real hazards had yet to be shown, and that the industry itself was acting and would act diligently to discover the scientific truth of the matter and promptly disclose its findings, good or bad**.

*Id.* at 62 (emphasis added).

After trial, Philip Morris filed several appeals at several appellate levels in California. *See, e.g., Henley v. Philip Morris Inc.*, 88 P.3d 497 (Cal. 2004) (petition to California Supreme court for further review); *Henley v. Morris*, 88 P.3d 497, (Cal. 2004) (deferring further action pending decision in another matter before the court); *Henley v. Philip Morris Inc.*, 97 P.3d 814 (Cal. 2004) (granting Henley's petition to dismiss appellate court's review). After losing them, Philip Morris successfully petitioned the Supreme Court of the United States for stay of remittitur pending disposition of the its petition for writ of certiorari. *Philip Morris USA, Inc., v. Henley*, 125 S. Ct. 376 (2004). On March 21, 2005, the United States Supreme Court denied Philip Morris's petition for writ of certiorari. *Philip Morris, Inc. v. Henley*, 125 S.Ct. 1640 (2005). Philip Morris has exhausted its appeals, and *Henley* is a final decision.

## ARGUMENT

### THE VERDICT IN *HENLEY* FINDING THAT PHILIP MORRIS CONSPIRED TO DEFRAUD THE PUBLIC ABOUT THE HEALTH HAZARDS OF SMOKING PRECLUDES PHILIP MORRIS FROM RELITIGATING THEIR PARTICIPATION IN THE SAME ALLEGED CONSPIRACY IN THIS ACTION.

There is no genuine issue as to any material fact and Plaintiffs are entitled to judgment as a matter of law as to the express finding of the jury in *Henley* – that Philip Morris conspired with

other tobacco companies to conceal or suppress, or to misrepresent information regarding the health effects of smoking.  Preclusion of this issue here permits the Court to enter partial summary judgment under Fed. R. Civ. P. 56 for Plaintiffs as to Philip Morris's participation in an "enterprise" under 18 U.S.C. § 1962(c) and a conspiracy to violate RICO under 18 U.S.C. § 1962(d).

A.    **Parties May Not Relitigate Issue Previously Adjudicated After Having a Full and Fair Opportunity to Be Heard**

The doctrine of collateral estoppel prevents previously litigated issues from being relitigated.  *Beck v. Levering,* 947 F.2d 639, 642 (2d Cir. 1991) (per curiam).  The objective of collateral estoppel is judicial finality; it fulfills "the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction."  *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982).

The Supreme Court has explained that the doctrine of collateral estoppel has a dual purpose: (1) to protect litigants from the burden of relitigating an identical issue with the same party or his privy; and (2) to promote judicial economy by preventing needless litigation.  *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979); *accord In re Ivan F. Boesky Sec. Litig.*, 848 F. Supp. 1119, 1122 (S.D.N.Y. 1994); *Tillman v. National City Bank of New York,* 118 F.2d 631, 634 (2d Cir. 1941).  "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  A party may assert collateral estoppel as a basis for summary judgment.  *Id.*

6

A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (*citing Allen,* 449 U.S. at 96); see also *DeGennaro v. Town of Riverhead*, 836 F. Supp. 109, 110 (E.D.N.Y. 1993). Thus, under *Migra,* this Court must determine whether a California state court would afford the preclusive effect of *Henley* sought here.

Under California law, a party is collaterally estopped from relitigating an issue already decided in a prior case if: (1) the issue decided in the previous litigation is identical with that presented in the instant action, (2) there was a final judgment on the merits in the first action, and (3) the party against whom the plea of collateral estoppel is asserted was a party to the first action. *Mountain Home Props. v. Pine Mountain Lake Ass'n.*, 185 Cal.Rptr. 623, 625 (Cal. Ct. App. 1982) (citing *Bernhard v. Bank of America*, 122 P.2d 892 (Cal. 1942)). A federal district court considering whether to grant collateral estoppel does so in its own discretion. *Parklane Hosiery,* 439 U.S. at 331.

In *Parklane*, the United States Supreme Court extended the application of collateral estoppel from purely "defensive" to "offensive" use.[1] Offensive use of a prior decision on an issue by a non-party against a party that lost that issue elsewhere was historically unavailable, and, at first blush, intrinsically unfair. *See* 439 U.S. at 331-32. However, when the losing party

---

[1]Historically, collateral estoppel was used "defensively," i.e., a party who had had a full and fair opportunity to litigate an issue determined by a prior judgment was estopped from relitigating the same issue in a subsequent action against a different defendant.

