UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BARBARA SCHWAB et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHILIP MORRIS USA, INC. et al.,<br><br>Defendants. | No. CV 04-1945 (JBW)<br><br>MEMORANDUM AND ORDER<br>DAUBERT ISSUES |

JACK B. WEINSTEIN, Senior District Judge:

The parties have made a number of motions to exclude experts' testimony and reports. They are treated in this single memorandum for convenience.

Admissibility is a preliminary question for the court pursuant to Rule 104(a) of the Federal Rules of Evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778 (1987). Rules of relevancy apply to expert testimony. *See* Fed. R. Evid. 401-403. Proffered expert testimony is also evaluated under Rule 702. *See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999). *Daubert* emphasized the trial court's "gatekeeper" role in determining the admissibility of scientific and technical testimony. "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Rule 702 reads in its entirety as follows:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,

1

training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

While *Daubert* did not purport to establish a definitive list of factors for determining the reliability of expert evidence, it did set forth a "non-exclusive checklist" that has been endorsed by the Rules Advisory Committee:

> (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error for the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendment).

None of the factors is dispositive by itself, and other factors may be pertinent depending on the type of expert testimony at issue. "[T]here are many different kinds of experts, and many different kinds of expertise. . . . [T]he gatekeeping inquiry must be tied to the facts of a particular case." *Kumho*, 119 S.Ct. at 1175 (internal citations and punctuation omitted). This flexible inquiry applies to "skill- or experience-based observation" as well as to "scientific" testimony. *See id.* ("We do not believe that Rule 702 creates a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts. Life and the legal cases that it generates are too complex to warrant so definitive a match.").

While *Daubert* and Rule 702 recognize the discretionary aspect of "the trial court's role

as gatekeeper," Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendment), "the rejection of expert evidence is the exception rather than the rule." *Id.* "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. A federal trial court ensures that only reliable evidence is presented at trial; it does not preempt the jury's constitutional decision-making powers.

Professor Edward J. Imwinkelried has published a brief commentary on evolving practice under *Daubert*. *See* Edward J. Imwinkelried, *A 'Daubert' Checklist*, Nat. L. J., Sept. 12, 2005, at 12. He explains that trial courts applying Rule 702 have ceased to hew to the non-exclusive checklist in *Daubert* and now "address the bottom line: Does the proponent's empirical data establish that this expert can accurately draw the inference that he or she is prepared to testify to?" *Id.* This decision requires the court to consider the evidence in the context of the entire case and all the evidence, including that of opposing experts. "*Daubert* . . . force[s] judges to analyze the direct determinants of scientific merit, the extent and quality of the underlying empirical data." *Id.* A court can evaluate such data by considering, e.g., "the size of the researchers' database, its composition, the test conditions, and the rates for false positives and negatives." *Id.* In essence, then, the court must satisfy itself that a reasonably rational person could rely upon and assign appropriate probative force to the expert's opinion without being unduly influenced by the *ipse dixit* of a credentialed specialist. *See, e.g., Ruggiero v. Warner-Lambert Co.*, — F.3d —, — (2nd Cir. Sept. 16, 2005) (citing with approval test of *Amorgianos v. Nat'l R.R. Passenger Corp.*,

3

303 F.3d 256, 266 (2nd Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusion reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.")).

With this background in mind we turn to the specific *Daubert*-Rule 702 challenges to date.

The following experts proffered by plaintiffs have not been deposed by defendants, discovery having been extended to permit defendants to evaluate their work:

Dr. John Hauser

Judith Wilkenfeld

Matthew Myers

Laurence Tribe

Katherine Kinsella

Richard Redfern

Dr. Paul Slovic

Dr. Joel Cohen (new materials)

Dr. Marvin Goldberg

Dr. Stanley Presser

Dr. John C. Beyer (new materials)

Except as their testimony has been excluded on relevancy grounds, *see* Mem.& Order, Sept. 21, 2005 (Docket No. 752), the court is not now in a position to render a preliminary *Daubert* opinion on their work. It will hear any objection to their testimony and reports according to a schedule developed by the magistrate judge. *Id.*