7

had a full opportunity to litigate the issue and had every incentive to litigate the matter, any inequity subsides, and judicial resources may be spared in denying the losing party a second bite at the apple. *Id.* Trial courts are afforded *wide latitude* in determining the propriety of offensive collateral estoppel. The court should consider if the non-party "could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant," a trial judge should not allow the use of offensive collateral estoppel. *Id.* at 331. Unfairness may also result to defendant if the judgment relied upon as a basis for estoppel is itself inconsistent with one or more previous judgments in favor of the defendant. *Id.* at 330.

Applying the legal principles set forth above, precluding Philip Morris from relitigating the conspiracy conforms to the law. Defendant Philip Morris USA, Inc., was the same party who litigated the conspiracy issue in *Henley*, despite the corporate name change.[2] In fact, some of the same counsel who argued the issue on appeal for Philip Morris are present in this case.[3] Moreover, finding a conspiracy to defraud existed was obviously necessary to uphold the verdict on that count. The California court of appeals upheld Henley's claim for "conspiracy to defraud," after considering Philip Morris's arguments about errant juror instructions and preemption. The court found sufficient evidence of a conspiracy, and the jury rendered a special verdict

---

[2]In 1967, Philip Morris, Inc. reorganized to create internal perating divisions, including Philip Morris Domestic, which was changed one year later to Philip Morris USA. On January 27, 2003, the Philip Morris Companies announced its name change to Altria, and the domestic division became Philip Morris USA, Inc.

[3]*Henley*, 9 Cal. Rptr. 3d at 38 (noting Murray R. Garnick and Robert A. McCarter, of Arnold & Porter, served as counsel for Philip Morris on its appeal).

8

identifying one. *Henley*, 9 Cal. Rptr. 3d at 53-55, 62. That there has been a final judgment also cannot be seriously contended, as the U.S. Supreme Court has denied Philip Morris's writ for certiori. *Philip Morris Inc. v. Henley*, 125 S. Ct. 1640 (2005). Therefore, estopping Philip Morris from relitigating the existence of a conspiracy hinges on (1) whether the conspiracy alleged herein is identical to that alleged in *Henley*, (2) whether offensive use of collateral estoppel would be unfair to Philip Morris. Neither of these two issues warrant permitting Philip Morris to relitigate the conspiracy issue.

## B. The Conspiracy that the *Henley* Jury Found Philip Morris Engaged in is Identical to that Pled Here by Plaintiffs.

As part of its RICO claims, Plaintiffs here allege that Philip Morris engaged "the inception of the light cigarette fraud alleged herein can be traced to Defendants' decades-long **Conspiracy to deceive the American public about the health effects of smoking** in order to preserve and expand the market for cigarettes and maximize profits from the manufacture and sale of cigarettes." Second Am. Compl. ¶ 2. (emphasis added). Plaintiffs allege two RICO counts, under §§ 1962(c) and 1962(d). A violation of section 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity .... In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'" *See, e.g., Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,* 113 F. Supp. 2d 345, 364 (E.D.N.Y. 2000) (Weinstein, J.) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The Supreme Court has identified three characteristics that must be established to prove a RICO enterprise: (1) it must be "an ongoing organization, formal or informal"; (2) it must function as a continuing unit; and

(3) it must be more than the "'pattern of racketeering activity'" -- that is, it must be "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Plaintiffs define the enterprise as consisting of "Defendants, their various agents, employees, and co-conspirators," through which "Defendants and their co-conspirators have sought to deceive the American public about the health effects of smoking." (Second Am. Compl. ¶ 41) The enterprise was formed as early as 1953 when the Defendants' presidents (with the exception of Liggett) met in New York and agreed to a strategy. (*Id.,* ¶ 42) As explained in the complaint, over the years since 1953, the Defendants have consistently implemented their strategy by, among other things, jointly creating, funding and participating in various research and public relations groups, such as the Tobacco Industry Research Committee ("TIRC") (later renamed the Council for Tobacco Research ("CTR")), the Tobacco Institute ("TI"), and various international organizations. These entities, were used as a means and conduit to meet and exchange information and to promulgate and perpetuate Defendants' deceptive scheme. These entities also provided supposedly independent platforms through which Defendants were able to jointly issue, via the mails and wires, false and misleading information to the public. (*Id.,* ¶ 47.)