### Defendants' Experts

Plaintiffs seek to exclude testimony of a number of defendants' proposed experts who appear to be qualified and whose professional background should allow them, individually and in combination, to opine scientifically on cigarette "safety"—i.e., the amount of carcinogenic and other toxic substances released by cigarettes with less tar and their effect on smokers. They are Dr. Kenneth A. Mundt, Ph.D., an epidemiologist; Dr. Lawrence S. Mayer, a statistician; Dr. William E. Wecker, a statistician; Dr. Jane Y. Lewis, a chemist; Dr. Kenneth F. Podraza, a chemist; Dr. Jeffrey Gentry, a chemist; Dr. Andrew T. Mosberg, a toxicologist; Dr. Edward A. Robinson, a toxicologist; and Dr. Carr J. Smith, a toxicologist. *See* Mem. in Supp. of Pls.' Mot. to Excl. Exp. Test. that "Light" Cigs. are Safer than Reg. Cigs. 1-2 (Docket No. 691-2).

All of the scientific specialties represented by these defendants' experts bear on a critical factor in the case—the amount of tar and other noxious substances inhaled by cigarette smokers when smoking "light" cigarettes and the dangers they pose to the human body. While plaintiffs' experts and others in the public health community may differ with their conclusions, that is no reason to exclude under *Daubert*. *See* Fed. R. Evid. 702, Advisory Committee Notes (2000 Amendment) (citing *Ruiz-Troche v. Pepsi Cola*, 161 F.3d 77, 85 (1st Cir. 1998) ("*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance.")). Yet no other reason is provided by plaintiffs to exclude.

Until the plaintiffs can, by detailed analysis of each challenged expert's background and opinion, show that *Daubert* requirements are not met, a motion attacking these experts' opinions will be denied. The magistrate judge will afford plaintiffs the opportunity to depose these experts so that they can renew their motions on more adequate grounds.

Dr. John C. Beyer

Defendants move to exclude the testimony of Dr. John C. Beyer, a plaintiffs' expert. It is contended that his "price impact model" and his "profits disgorgement model" fail to meet *Daubert* requirements.

The profits disgorgement model is excluded. As noted in an earlier memorandum and order granting defendants' motion to dismiss claims for equitable relief, disgorgement is not an appropriate remedy in this case. *See* Mem. & Order of Sept. 22, 2005 (Docket No. 754). Under the disgorgement theory, the profits made on light cigarettes would be used to support a claim for overcharges. This theory is such an indirect indicator of excess price that it is not sufficiently probative to permit admission. Moreover, focusing on profits would tend to be unduly prejudicial under Rule 403 of the Federal Rules of Evidence. The motion to exclude the profit disgorgement model is granted.

The price impact model is not irrelevant, but it is excluded in its present form. The following assumptions upon which the model depends are not supported: 1) that everyone who purchased "light" cigarettes did so in reliance on the alleged fraud that they were safer and 2) that it takes eight years for knowledge concerning the health risks of smoking to affect consumer behavior—a result that, according to defendants, caused the model to "produce the highest damages possible." Defs.' Mem. 13. The first is inconsistent with common sense and the evidence generally: all consumers do not react in the same way. The second has no survey or other acceptable data to support it. *See* Defs.' Mem. 8-16. Plaintiffs' argument to the contrary is not persuasive.

This ruling does not preclude making "assumptions" of a different time lag or of averages

so long as the assumptions have an adequate basis in evidence or theory. The opinion in its present form suffers from an apparent error of unwarranted and excessive precision. In matters of this kind a range of possible conclusions is often all that can be obtained. *See, e.g.*, Eric Stallard, Kenneth G. Mouton and Joel E. Cohen, Forecasting Product Liability Claims, Epidemiology and Modeling in the Manville Asbestos Case 89 ff. (2003) (discussing uncertainty in forecasts based on indirect estimates of asbestos exposure); *id.* xix (the "models and methods" described have "applicability beyond product liability"). Should the expert revise his opinion to take a more realistic account of variables and supply a reasonable basis for a trier's evaluating where within a spectrum of possibilities the "lag" lies, the court will reconsider the *Daubert* issue.