This "enterprise" accords to the one the *Henley* jury found Philip Morris participated in. In fact, in describing the basis for the jury's verdict, Judge Munter described the same evidence:

> By way of further example of the nature of Philip Morris' conduct, the evidence showed that in 1954 Philip Morris and other cigarette manufacturers caused extensive nationwide publicity to be given to a jointly promulgated and issued press release entitled "A Frank Statement to Cigarette Smokers" (Trial Exhibit 16-20). In that statement, which appeared in hundreds of major metropolitan newspapers across the country, the cigarette companies jointly represented to the American public that there was no agreement among authorities regarding what is

10

the cause of lung cancer; that there was no proof that cigarette smoking is one of the causes; that the cigarette companies accept people's health as a basic responsibility, paramount to every other consideration in the business; that the cigarette companies believe that their cigarettes are not injurious to health; that the companies always have and always will cooperate closely with those whose task it is to safeguard the public health; that the companies pledged aid and assistance to the research effort into all phases of tobacco use and health; that these research activities would be supervised by distinguished and disinterested scientists of unimpeachable integrity and national repute; and, finally, that the statement was being issued because people were entitled to know where the cigarette companies stand on this matter and what they intend to do about it. In finding against Philip Morris on the plaintiff's claim of conspiracy, the jury apparently found that Philip Morris had no intent to perform these promises when made, and that it did not perform them thereafter. The jury likely found that, to the contrary, the research efforts were not objectively designed, performed or pursued, and that the public was not told what was known by, and became known to, Philip Morris about the health consequences of cigarette smoking. The evidence supported such findings.

*Henley*, 1999 WL 221076, at *3.

The jury in *Henley* found that "Philip Morris, and the other tobacco companies had entered into an agreement to conceal or suppress, or to misrepresent, information regarding the health effects of cigarette smoking." *See* Special Verdict Form at 16. As the next verdict question stated, the conspiracy was to "defraud the public, including plaintiff." *Id.* The jury then found that Philip Morris carried out the intent of the conspiratorial agreement and defrauded the public. *Id.* Implicit in the jury's verdict is that PM, an obvious separate entity, agreed to informally or formally work with the other tobacco companies, as a continuing unit for the shared purpose of defrauding the public on the health risks of smoking. *Cf.* 18 U.S.C. § 1962(c).

The *Henley* verdict also supports summary judgment as to the conspiracy element of § 1962(d). A conspiracy to scheme to defraud the American public of the health effects of smoking equates to a conspiracy to racketeer. *Blue Cross Blue Shield of New Jersey v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 567, 568 (E.D.N.Y. 1999) (denying dismissal of 1962(d) claim

11

based on allegations similar to Plaintiffs' herein).  The Supreme Court has held that, in a civil

RICO case, "the well established common law of civil conspiracy" applies.  *Beck v. Prupis*, 529

U.S. 494, 500-01 (2000).  Similarly, under California law, the element of the conspiracy in a

cause of action for "conspiracy to defraud" is identical to common law civil conspiracy.  *See, e.g.,*

*Sprague v. Equifax, Inc.*, 213 Cal. Rptr. 69, 89 (Cal. Ct. App. 1985) (upholding verdict in

"conspiracy to defraud" case, reciting with approval model jury instruction that "A civil

conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.").

Therefore, for the *Henley* case, and the case at bar, the unlawful schemes to defraud, and the

elements of common law civil conspiracy are identical.

From the record in *Henley* that the Conspiracy at issue is precisely the same overall

conspiracy at issue in this case.  Plaintiffs' motion seeks collateral estoppel as to Philip Morris's

conspiracy with the other tobacco companies to conceal, suppress, or misrepresent the health

effects of smoking as that pertains to Counts I and II of their Complaint.

## C.    Estopping Philip Morris Would Not Be Unfair.

The United States Supreme Court has observed that unfairness in the use of offensive

collateral estoppel may result when a defendant had little incentive to defend the first suit, when

there are inconsistent judgments, and when there are differing procedural opportunities in two

actions.  *Parklane Hosiery*, 439 U.S. 330.  Additionally, it held that "[t]he general rule should be

that in cases where a plaintiff could easily have joined in the earlier action . . . a trial judge

should not allow the use of offensive collateral estoppel."  *Id.* at 331.