The court takes note that Dr. Beyer's past work has been criticized by other courts and academics. *See* Mem. in Supp. of Defs.' Mot. to Excl. Test. of Dr. Beyer 1-2 (Docket No. 522-2). Lack of credibility is not a basis for this court's decision to exclude. *See* Pls.' Mem. in Opp'n to Mot. to Excl. Test. of Dr. Beyer (citing many cases in which his testimony was accepted) (Docket No. 703).

This witness is not precluded from rebutting defendants' expert reports within the scope of his professional training and accomplishments as an economist. *See* Expert Report of John C. Beyer, Ph.D., Regarding Class-Wide Damages and Damage Methodologies 1-2 and App. A.

Dr. Richard W. Pollay

Defendants move to preclude the testimony of Dr. Richard W. Pollay. *See* Defs.' Mem. in Supp. of Mot. to Precl. Exp. Test. of Dr. Pollay (Docket No. 520-2). They contend that his

7

report is irrelevant because he has not examined the named plaintiffs or class members in the case. However, his report is not about smokers' reactions to "light" cigarette advertising, but about the design and intent of the industry in dealing with the use of "light" and "low tar" issues in its contacts with consumers. As defendants put the matter:

> Dr. Pollay opines that "since the introduction of low tar and light cigarettes, and continuing to the present, the cigarette companies have intentionally marketed and advertised these cigarettes to convey a health benefit over regular, full flavor cigarettes[" and asserts] that cigarette manufacturers "knew" that smokers switched to low tar brands for "health" reasons, and that "successful advertising had to allay consumers' fears about smoking." Dr. Pollay purports to have divined the Defendants' intent by examining company documents and thereby identifying seven "Lights are safer" cues that Defendants allegedly employed in low tar advertising.

Defs.' Mem. 3 (citations omitted).

Dr. Pollay is a Professor Emeritus of Marketing with adequate credentials in his field. *See* Rept. of Richard W. Pollay 17-40 (Curriculum Vitae) (Docket No. 520-4).

The charge of fraud makes relevant both what defendants knew and intended and how their activities were designed to influence the beliefs and activities of consumers. It can be assumed that the tobacco companies' advertising budgets and programs affected consumer reactions.

Dr. Pollay's experience, analytical techniques and reports meet all elements of *Daubert* and Rule 702's requirements. His report could be reliable and helpful to the jury. It is not excludable under Rule 403 of the Federal Rules of Evidence. Advertising methodologies are esoteric; the average juror could be helped by an explanation of how they work and were used by defendants.

The motion to preclude Dr. Pollay's report is denied.

### Dr. K. Michael Cummings

Defendants move to exclude or limit the report and testimony of Dr. Michael Cummings. Their position is as follows:

> Dr. K. Michael Cummings, who was trained in public health, runs a clinic for smoking cessation. Plaintiffs propose to proffer Dr. Cummings's expert testimony on smokers' behavior and a general survey on smokers' attitudes. If plaintiffs had proposed no more, this Motion would be unnecessary. But plaintiffs have also offered Dr. Cummings to compare various statements of the defendants for "consistency" or "inconsistency," and even further, for his gloss on whether such documents "mislead" or "lie." In addition, plaintiffs seek to introduce the results of [the] survey Dr. Cummings conducted of the named plaintiffs.

Mem. in Supp. of Defs.' Mot. to Lim. Test. of Dr. Cummings 1 (filed under seal).

Dr. Cummings is a well established and recognized expert in health behavior and use of cigarettes. *See id.*, Ex. A.

The "survey" of the named plaintiffs is too small and non-random to permit any scientific conclusions. It may not be used to draw conclusions about smokers generally.

Based on Dr. Cummings' expertise he may opine on whether the reactions of the named plaintiffs accord, or do not accord, with those of smokers generally as he has determined them from surveys, the literature and his own experience. He may not say that defendants' documents "lie," "mislead" or are "consistent" or "inconsistent," but he may testify to facts and opinions that may lead the jury to so characterize documents and statements.

The motion is granted in part and denied in part.

9

Other Experts

It is expected that further *Daubert* motions will be made as final discovery proceeds. They will be decided on submission, without oral argument.

SO ORDERED.

_____
Jack B. Weinstein

Dated: September 29, 2005
       Brooklyn, New York