First, Philip Morris had a substantial incentive to defend in *Henley*, which was not a case

for "small or nominal damages."  *Id.* at 330.  To the contrary, the *Henley* litigation resulted in an

12

jury award of $51.5 million. *Henley*, 1999 WL 221076, at *1. Plaintiff had requested $15 million in punitive damages. *Id.* On appeal, Philip Morris repeatedly argued that the punitive damage award, despite judicially ordered reductions, were excessive. Even after the California Court of Appeals further reduced the punitive damages award from $25 million to $9 million, 9 Cal. Rptr. 3d at 74-75, Philip Morris sought further review as detailed above. Philip Morris did challenge the scope of the trial court's jury instruction regarding the conspiracy to defraud claim. *Id.* at 52. Philip Morris's decision not to directly challenge the sufficiency of the jury's conspiracy finding does not affect the verdict's preclusive quality. *See GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1213 (S.D.N.Y. 1981) ("[T]he Court notes that the issues were vigorously litigated before [the trial court] and the jury. Failure to raise these issues on appeal does not alter their preclusive effect.").

Second, the result in *Henley* does not represent a wholly inconsistent finding regarding conspiracy against Philip Morris after a long string of verdicts exonerating them. The verdicts as to Philip Morris's conspiratorial conduct have been mixed. *Compare Engle v. Philip Morris, Inc., et al*, No. 94-08273 200 WL 33534572, at *16 (Fla. Cir. Ct., Nov. 16, 2000) (jury found conspiracy to defraud by tobacco companies), *rev'd on other grounds sub nom. Liggett Group, Inc. v. Engle,* 853 So. 434 (Fla. Dist. Ct. App. 2003), *review granted*, 873 So. 2d 1222 (Fla. 2004), *with Blue Cross Blue Shield of New Jersey v. Philip Morris, Inc.*, 178 F. Supp. 2d 198 (E.D.N.Y. 2001). An earlier case, *Cipollone v. Liggett Group, Inc.* 693 F. Supp. 208 (D.N.J. 1988) also resulted in a defense verdict on a similar conspiracy claim. However, during that trial, the plaintiff's counsel learned of additional evidence regarding the trade associations Philip Morris used as part of the smoking and health conspiracy that was improperly withheld by the

13

defendants:

> As this court recognized in its Opinion denying the *Cipollone* defendants' motion
> for a directed verdict, the CTR-sponsored research projects were generally
> unrelated to the core health issues implicated by cigarette smoking. However,
> during the course of that trial, plaintiff's counsel learned that the CTR had a
> separate "special projects" program about which defendants had not provided full
> discovery. The "special projects" division of the CTR did sponsor research
> directly relevant to the hazards of smoking. Plaintiff's counsel also learned that
> the "special projects" division was specifically designed to sponsor
> epidemiological studies which could be of use to cigarette manufacturers in their
> defense of various current and future suits against them based on the hazards of
> cigarette smoking. Plaintiff's counsel indicated during the *Cipollone* trial that
> those withheld documents might be subject to discovery on the basis of the
> crime/fraud exception to the attorney-client and work-product privileges, but this
> issue was neither pressed nor resolved during the course of the *Cipollone* trial.

*Haines v. Liggett Group, Inc.*, 140 F.R.D. 681, 684-685 (D.N.J. 1992), *rev'd on other grounds*,

975 F.2d 81 (3d Cir. 1992). The *Henley* verdict comes after the Master Settlement Agreement,

the establishment of the Minnesota depository, the creation of litigation website and other web-

based sources that permit the amassing and searching of documents displaying Defendants'

conspiracy. The *Henley* decision is not an aberration, does not follow a string of Philip Morris

successes, and it is not unfair to give the decision preclusive effect as to the conspiracy element.

Third, Plaintiffs in this case could not have joined the *Henley* litigation. *Henley* was an

individual action for personal injuries. *See Henley v. Philip Morris Inc.*, 113 Cal. Rptr. 2d 494,

496 (Cal. Ct. App. 2001). Plaintiffs allege federal RICO claims arising from the same underlying

conspiracy, but such claims do not permit personal injury. Moreover, Plaintiffs have instituted

this action as a class action in federal court on behalf of "at least hundreds of thousands of

persons." Second Am. Compl., ¶ 31. Plaintiffs could not have intervened federal RICO claims

based on diversity, alleged on a class-wide basis, into *Henley*'s individual California state court,

14

state law action.

Finally, fairness dictates an order precluding Philip Morris from relitigating the *Henley* jury's conclusive determination that Philip Morris engaged in a Conspiracy to deceive the American public about the health effects of smoking again. The objective of collateral estoppel, is to prevent "vexatious litigation with its attendant expense both to the parties and the public." *Taylor v. Hawkinson*, 306 P.2d 797, 799 (Cal. 1957). Precluding Philip Morris from again denying it conspired to defraud the public "will promote the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing that issue into controversy, and by avoiding inconsistent judgments which are contrary to our perception of the judicial system." *Imen v. Glassford,* 247 Cal. Rptr. 514, 517-518 (Cal. App. 1988) (citing *Bernhard v. Bank of America*, 122 P.2d 892 (Cal. 1942), and *People v. Taylor*, 527 P.2d 622 (Cal. 1974)). *Accord Clemmer v. Hartford Ins. Co.*, 587 P.2d 1098 (Cal. 1978). Philip Morris had a full and fair opportunity to litigate the claim of conspiracy to defraud. They appealed the decision repeatedly at every judicial level in California, and even tried the Supreme Court. They lost. They ought not be permitted to seek a clean slate on this issue in a new court.

## CONCLUSION

Because the conspiracy alleged here and found by the jury in *Henley* is identical, Plaintiffs respectfully request that this Court preclude Philip Morris from relitigating the finding that it conspired with the other tobacco companies to defraud the American public about the health effects of smoking, and enter an order granting Plaintiffs' partial summary judgment as to liability on this issue.

Dated: July 22, 2005                    Respectfully submitted,

                                        /s/ Michael D. Hausfeld
                                        Herbert E. Milstein
                                        Michael D. Hausfeld
                                        Lisa M. Mezzetti
                                        Paul T. Gallagher
                                        Douglas J. McNamara
                                        James J. Pizzirusso
                                        Brent W. Landau
                                        Andrea L. Hertzfeld
                                        COHEN, MILSTEIN, HAUSFELD
                                            & TOLL, P.L.L.C.
                                        1100 New York Avenue, N.W.
                                        Suite 500, West Tower
                                        Washington, D.C. 20005
                                        Phone: (202) 408 4600
                                        Fax: (202) 408 4699

                                        Burton H. Finkelstein
                                        William P. Butterfield
                                        Richard M. Volin
                                        Hilary K. Ratway
                                        FINKELSTEIN, THOMPSON
                                            & LOUGHRAN
                                        1050 30th Street, N.W.
                                        Washington, DC  20007
                                        Phone: (202) 337 8000
                                        Fax: (202) 337 8090

                                        LEAD ATTORNEYS FOR PLAINTIFFS


OF COUNSEL

Jonathan Alpert
THE ALPERT LAW FIRM

5920 River Terrace
Tampa, FL 33604
Phone: (813) 223 4131
Fax: (813) 228 9612

David F. Sorenson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875 5705
Fax: (215) 875 4604


Van Bunch
BONNETT, FAIRBOURN,
  FRIEDMAN & BALINT, P.C.
57 Carriage Hill
Signal Mountain, TN 37377
Phone: (423) 886 9736
Fax: (602) 274 1199

Gary M. Farmer, Jr.,
FREEDLAND, FARMER,
  RUSSO & SHELLER
2665 Executive Park Dr., Suite 3
Weston, FL 33331
Phone: (954) 467 6400
Fax: (954) 670 2530

G. Martin Meyers
LAW OFFICES OF G. MARTIN MEYERS
35 West Main Street, Suite 106
Denville, NJ 07834
Phone: (973) 625 0838
Fax: (973) 625 5350

Lisa J. Rodriguez
TRUJILLO, RODRIGUEZ &
  RICHARDS, LLC
8 Kings Highway West
Haddonfield, NJ 08033
Phone: (856) 795 9002
Fax: (856) 795 9887

17

Thomas V. Urmy, Jr.
Edward F. Haber
SHAPIRO, HABER & URMY, LLP
53 State Street
Boston, MA 02109
Phone: (617) 439 3939
Fax: (617) 439 0134

Stephen Sheller
SHELLER, LUDWIG & BADEY
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102
Phone: (215) 790 7300
Fax: (215) 546 0942

Russell Smith
R. Bryan Nace
A. RUSSELL SMITH LAW OFFICE
503 Key Building
159 S. Main Street
Akron, Ohio 44308
Phone: (330) 434 7167
Fax: (330) 434 1795

Gerson Smoger
SMOGER & ASSOCIATES, L.L.P.
3175 Monterey Blvd., Suite 3
Oakland, CA 94602
Phone: (510) 531 4529
Fax: (510) 531 4377

Esther Berezofsky
WILLIAMS, CUKER & BEREZOFSKY
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Phone: (856) 667 0500
Fax: (856) 667 5133