# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

**FILED**

IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.

★ NOV 17 2005 ★

BROOKLYN OFFICE

)
)
BARBARA SCHWAB et al., individually and   )
on behalf of all others similarly situated,   )
)
        Plaintiffs,   )
)
v.   )
)
)
)
PHILIP MORRIS USA, INC. et al.,   )
)
        Defendants.   )
)

No. CV 04-1945 (JBW)

MEMORANDUM
AND ORDER ON
"FLUID RECOVERY"

APPEARANCES:

For Plaintiffs:

      Cohen, Milstein, Hausfeld & Toll
      1100 New York Avenue, N.W.
      Washington D.C. 20005
      By:    Benjamin D. Brown
            Paul T. Gallagher
            Michael D. Hausfeld
            Andrea L. Hertzfeld
            Brent W. Landau
            Douglas J. McNamara
            Linda P. Nussbaum
            James J. Pizzirusso
            Susan Rogers Schwaiger

      Finkelstein, Thompson & Loughran
      1050 30th Street NW
      Washington, DC 20007
      By:    William P. Butterfield
            Hilary K Ratway
            Richard M. Volin

      Smoger & Associates, P.C.

1



3175 Monterey Boulevard
Suite 3
Oakland, CA 94602
By:     Gerson H. Smoger

For Defendant Philip Morris USA, Inc.:

Arnold & Porter
555 Twelfth Street, N.W.
Washington D.C. 20004
By:     Judith Bernstein-Gaeta
        Anthony D. Boccanfuso
        Susan B. Cassidy
        Brian Thomas Edmunds
        Murray R. Garnick
        Edward Gehres
        Jennifer Ann Karmonick
        Courtney E. Smothers

Kirkland & Ellis
200 East Randolph Drive
Chicago, Il 60601
By:     David M. Bernick
        Renee D. Honigberg

For Defendant R.J. Reynolds Tobacco Company:

Jones Day
901 Lakeside Avenue
Cleveland, Ohio 44114
By:     Mark A. Belasic
        Theodore M. Grossman

Jones Day
222 East 41st Street
New York, NY 10017
By:     Harold Keith Gordon
        Steven P. Harte

Womble, Carlyle, Sandridge & Rice
200 West Second Street
Suite 1600
Winston-Salem, NC 27101
By:     Gusti W. Frankel

2

For Defendant British American Tobacco Ltd.:

> Chadbourne & Parke
> 30 Rockefeller Plaza
> New York, New York 10112
> By:     Joseph Gerard Falcone
>        Philip A. Pfeffer

For Defendant British American Tobacco, P.L.C.:

> Chadbourne & Parke
> 30 Rockefeller Plaza
> New York, New York 10112
> By:     Thomas Edward Riley

For Defendant Liggett Group, Inc.:

> Kasowitz, Benson, Torres & Friedman
> 1633 Broadway
> New York, New York 10019
> By:     Leonard A. Feiwus
>        Julie R. Fischer
>        Aaron H. Marks

For Defendant Brown & Williamson Tobacco Corp.:

> Kirkland & Ellis
> Citigroup Center
> 153 East 53rd Street
> New York, NY 10022-4675
> By:     Peter A. Bellacosa

For Defendant Lorillard Tobacco Company:

> Greenberg Traurig, L.L.P.
> MetLife Building
> 200 Park Avenue
> 29th Floor
> New York, NY 10166
> By:     Alan Mansfield
>        Joanne M. McLaren
>        Stephen L. Saxl

JACK B. WEINSTEIN, Senior District Judge:

Introduction.................................................................................................4

I. Fluid Recovery...........................................................................................5

    A. Nature and Use.................................................................................5

    B. Interaction with Procedural and Substantive Law....................................9

    C. General Law ..................................................................................12

II. Second Circuit Law on Fluid Recovery..........................................................19

III. Application of Law to Facts.......................................................................35

    A. *Eisen* and *Van Gemert*.................................................................37

    B. Due Process and Seventh Amendment Issues.......................................39

    C. Rules Enabling Act.........................................................................40

IV. Conclusion.............................................................................................42

INTRODUCTION

This class action is predicated on the theory that defendants formed an association-in-fact

enterprise in violation of the federal Racketeer Influenced and Corrupt Organizations Act

("RICO") "to defraud the public into believing that light cigarettes were a healthy alternative to

regular cigarettes . . . in order to maximize sales and profits." Pls.' Sec. Am. Compl. ("Compl.")

¶ 200 (Docket No. 95). Plaintiffs plan to prove defendants' liability to the class on an aggregate

basis, and to distribute the total damages among individual class members through a proof of

claim procedure. *See* Pls' Mem. Supp. Class Cert. ("Pls' Class Cert. Mem.") 86-88, 108; Pls'

Proposed Litig. Plan ("Pls' Litig. Plan") 18 (Docket No. 676); Redfern Aff. ¶ 10 (Docket No.

676) (later withdrawn). Damages would be allocated among class members based on the

4

number of "light" cigarettes purchased by each within the relevant geographic area and time. Redfern Aff. ¶ 10 (Docket No. 676) (later withdrawn).

Describing this proposed litigation scheme as a form of "fluid recovery," defendants contend it is illegal, requiring denial of certification and dismissal. *See* Defs' Opp. Class Cert. ("Defs' Opp.") 72 (Docket No. 346); Defs' Mem. Supp. Summ. J. on Causation, Injury, and Damages ("Defs' Mem. Summ. J.") 21 n.15 (Docket No. 730). They argue that the use of a fluid recovery is foreclosed by the Court of Appeals for the Second Circuit's decisions in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974) and *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977), *aff'd on other grounds*, 444 U.S. 472 (1980). Defs' Opp. 72; Defs' Mem. Summ. J. 21 n.15.

For reasons described below, the plaintiffs' proposed use of fluid recovery is permissible. It alone does not require denial of certification and dismissal. Although the Court of Appeals for the Second Circuit has appeared from time to time to deny the power of courts in this circuit to use fluid recovery, this is not the law, nor could it be the law under present societal conditions. *Cf.* Stephen Breyer, Active Liberty 57 (2005) (writing that "principle must be implemented against the backdrop of a highly complex net of technology-based social problems").

I.    FLUID RECOVERY

A.    Nature and Use

The phrase "fluid recovery" has been used to refer to a number of different methods of "indirect distribution of unclaimed funds of a class monetary recovery." Newberg on Class Actions § 10:17 n.7 (4th ed. 2002). In addition, it has been used to refer to "the entire procedure of classwide calculation of damages and distribution of the aggregate amount or any unclaimed

5

balance . . . to injured class members or to others under cy pres . . . or other doctrines." *Id.* Recoveries described as "fluid" include distribution of damages through price reductions rather than by cash to individual plaintiffs, *see, e.g., Bebchick v. Public Util. Comm'n*, 318 F.2d 187 (D.C. Cir. 1963); distribution of settlement or damage funds left unclaimed by individuals to nonprofit organizations or to states for uses intended to benefit class members, *see, e.g., Jones v. National Distillers*, 56 F. Supp. 2d 355 (S.D.N.Y. 1999); *West Virginia v. Pfizer & Co.*, 314 F. Supp 710 (S.D.N.Y. 1970), *aff'd* 440 F.2d 1079 (2d Cir. 1971); *In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Nelson v. Greater Gadsen Housing Auth.*, 802 F.2d 405 (11th Cir. 1986); *Bruno v. Superior Court*, 127 Cal. App. 3d 120 (Cal. Ct. App. 1981); and distribution of damages calculated on a classwide basis to individual plaintiffs or through various indirect means. *See, e.g., In re Antibiotic Antitrust Actions*, 333 F.Supp. 278 (S.D.N.Y. 1971); *Romero v. Philip Morris*, 109 P.3d 768 (N.M. Ct. App. 2005); *Gordon v. Boden*, 224 Ill. App. 3d 195 (Ill. App. Ct. 1991); *Daar v. Yellow Cab Co.*, 67 Cal. 2d 695 (Cal. 1967). Because the phrase is used with such imprecision, care must be taken to determine whether the "fluid recovery" approved or disapproved in a particular case is at all similar to the distribution system in the case at hand.

What all the cases on fluid recovery have in common is their attempt to grapple with some of the realities of the modern mass litigation. *See generally* Monograph, Individual Justice in Mass Tort Litigation (1995) (describing the complexities of modern mass litigation and the attempts of courts to balance pragmatism requiring wholesale distribution with fairness to individual litigants). In today's "complex modern economic system," a single harmful act may have an adverse effect on large numbers of consumers. *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965). That adverse effect is often small on the individual but large in the

6

aggregate. Typical is a defendant's price-fixing scheme raising prices no more than a few cents or dollars per item, but allowing the defendant to reap a "substantial wrongful gain." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 840 (E.D.N.Y. 1984).

Mass cases present complex problems for courts in terms of damage calculation and damage distribution. If the defendant's liability is determined on a plaintiff-by-plaintiff basis, the court will be required to "compel a parade of individual plaintiffs" to appear before it for near-identical damage calculations. *Antibiotic Antitrust Actions*, 333 F. Supp. at 289. *See also Daar*, 67 Cal. 2d at 715-716 ("In an effort to undermine the sufficiency of the complaint, defendant argues that . . . [i]t is perfectly obvious that if [plaintiff] is allowed to maintain a class action, every single claimant must appear in court and prove his claim. However, the complaint alleges that the exact amount of the overcharge . . . is known to the defendant and can be ascertained therefrom. Assuming these facts to be true . . . no appearance by the individual members of the class will be required to recover the full amount of the overcharges.") (internal quotations omitted). When the individual claims are small, "traditional methods of proof [may not be] worthwhile," since many consumers are unlikely to "retain records of small purchases for long periods of time." *California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 472 (Cal. 1986). And even when the defendant's total liability may be calculated easily—as in a settlement or under a law with statutorily fixed damages provisions—distribution to all of the affected consumers may prove impossible. *See, e.g., Mexico Money Transfer Litig.*, 267 F.3d 743; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).

Fluid recovery often provides a reasonable and fair means to litigate these complex claims and distribute damages without an intolerable burden on courts and litigants. *See, e.g., Agent Orange*, 597 F. Supp. at 841-42; *Antibiotic Antitrust Actions*, 333 F. Supp. at 281-83; *Six*

*Mexican Workers*, 904 F.2d at 1305; 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1784 (1972); *Developments in the Law—Class Action*, 89 Harv. L. Rev. 1454, 1565 (1976).

These mechanisms were first used as a means of distributing settlement monies where individual class members would be difficult to identify or unlikely to come forward. By distributing settlement amounts for uses that indirectly benefit members of the class, courts are able to promote the deterrent and compensatory policies of substantive laws in situations where recovery would otherwise be impracticable. *See, e.g., Levi Strauss & Co.*, 41 Cal. 3d at 472 (describing the importance of fluid recovery as a tool for fulfilling the policies of the underlying causes of action in consumer class actions).

This type of fluid recovery is more precisely referred to as a "cy pres" remedy, in reference to the "trust doctrine that if funds in a charitable trust can no longer be devoted to the purpose for which the trust was created, they may be diverted to a related purpose." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004). *See also* Black's Law Dictionary (6th ed. 1990) ("The rule of cy pres is a rule for the construction of instruments in equity, by which the intention of the party is carried out *as near as may be*, when it would be impossible or illegal to give it literal effect."); Newberg on Class Actions § 10:17 (4th ed. 2002) (defining a cy pres distribution as "a distribution for the indirect prospective benefit of the class"). Key examples of cy pres remedies include distribution of damages through the market, as by price or rate reduction schemes, *see, e.g., Bebchick*, 318 F.2d 187; distribution to nonprofit organizations whose goals are related in some way to the subject of the litigation, *see, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396 (E.D.N.Y. 1985), *aff'd in relevant part*, 818 F.2d 179 (2d Cir. 1987); *Mexico Money Transfer Litig.*, 267 F.3d 743; and distribution to one or more

states for use benefitting class members. *See, e.g., Pfizer & Co.*, 314 F.Supp 710. In the discussion that follows, cases using the phrase "cy pres" are treated as fluid recovery litigations when that is appropriate.

As fluid recovery practice has evolved, it has been used in cases where liability has been decided by the court as well as in settlements. In decided cases, fluid recovery generally involves three steps. First, defendant's aggregate liability is determined in a single, class-wide adjudication and paid into a class fund. *Levi Strauss & Co.*, 41 Cal. 3d at 472. Second, "individual class members are afforded an opportunity to collect their individual shares," usually through a simplified proof of claim procedure. *Id.* Third, any residue remaining after individual claims have been paid is distributed to the class' benefit under cy pres or other doctrines. *See Gordon*, 224 Ill. App. 3d at 204-205; *Cicelski v. Sears, Roebuck & Co.*, 132 Mich. App. 298, 304 (Mich. Ct. App. 1984). This three-step procedure eliminates the need for repetitive litigation of individual damage claims, while allowing courts to hold defendants liable for the entirety of the harm caused by them and to compensate those harmed. Without this use of fluid recovery, "some class actions. . . would neither compensate nor deter, for to allow the defendant to insist upon proof of individual claims [would] enable it to benefit from the cumbersome nature of legal proceedings and the lack of sophistication and indolence of the consumer, and [would] reward [its] foresight in stealing from the multitude in small amounts." *Bruno*, 127 Cal. App.3d at 127 (internal quotations omitted).

B.     Interaction with Procedural and Substantive Law

Fluid recovery is consistent with the text and spirit of Rule 23 of the Federal Rules of Civil Procedure, controlling class actions. *See, e.g.*, 7AA Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure § 1784 (1972); Note, *Managing the Large Class Action: Eisen v. Carlisle & Jacquelin*, 87 Harv. L. Rev. 426, 447 (1973). "Rule 23 does not explicitly authorize . . . fluid recovery," but "this alone can hardly be taken to mean that it is prohibited, . . . since the rule is silent about remedies of any nature." Note, *Managing the Large Class Action: Eisen v. Carlisle & Jacquelin*, 87 Harv. L. Rev. 426, 447 (1973). The class action rule "stems from equity," *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997), and Rule 23(b)(3), in particular, is designed to provide justice on an equitable basis to injured parties whose cases would be impractical or impossible to litigate if handled individually. *See* Fed. R. Civ. P. 23 advisory committee's notes (subdivision (b)(3)); *see also Dolgow v. Anderson*, 43 F.R.D. 472, 484-85 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970) ("The class action is particularly appropriate where those who have allegedly been injured are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive.") (internal quotations omitted).

While courts must stay within the bounds of due process and avoid altering substantive law in violation of the Rules Enabling Act when shaping the remedies in Rule 23(b)(3) actions, the Rule provides desirable flexibility and grants the courts broad equitable powers in litigation management. *See, e.g., Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968) ("the Advisory Committee on the Rules of Civil Procedure has completely redrafted Rule 23 in order to provide a throughly flexible remedy. Throughout the course of a proceeding courts are given complete control to give assurance that the procedures adopted are fair, reasonable and effective."); 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1784 (1972) ("courts must use their discretion, and in many cases their ingenuity, to shape decrees or to develop procedures for ascertaining damages and distributing relief that will be fair

to the parties but will not involve them in an unduly burdensome administration of the award");
*cf In re Joint Eastern and Southern District Asbestos Litig.*, 129 B.R. 710, 800 (E.D.N.Y. 1991),
*vacated on other grounds*, 982 F.2d 721 (2d Cir. 1992) (class action is a device created to
"foster[] judicial economy and efficiency") (internal quotes omitted).

Whether or not fluid recovery should be employed in a particular class action is
determined by reference to the need to vindicate the substantive law at issue. *Simer v. Rios*, 661
F.2d 655, 676-78 (7th Cir. 1981). *See also In re Federal Skywalk Cases*, 680 F.2d 1175, 1190
(8th Cir. 1982) (Heaney, J., dissenting) (permissibility of aggregation depends on policy of cause
of action); Newberg on Class Actions § 10:23 (4th ed. 2002) ("objectives of compensation or
deterrence and questions about their validity must properly focus on the substantive laws
underlying any particular class action"); *Developments in the Law—Class Action*, 89 Harv. L.
Rev. 1454, 1525-26 (1976) (courts should use substantive law to determine the appropriateness
of fluid recovery). While fluid recovery is by no means an appropriate remedy in all Rule
23(b)(3) actions, *see In re Folding Carton Antitrust Litig.*, 744 F.2d 1252 (7th Cir. 1984); *Simer*,
661 F.2d at 676-79; *Cicelski v. Sears, Roebuck & Co.*, 132 Mich. App. 298, 304-10 (Mich. Ct.
App. 1984), it is sometimes the only practicable way to implement the goals of the substantive
law under which a federal mass litigation case is prosecuted.

"The general inquiry is whether the use of . . . [fluid recovery] is consistent with the
policy or policies reflected by the statute violated." *Simer*, 661 F.2d at 676. This approach can
be particularized into an assessment of the extent to which "the statute embodies policies of
deterrence, disgorgement, and compensation," *id.*, and of the "strength and scope of the statute's
concern" for those policies. *Developments in the Law—Class Action*, 89 Harv. L. Rev. 1454,
1527 (1976). The application of fluid recovery is particularly appropriate where a corporate

11

defendant "illegally profits" through violation of a common law principle or "a statute which was intended to regulate socially opprobrious conduct such as that reflected in the antitrust or securities laws." *Simer*, 661 F.2d at 676-77. It is least appropriate where there may be a danger of overdeterrence. *See Developments in the Law—Class Action*, 89 Harv. L. Rev. 1454, 1527-28 (1976) (exploring the way in which courts should weigh concerns about deterrence).

    C.     General Law

Fluid recovery has received wide support from courts and commentators. *See, e.g.,* *Simer v. Rios*, 661 F.2d 655, 676-78 (7th Cir. 1981) (fluid recovery should be used when it would promote statutory goals of deterrence, disgorgement, and compensation); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 278, 282-283 (S.D.N.Y. 1971) (without fluid recovery, defendants would have the "freedom to keep their ill-gotten gains which, once lodged in the corporate coffers, are said to become a 'pot of gold' inaccessible to the mulcted consumers because they are many and their individual claims small"); *California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 472 (Cal. 1986) ("Without fluid recovery, defendants may be permitted to retain ill gotten gains simply because their conduct harmed large numbers of people in small amounts instead of small numbers of people in large amounts."); 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1784 (1972); Gail Hillebrand & Daniel Torrence, *Claims Procedures in Large Consumer Class Actions and Equitable Distribution of Benefits*, 28 Santa Clara L. Rev. 747 (1988); *Developments in the Law—Class Action*, 89 Harv. L. Rev. 1454 (1976); Gregory A. Hartman, Comment, *Due Process and Fluid Class Recovery*, 53 Or. L. Rev. 225 (1974); Note, *Managing the Large Class Action: Eisen v. Carlisle & Jacquelin*, 87 Harv. L. Rev. 426 (1973). It has been used by federal and state courts in both decided and settled cases.

*See, e.g., Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396 (E.D.N.Y. 1985), *aff'd in relevant part*, 818 F.2d 179 (2d Cir. 1987); *Antibiotic Antitrust Actions*, 333 F. Supp. 278; *West Virginia v. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Nelson v. Greater Gadsen Housing Auth.*, 802 F.2d 405 (11th Cir. 1986); *Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm.*, 84 F.3d 451 (D.C. Cir. 1996); *Bebchick v. Public Util. Comm'n*, 318 F.2d 187 (D.C. Cir. 1963); *Boyle v. Giral*, 820 A.2d 561 (D.C. 2003); *Daar v. Yellow Cab Co.*, 67 Cal. 2d 695 (Cal. 1967).

Some federal appellate courts have evinced concern about fluid recovery. The Second, Third, Fourth, Eighth, and Ninth Circuits have all expressed opposition to the use of fluid recovery in particular cases. *See Van Gemert v. Boeing Co.*, 553 F.2d 812, 815 (2d Cir. 1977), *aff'd on other grounds*, 444 U.S. 472 (1980); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005, 1018 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974); *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974); *In re Hotel Tel. Charges*, 500 F.2d 86, 89-90 (9th Cir. 1974), *Dumas v. Albers Med.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030 (W.D. Mo. Sept. 7, 2005); *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 55 (D. Del. 1974). The Second, Fourth, and Ninth Circuits have made a few sweeping statements that have been taken by some commentators as wholesale rejections of the concept. *See Eisen*, 479 F.2d at 1018 (in dicta, describing fluid recovery as "illegal, inadmissible . . . and wholly improper"); *Kline*, 508 F.2d at 236 n.8. (responding to a "suggestion" that fluid recovery might be used with the dicta that it would alter substantive law in violation of the Rules Enabling Act); *Windham*, 565 F.2d at 72 (citing the above quoted language from *Eisen* to reject fluid recovery). While the Court of Appeals for the

Seventh Circuit has explicitly endorsed the use of fluid recovery in appropriate cases, *see Simer* 661 F.2d at 676-77, recent dicta from that circuit described cy pres forms of recovery as "purely punitive." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004).

Courts that have declined to approve fluid recovery have been concerned that such mechanisms might violate the due process clause, *see Eisen*, 479 F.2d at 1018; *Barnett*, 64 F.R.D. at 55, or that they might alter substantive law in violation of the Rules Enabling Act. *See Eisen*, 479 F.2d at 1014; *Windham*, 565 F.2d at 66; *Kline*, 508 F.2d at 236 n.8; *In re Hotel*, 500 F.2d at 90. Others have expressed concern that fluid recovery might deprive defendants in class actions of their Seventh Amendment right to trial by jury. *Kline*, 508 F.2d at 236 n.8. Because appellate courts have often been oracular in their discussion of fluid recovery, it can be difficult to determine the precise dimensions of their anxiety. Objections appear to arise primarily out of the perception that fluid recovery "relieve[s] plaintiff classes of the burden of individual proof of damages," *Nelson*, 802 F.2d at 409, and therefore violates the due process clause and the Seventh Amendment by denying the defendant an opportunity to challenge the plaintiffs' claims on an individual basis before the jury. *See Kline*, 508 F.2d at 236 n.8. Insofar as "individual" proof of damages is thought to be an essential element of a claim, any perceived lessening of the plaintiffs' burden on this point may be said to "eliminat[e] or erod[e]" traditional or statutory requirements and thereby to alter substantive law in violation of the Rules Enabling Act. *In re Hotel*, 500 F.2d at 90; *see also Eisen*, 479 F.2d at 1014; *Barnett*, 64 F.R.D. at 50.

Despite these misgivings, fluid recovery has been accepted in some contexts by nearly all federal circuits that have considered it. It is most commonly employed by federal courts for damage distribution in settled cases. *See, e.g., Beecher*, 575 F.2d 1010; *Pfizer & Co.*, 314 F.Supp. 710; *Jones v. National Distillers*, 56 F.Supp. 2d 355 (S.D.N.Y. 1999); *Agent Orange*,

611 F. Supp. 1396; *In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703 (8th Cir. 1997); *In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392 (N.D. Ga. 2001); *Colson v. Hilton Hotels Co.*, 59 F.R.D. 324 (N.D. Ill. 1972). But courts have also utilized fluid recovery in decided cases. *See, e.g., Antibiotic Antitrust Actions*, 333 F. Supp 278; *Democratic Cent. Comm.*, 84 F.3d 451; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Nelson*, 802 F.2d 405; *American Int'l Pictures v. Price Enter.*, 636 F.2d 933 (4th Cir. 1980) (expressing disapproval of "fluid recovery" while applying an aggregate damage determination and distribution scheme that most would describe as "fluid"); *L.C.L. Theatres v. Columbia Pictures*, 421 F.Supp. 1090 (N.D. Tex. 1976) (same); *Bebchick*, 318 F.2d 187.

Federal cases involving fluid recovery have been brought under a wide range of substantive laws, including the Clayton Act, *see, e.g., Pfizer & Co.*, 314 F. Supp. 710; *Motorsports,* 160 F. Supp. 2d 1392, the Securities and Exchange Act, *see, e.g., Beecher*, 575 F.2d 1010; *National Distillers*, 56 F. Supp. 2d 355, civil RICO, *see Mexico Money Transfer Litig.*, 267 F.3d 743, Title VII, *see Powell*, 119 F.3d 703, the Farm Labor Contractor Registration Act, *see Six Mexican Workers*, 904 F.2d 1301, and state contract laws. *See Nelson*, 802 F.2d 405.

Most federal courts that have approved the use of fluid recovery have not found it necessary to discuss the constitutional issues. At least one federal court, however, has faced the due process argument head-on. In a well-conceived pretrial decision in the *Antibiotic Cases*, the District Court for the Southern District of New York responded to the defendants' contention that their right to due process would be "clearly and seriously impair[ed]" by an inability to defend against individual consumers who might be unable to prove their purchases of the

15

defendants' pharmaceuticals. *Antibiotic Antitrust Actions*, 333 F. Supp at 288-89 (Miles W. Lord). Observing that the trial plan was specifically designed to avoid the need for individual damage claims, the court explained that the defendants' argument in opposition missed the point. *Id.* at 289. Contrary to defendants' presentation, the due process issue rested not on the specific manner in which the defendants' liability was proved—the defendants' were, in any case, not "constitutionally entitled to compel a parade of individual plaintiffs to establish damages"—but rather on the accuracy with which the damage calculation reflected the defendants' total liability. *Id.* And as to that, the court concluded that the requirements of due process would be met:

> Most important management decisions in the business world in which these defendants operate are made through the intelligent application of statistical and computer techniques and these class members should be entitled to use the same techniques in proving the elements of their cause of action. The court is confident that they can be successfully utilized in the courtroom and that their application will allow the consumers to protect their rights while freeing the court and the defendants from the specter of unmanageability.

*Id.*

Of the eleven states that have confronted the issue, at least nine have endorsed the use of fluid recovery. *See, e.g., Buchholz Mortuaries, Inc. v. Dir. of Revenue*, 113 S.W.3d 192, 195-196 (Mo. 2003) (Wolff, J., concurring); *Boyle*, 820 A.2d at 563; *Ritter, Laber & Assocs. v. Koch Oil, Inc.*, 623 N.W.2d 424 (N.D. 2001); *Daar*, 67 Cal.2d 695; *Romero v. Philip Morris Inc.*, 109 P.3d 768 (N.M. Ct. App. 2005); *Muise v. GPU, Inc.*, 371 N.J. Super. 13 (N.J. Super. Ct. App. Div. 2004) (fluid recovery is applied under N.J.R. Civ. P. 4:32- 2(c) only when identities of class members are not known); *Gordon v. Boden*, 224 Ill. App. 3d 195 (Ill. App. Ct. 1991); *Cicelski v. Sears, Roebuck & Co.*, 132 Mich. App. 298 (Mich. Ct. App. 1984) (approving use of fluid recovery in appropriate cases, although finding its use unwarranted in the case at hand, given

that specific deterrence was not a concern); *Bruno v. Superior Court*, 127 Cal. App. 3d 120 (Cal. Ct. App. 1981); *Lieberman v. Howard Johnson's, Inc.*, 68 Pa. D. & C.2d 129 (Pa. Com. Pl. 1973); *cf. Dallas County Cmty Coll. Dist. v. Bolton*, 89 S.W.3d 707, 722 (Tex. App. 2002) (no Texas court has held fluid recovery to be unlawful; the issue need not be reached, however, because the award under dispute is not "fluid"). *But see Jacksonville v. Venhaus*, 302 Ark. 204, 210 (Ark. 1990) (rejecting fluid recovery in a tax recovery case on the ground that "monies collected for one purpose cannot be used for another"); *Reader v. Magma-Superior Copper Co.*, 110 Ariz. 115 (Ariz. 1973) (in a case brought under state environmental laws, affirming trial court's dismissal of suit as a class action because the Second Circuit's decision in *Eisen*, insofar as it disapproves of the use of fluid recovery, "effectively disposes of any previously existing possibility that the instant case could proceed as a class action"). Three states—California, New Jersey, and North Dakota—also have procedural rules explicitly permitting the use of fluid recovery in class actions. *See* Cal. Civ. Proc. Code § 384; N.J.R. Civ. P. 4:32- 2(c); N.D.R. Civ. P. 23(o)(3)(E).

State courts have embraced fluid recovery as a means of fulfilling the promise of class actions as a consumer protection device and as a way of ensuring that corporate wrongdoers do not retain "ill gotten gains" simply because of the administrative difficulties associated with proving and distributing small individual damage claims. *Bruno*, 127 Cal. App. 3d at 127; *see also Levi Strauss & Co.*, 41 Cal. 3d at 471-472; *Gordon*, 224 Ill. App. 3d at 204-05 (in a "large and impersonal society, class actions are often the last barricade of consumer protection," providing redress for "frauds that cause small damages to large groups") (internal quotations omitted). A significant percentage of fluid recovery cases in the state courts are brought under state antitrust and consumer protection laws. *See, e.g., Boyle*, 820 A.2d 561 (District of

17

Columbia antitrust and consumer protection laws); *Levi Strauss & Co.*, 41 Cal. 3d 460 (California antitrust law); *In re Vitamin Cases*, 107 Cal. App. 4th 820 (Cal. Ct. App. 2005) (California antitrust and unfair competition laws); *Romero*, 109 P.3d 768 (New Mexico Antitrust Act); *Corbett v. Superior Court*, 101 Cal. App. 4th 649 (Cal. Ct. App. 2002) (California's Unfair Competition Law); *Gordon*, 224 Ill. App. 3d 195 (Illinois' Consumer Fraud and Deceptive Business Practices Act); *but see Madrid v. Perot Systems Co.*, 130 Cal. App. 4th 440 (Cal. Ct. App. 2005) (non-restitutionary fluid recovery not an available remedy in a class action under California's Unfair Competition Law); *Prata v. Superior Court*, 91 Cal. App. 4th 1128 (Cal. Ct. App. 2001) (same). Fluid recovery has also been approved in a number of state common law contract and conversion actions to recover overcharges by corporations. *See, e.g., Darr*, 67 Cal. 2d 695 (class suit to recover overcharges made by defendant taxicab company); *Lieberman*, 68 Pa. D. & C.2d 129 (users of the Pennsylvania Turnpike suing as third-party beneficiaries to recover overcharges by restaurant and oil companies under contract with the state); *Ritter, Laber & Assocs.*, 623 N.W.2d 424 (conversion action regarding companies' alleged over-acquisition of oil).

A number of state courts have addressed the possible due process issues raised by fluid recovery. Assuming that courts' unexplained due process objections to fluid recovery must rest upon concerns about aggregate proof of damages, the Michigan Court of Appeals concluded that defendants "hardly seem[] prejudiced by being restricted to only one hearing on common issues. Even though the calculation of damages might involve issues on which a hearing would . . . be required . . . , it has never been thought that due process required multiple hearings when there was one full and fair adjudication of the merits." *Cicelski*, 132 Mich. App. at 307; *see also Darr*, 67 Cal. 2d at 715-16 (denying defendant's contention that "every single claimant must appear in

18

court and prove his claim"); *Gordon*, 224 Ill. App. 3d at 205 (citing *Cicelski* for the proposition that a defendant is not prejudiced by only being allowed "one hearing on common issues").

The California Court of Appeals has persuasively explained that "[u]p until the time when damages are distributed, a class action with fluid class recovery is the same as any other . . . The class is certified the same way, the burden of proof . . . is no different, and the calculation of the total amount of damages is accomplished in no less precise a manner." *Bruno*, 127 Cal. App. 3d at 128-129. As the court observed, a "class action which affords due process of law . . . through the time when the amount of [the defendant's] liability is calculated cannot suddenly deprive him of his constitutional rights because of the way the damages are distributed." *Id.* at 129. So long as the trial plan provides for an accurate means of assessing a defendant's liability, it has no grounds to object to the absence of individual proceedings or to the way in which damages are distributed once they have been determined.

## II.    SECOND CIRCUIT LAW ON FLUID RECOVERY

Although the Second Circuit's decision in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974), has been cited as the foundation of federal court objections to fluid recovery, *see, e.g., Windham v. American Brands, Inc.*, 565 F.2d 59, 72 (4th Cir. 1977); *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974); *Reader v. Magma-Superior Copper Co.*, 110 Ariz. 115, 116 (Ariz. 1973), the actual state of Second Circuit law concerning the use of fluid recovery is itself somewhat fluid. *See Developments in the Law—Class Action*, 89 Harv. L. Rev. 1454, 1535 (1976).

Fluid recovery was first used in the Second Circuit in *West Virginia v. Pfizer & Co.*, 314 F. Supp 710 (S.D.N.Y. 1970), *aff'd* 440 F.2d 1079 (2d Cir. 1971) and the *Antibiotic Cases*, 333

F. Supp. 278 (S.D.N.Y. 1971), both of which involved civil antitrust actions brought against pharmaceutical companies by government entities, hospitals, drug retailers, and individual consumers. In *Pfizer*, the District Court for the Southern District of New York approved a settlement agreement between the defendants and several of the plaintiffs that called for the states to recover damages on behalf of consumers who had not filed individual claims. *See Pfizer*, 314 F. Supp at 728. Any part of the recovery that was not claimed by individual consumers was to be held by the states subject to the court's order, and "[i]t was anticipated that the court might consider ways in which to apply the excess funds to achieve socially desirable objectives." 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1784 (1972). Approval of the settlement was upheld by the court of appeals. *West Virginia v. Pfizer & Co.*, 440 F.2d 1079 (2d Cir. 1971).

In the *Antibiotic Cases*, the District Court for the Southern District of New York held that seven states that had refused the *Pfizer* settlement were entitled to maintain their actions against the pharmaceutical companies as class actions on behalf of individual consumers. *Antibiotic Antitrust Actions*, 333 F. Supp. at 284. The actions were certified on the assumption that the issues of liability, fact of damages, and quantum of damages could all be calculated on a class-wide basis, with individual claims made against the judgment awarded to the class and the disposition of any residue left for later determination. *Id.* at 287-90. While the case presented some management difficulties, the district court found that these problems did not "preclude a finding that the class action is 'superior to *other available methods* for the fair and efficient adjudication of the controversy.'" *Id.* at 282 (emphasis in original). According to the court,

> difficulties in management are of significance only if they make
> the class action a *less* "fair and efficient" method of adjudication
> than other available techniques. This perspective is particularly

20

important in the present cases where the defendants, after reciting potential manageability problems, seem to conclude that no remedy is better than an imperfect one. The court would be hesitant to conclude that conspiring defendants may freely engage in predatory price practices to the detriment of millions of individual consumers and then claim the freedom to keep their ill-gotten gains which, once lodged in the corporate coffers, are said to become a "pot of gold" inaccessible to the mulcted consumers because they are many and their individual claims small.

*Id.* at 282-83 (emphasis in original).

The court also responded to defendants' due process objections to class-wide proof of damages. It found that the use of such a procedure did not, in and of itself, impinge upon the defendants' constitutional rights. *Id.* at 289. This section of the court's opinion has already been averted to.

Denying the defendants' motion for a writ of mandamus, the Court of Appeals for the Second Circuit declined an opportunity to forestall the district court's proposed use of fluid recovery in the *Antibiotic Cases*. *Pfizer v. Lord*, 449 F.2d 119, 119 (2d Cir. 1971). The court of appeals observed that the procedures approved by the lower court were essentially identical to those used in the *Pfizer* settlement and presented even less of a due process problem than they had in *Pfizer*, given the plaintiffs' proposal to employ actual rather than publication notice. *Id.* It is important to note that the court of appeals was not expressing approval of a fluid recovery settlement, but rather one that assumed a trial.

The ostensible turning point regarding the use of fluid recovery in the Second Circuit came in 1973, when the court of appeals handed down its decision in *Eisen v. Carlisle & Jacquelin*. The plaintiff in *Eisen* brought suit on behalf of himself and all other buyers and sellers of odd lot shares on the New York Stock Exchange, alleging that two firms—Carlisle &

Jacquelin and DeCoppet & Doremus—had conspired to fix the odd-lot price differential and had charged excessive fees in violation of the Sherman Act. *Eisen v. Carlisle & Jacquelin*, 41 F.R.D. 147, 148 (S.D.N.Y. 1966), *rev'd* 391 F.2d 555 (2d Cir. 1968). The District Court for the Southern District of New York initially dismissed the suit as a class action on the grounds that the rights and interests of each of the several hundred thousand to several million class members were far too diverse and Eisen's individual interest far too small for Eisen to adequately represent the interests of the class or for common questions to predominate. *Id.* at 150-151. In addition, the district court expressed concern about the notice requirements of Rule 23(c)(2), given that Eisen had proposed providing only press advertisements and notices to stock exchange firms. *Id.* at 151.

Eisen appealed, and the Court of Appeals for the Second Circuit reversed. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968). Its first reaction was to recognize the realities of mass litigation and approve fluid recovery as one device available in the law's armory. The court of appeals held that the high number of potential class members and the small value of Eisen's individual claim were not adequate grounds for a finding of inadequate representation. *Id.* at 563. It also held that there had been "an adequate demonstration that common questions of law or fact predominate." *Id.* at 566. While varying fact patterns would underlay each individual odd-lot transaction, "the same allegedly unlawful differential is charged to all buyers and sellers." *Id.* at 562. The differences among the class members' claims would "bear only on the computation of damages, a factor which, by itself, does not justify dismissal of the class action." *Id.* at 566. Advocating a more flexible approach to Rule 23, *id.* at 560, the court of appeals remanded the case to the district court to re-determine if the suit could proceed as a class action and, if so, how notice and recovery would be handled. The court of appeals

shared the district court's concern about the adequacy of notice by publication, especially if individual members of the class could be identified. *Id.* at 568-70. In addition, while it noted the "desirability of providing small claimants with a forum in which to seek redress for alleged large scale anti-trust violations," the court of appeals made it clear that it was reluctant to allow the suit to proceed if the high cost of administering the action made it unlikely that those injured by the alleged violations would actually share in the damages. *Id.* at 567. On this point, the court observed that "other courts in similar cases" had been able to avoid problems of administration by establishing "formulas of procedure for recovery . . . applicable to an entire class." *Id.*

On remand, the district court determined that the requirements of a Rule 23(b)(3) class action had been met. *Eisen v. Carlisle & Jacquelin*, 52 F.R.D. 253, 272 (S.D.N.Y. 1971), *rev'd* 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974). The court found that the case was manageable as a class action. *Id.* at 261-65. As the court of appeals had indicated, the most difficult problem facing the district court on this point was the issue of recovery. The class was defined as "all public individuals, institutions, and intermediaries who bought and/or sold odd-lots . . . on the NYSE" from May 1, 1962 to June 30, 1966. *Id.* at 261. This group consisted of roughly 6,000,000 people, only 2,000,000 of whom were readily identifiable. *Id.* at 257. Estimated class members' individual damage claims averaged around three dollars and ninety cents. *Eisen*, 479 F.2d at 1010. It seemed unlikely that more than a few individuals would come forward to prove and claim their individual damages. As a result, if the defendants' liability were calculated by summing individually submitted claims, the final judgment was likely to total less than the administrative costs of litigation. In order to avoid this problem, the district court proposed that the class' damages be determined in the aggregate, from

defendants' own records and from industry reports. *Eisen*, 52 F.R.D. at 262. Once aggregate damages had been determined, a scheme of fluid recovery would be employed. *Id.* at 264-65. Those individual class members who came forward would have their claims satisfied and the residue would be distributed in some manner to "the class as a whole." *Id.* at 264. The court left the exact manner of this distribution undecided, but noted that one possibility would be to lower the future cost of odd-lot trading. *Id.* at 265.

The district court also proposed a method of providing notice that it felt would be consonant with both Rule 23 and due process. *Id.* at 265-68. Although Eisen's initial proposal of publication notice combined with mailed notice to stock exchange firms was insufficient to meet the requirements of Rule 23(c)(2), considering that 2,000,000 individual class members were readily identifiable, the court did not think that either the Rule or due process required Eisen to mail notice to each one of these identifiable individuals. *Id.* at 267. Instead, the court directed that individual notice be mailed to the roughly 2,000 identifiable class members who had ten or more odd-lot transactions, to 5,000 other randomly chosen class members, to all NYSE member firms, and to all commercial banks with large trust departments. *Id.* Additionally, ads were to be placed once a month for two months in five newspapers. *Id.* at 268. If the defendants were ultimately found liable to the class, individual notice mailed to all of the 2,000,000 identifiable class members would be combined with publication notice in the two newspapers of largest circulation in each state and in several foreign newspapers. *Id.* at 263.

In 1973, on defendants' appeal of the class certification, the Second Circuit Court of Appeals again reversed, holding that Eisen's suit was unmanageable as a class action. *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974). The court of appeals was not unanimous in its evaluation of the second *Eisen* appeal.

Circuit Judge Hays concurred only in the result on notice grounds and dissented from a denial of a rehearing en banc, while Oakes, with whom Timbers concurred, filed an opinion dissenting from the denial of a rehearing en banc. *Id.* at 1020-26. Judges Kaufman, Feinberg, Mansfield, and Mulligan thought an en banc hearing was not necessary because the Supreme Court would almost certainly grant certiorari. *Id.* at 1020. In fact, the Supreme Court did grant certiorari, but decided the case on the question of notice, not fluid recovery. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). See below for a discussion of *Eisen* in the Supreme Court. Judge Hays' brief and careful opinion refusing to adopt the majority's anti-fluid recovery stance seems to have been informed by his many years of teaching civil procedure as a full-time member of Columbia Law School's faculty.

The court of appeals' primary objection to the district court's order concerned notice. Because 2,000,000 members of the class could be readily identified, the district court was required to order individual notice to these class members. *Id.* at 1015. According to the court of appeals, the district court's failure to do so not only jeopardized the rights of the absent class members, but was in direct conflict with Rule 23(c)(2)'s command that "for any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* As for the district court's proposed system of publication notice, the court of appeals declared that a "farce," considering the widespread, diverse nature of the class and the relatively limited scope of the first round of publication. *Id.* at 1017. In support of this conclusion, the court cited the views of "lawyers specializing in class actions," who had "stated that the only effective way to induce any reasonable number of members of the class to file claims is to conduct full-scale campaigns on TV and radio, solicit appearances by advocates of

25

consumers' rights such as Ralph Nader," and obtain "coverage in various news media, union newsletters, and the like." *Id. But cf. Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (notice by publication is constitutionally sufficient as to trust beneficiaries whose names and addresses are unknown).

Although the court of appeals' primary concern was the district court's failure to provide for individual notice—a ruling which it held "alone compel[led] a reversal of the order appealed from and the dismissal of the case as a class action," *Eisen*, 479 F.2d at 1015—the court reserved its strongest language for the proposed fluid recovery, declaring the concept "illegal, inadmissible as a solution of the manageability problems of class actions and wholly improper." *Id.* at 1018. Turning to Rule 23, the court of appeals found that fluid recovery was not "contemplat[ed]" by the Rule and that, even if it were, it would alter substantive rights under the Clayton Act and therefore violate the Rules Enabling Act. *Id.* at 1014 and 1018. Finally, "[e]ven if amended Rule 23 could be read so as to permit any such fantastic procedure, the courts would have to reject it as an unconstitutional violation of the requirement of due process of law." *Id.* at 1018. The court of appeals acknowledged previous applications of fluid recovery both within the Second Circuit and without, but distinguished these cases from the case before it: *Pfizer* involved a settlement, the District of Columbia Circuit's decision in *Bebchick v. Public Util. Comm'n*, 318 F.2d 187 (D.C. Cir. 1963), was not in the context of a class action, and the California Supreme Court's approval of fluid recovery in *Daar v. Yellow Cab Co.*, 67 Cal. 2d 695 (Cal. 1967), arose under a state class action statute "different" from Rule 23. *Eisen*, 479 F.2d at 1012. The result of the decision was that the defendant escaped scot free and no one who had been mulcted received compensation.

While the broadest possible reading of *Eisen* would bar all applications of fluid recovery

in non-settled cases, such a reading is not justified. *See Jones v. National Distillers*, 56 F.Supp.

2d 355, 357 (S.D.N.Y. 1999) (concluding that "*Eisen* does not forbid all fluid recoveries based

on cy pres principles; it only cautions against going to excess in creating class funds that do not

meaningfully benefit the class as a whole"); *cf. Developments in the Law—Class Actions*, 89

Harv. L. Rev. 1454, 1532-35 (1976) (arguing that the *Eisen* court's reasoning does not fully

justify the broad conclusion it appears to have reached). *But see Six Mexican Workers v.

Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) (reading *Eisen* as a wholesale

rejection of fluid recovery); *Windham*, 565 F.2d at 72 (same); *Reader*, 110 Ariz. at 116 (same).

First, the *Eisen* court did not make clear the foundation for its objections to fluid

recovery. *See Cicelski v. Sears, Roebuck & Co.*, 132 Mich. App. 298, 306 (Mich. Ct. App. 1984)

("the statement by the *Grigg* Court that it found *Eisen*'s reasoning persuasive is mysterious

because the *Eisen* Court did not explain why it found fluid recovery offensive to due process").

While the court of appeals declared that fluid recovery would alter substantive rights in violation

of the Rules Enabling Act, *Eisen*, 479 F.2d at 1014, and was a "violation of the requirement of

due process of law," *id.* at 1018, the court did not explain its reasoning on either of these points.

Insofar as grounds for the appellate court's objection can be discerned, it appears to rest on its

belief that the district court saw fluid recovery in part as a way to dispense with individualized

notice, *id.* at 1010, and on the court's conclusion, described below, that the specific means of

recovery to be employed in the case would benefit no more than a few of the 6,000,000

estimated class members. *Id.* at 1010-11. Neither of these concerns, however, will be present in

all fluid recoveries and neither serves as justification for declaring all fluid recovery "illegal."

Nor did the majority opinion support its use of the pejoratives "inadmissible," "wholly

improper," and "fantastic." The opinion was not in the highest intellectual tradition of the

Second Circuit Court of Appeals.

Second, it is unclear what exactly the majority of the court of appeals panel thought they were barring when they condemned the use of "fluid recovery." The fluid recovery plan proposed by the district court involved both the classwide calculation of damages and a fluid distribution of that aggregate sum. *Eisen*, 52 F.R.D. at 262-65. The court of appeals' discussion of fluid recovery focuses on concerns about distribution. Given the massive size of the proposed 6,000,000-person class and the small value of the class members' average claim, the court of appeals doubted that more than a few claimants would step forward to recover their share of the damages. *Eisen*, 479 F.2d at 1010. Furthermore, the court thought it likely that many of the class members—those who had ceased trading on the odd-lot market—would receive no benefit at all from the recovery, while many "new traders[] who had no transactions in the period" would receive some benefit from the reduction in trading costs. *Id.* at 1011. This discussion, combined with the court of appeals' initial expression of reluctance to allow the suit to proceed if the class members would not share in the damages, *Eisen*, 391 F.2d at 567, has led at least one commentator to conclude that, while the *Eisen* decision may have foreclosed the use of at least some fluid distribution schemes, it did not necessarily bar classwide calculation of damages. *Developments in the Law—Class Action*, 89 Harv. L. Rev. 1454, 1535 (1976). *But see Dumas v. Albers Med.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *7 (W.D. Mo. Sept. 7, 2005) (reading *Eisen* as rejecting aggregate damage calculation but allowing fluid distribution in appropriate cases). At the same time, however, courts in the Second Circuit have shown themselves open to the application of fluid distribution in decided as well as settled cases, casting doubt on any interpretation of *Eisen* that would completely prohibit such remedies. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 185 (2d Cir. 1987) (distinguishing

28

the distribution approved in *Agent Orange* from the distribution in *Eisen* in part based on the fact that the *Agent Orange* distribution would more narrowly target the injured class); *Jones*, 56 F. Supp. 2d at 357 (concluding that "Eisen does not forbid all fluid recoveries based on cy pres principles; it only cautions against going to excess in creating class funds that do not meaningfully benefit the class as a whole").

Third, while the court of appeals distinguished *Pfizer* on the grounds that *Pfizer* involved a settlement fund and was thus "a consensual affair made possible by the agreement of the parties," *Eisen*, 479 F.2d at 1012, this distinction appears insufficient, considering the District Court for the Southern District of New York's class certification order in the *Antibiotic Cases*. *See Antibiotic Antitrust Actions*, 333 F. Supp. at 281-83. As noted above, when the Court of Appeals for the Second Circuit was given an opportunity to foreclose the district court's application of a fluid recovery scheme, the court of appeals not only declined to do so—denying both the defendants' motion for a writ of mandamus and their motion for rehearing—but also expressed its confidence that the district court's plan would not impinge on the defendants' due process rights. *Pfizer v. Lord*, 449 F.2d at 119. Far from finding that fluid recovery was acceptable only in settled cases, the court of appeals in fact opined that "if anything," fluid recovery would present less of a due process problem in the *Antibotic Cases* than in the *Pfizer* settlement. *Id.*

As already noted, the Supreme Court granted certiorari in the second *Eisen* appeal. While vacating the Second Circuit Court of Appeals' decision, the Court agreed that the case should be dismissed as a class action on the grounds that the district court's decision regarding individual notice failed to comply with the notice requirements of Rule 23(c)(2). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974). The Supreme Court noted the court of

appeals' discussion of fluid recovery, but did not reach the issue, given that it—like the court of appeals—found the notice requirements of Rule 23 "to be dispositive of petitioner's attempt to maintain the class action." *Id.* at 172 n.10. The Court also suggested that the issues of manageability and fluid recovery may not have been "properly before" the court of appeals. *Id. See also Nelson*, 802 F.2d at 409 (defendant's reliance upon the Second Circuit Court of Appeals' decision in *Eisen* is "misplaced" because the issue of fluid recovery "may not have been properly before the court"). In short, following the Supreme Court's decision, the Court of Appeals for the Second Circuit's discussion of fluid recovery in *Eisen* can properly be characterized as obiter dictum.

Post-*Eisen* caselaw on fluid recovery has been mixed. At least two Second Circuit cases have nominally relied on *Eisen* to reject the application of fluid recovery in non-settled cases. In *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977), *aff'd on other grounds*, 444 U.S. 472 (1980), the Second Circuit Court of Appeals rejected the appellants' request to distribute the unclaimed residue of a class recovery pro rata to those class members who had filed proof of claims. *Id.* at 815-16. Stating that it saw "no reason to change . . . [its] position, firmly stated in *Eisen v. Carlisle & Jacquelin*, disallowing a fluid class recovery," the court of appeals concluded that the distribution proposed in *Van Gemert* had "even less to recommend" it than that in *Eisen*: "This method expressly contemplates that silent class members will not receive any compensation, even indirectly. The claims of the silent class members would be expropriated and a windfall might result for those who appear and collect their share of the damages." *Id.* at 815-16 (internal citations omitted). The court was not apparently concerned over the windfall to the defendant which was permitted to retain its possibly ill-gotten gains.

In *Abrams v. Interco Inc.*, 719 F.2d 23 (2d Cir. 1983), the Second Circuit Court of

Appeals affirmed the District Court for the Southern District of New York's denial of class

certification in a private antitrust action alleging that Interco, a manufactured of footwear and

apparel, had engaged in illegal price-fixing. *Id.* at 28-32. The district court's denial was based

on the fact that common questions would not predominate over individual ones: the suit involved

numerous Interco stores and dealers, "scores of different products," and "varying local market

conditions." *Id.* at 31. In affirming the district court's decision, the court of appeals pointed to

the numerous individual issues of fact involved in damage determination and distribution,

observing that the only way that had been suggested to avoid these issues, "fluid class recovery,"

had "not found favor in this circuit." *Id.*

In both *Van Gemert* and *Abrams*, however, the Second Circuit Court of Appeals took a

step back from its strongest statements in *Eisen*. While the *Van Gemert* court rejected the use of

fluid recovery, the court expressly withheld a decision on its constitutionality, simply holding

that "the circumstances here . . . do not call for this extraordinary remedy." *Van Gemert*, 553

F.2d at 816. Likewise, while the *Abrams* court expressed concerns about the numerous

individual issues present in the case before it, it also made clear that it was not going so far as to

hold that "in order to support damage recovery by a nationwide class plaintiffs would be

obligated to show conduct by Interco violating [the law] with respect to each of its 3500

dealers." *Abrams*, 719 F.2d at 29-30.

Fluid recovery continues to be widely used in the settlement context. *See, e.g., Beecher

v. Able*, 575 F.2d 1010 (2d Cir. 1978); *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ.

4911 (HB), 2005 WL 1325297 (S.D.N.Y. June 6, 2005); *Jones*, 56 F. Supp. 2d 355; *New York v.

Keds Co.*, 93 Civ. 6708 (CSH), 1994 WL 97201 (S.D.N.Y. Mar. 21, 1994); *County of Suffolk v.

Long Island Lighting Co.*, 710 F. Supp. 1428 (E.D.N.Y. 1989), *aff'd in relevant part*, 907 F.2d

1295 (2d Cir. 1990); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396 (E.D.N.Y.

1985), *aff'd in relevant part*, 818 F.2d 179 (2d Cir. 1987).

In *Agent Orange*, the District Court for the Eastern District of New York approved a 180

million dollar settlement in a class action brought by Vietnam veterans and their families against

seven chemical companies for injuries believed to be caused by exposure to Agent Orange and

related phenoxy herbicides. *Agent Orange*, 611 F. Supp. at 1400. The court found that

implementation of any distribution plan based on "traditional tort principles" was "impossible

because of a virtual absence of proof of causation, financially impracticable because of

administrative costs, and not feasible for other compelling reasons." *Id.* at 1402-03. Although

the settlement fund was large, it was not large enough to provide a meaningful individual award

for every class member; distribution of thousands of small individual payments would have

"trivialize[d] the beneficial impact of the settlement fund on the needs of the class." *Id.* at 1431.

As a result, a fluid distribution was required.

Individual awards were reserved for exposed veterans who suffered from total disabilities

and the surviving spouses and children of exposed veterans who had died. *Id.* at 1410-11. In

order to claim their awards, these class members were required to present some evidence of

possible exposure to Agent Orange, but did not have to show that the disability or death had

resulted from exposure. Although clearly unrelated injuries—such as those caused

predominately by trauma—would not be compensated, all other cases of total disability or death

would qualify for individual awards. *Id.* at 1412. The remainder of the settlement was

earmarked for a "class assistance foundation" that would "fund projects and services that will

benefit the entire class." *Id.* at 1432. Because the foundation would "direct the spending of a

large pool of money to fund services," the court found that it would have a much "greater impact

on the problems of the class than if thousands of small, individual payments were made." *Id.*
Although expressing a few concerns about the court's control over the class assistance
foundation, the court of appeals affirmed the district court's plan for distribution of the
settlement. *See Agent Orange*, 818 F.2d at 183-86. *See also In re "Agent Orange" Prod. Liab.
Litig.*, 689 F. Supp. 1250, 1269-70 (on remand, altering settlement to involve "class assistance
program" rather than "class assistance foundation" and increasing control over distribution in
response to the court of appeals' concerns).

Similarly, in *County of Suffolk v. Long Island Lighting Co.*, the District Court for the
Eastern District of New York approved a settlement in a series of complex civil RICO suits
arising out of the construction of the Shoreham atomic energy plant on Long Island. The
settlement provided for compensation to current ratepayers of the defendant utility through a ten-
year rate reduction scheme, *see id.* at 1456-57, and to former ratepayers through a proof of claim
procedure. *See Long Island Lighting Co.*, 710 F. Supp. at 1457. Some of the current ratepayers
who benefitted from the rate reduction had never been overcharged, and some of the former
ratepayers never took advantage of the proof of claim procedure. The settlement also established
a "Citizens Advisory Panel" to help improve electric and gas service on Long Island. *See id.* at
1459. Six years later, the district court approved a request from the Citizens Advisory Panel that
its life be extended and additional financing be provided from the unclaimed portion of the fund
for former ratepayers. *See County of Suffolk v. Long Island Lighting Co.*, No. 87 CIV 0646,
1995 WL 761828 (E.D.N.Y. Dec. 19, 1995).

The court of appeals affirmed the district court's approval of the settlement in *Long
Island Lighting Co. See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir.
1990). It also found unobjectionable the later cy pres distribution of the unclaimed portion of the

fund. *See County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112 (2d Cir. 1997).

The fact that fluid recovery has been so widely used in settled cases—and that its use has been repeatedly affirmed by the court of appeals throughout the country, including the Second Circuit Court of Appeals—is important evidence of the continued legitimacy of fluid recovery in this country and Circuit. *See, e.g., Beecher,* 575 F.2d 1010; *Long Island Lighting Co.,* 907 F.2d 1295; *Agent Orange,* 818 F.2d 179. While courts have particularly "broad supervisory powers over the administration of class-action settlements," *Beecher,* 575 F.2d at 1016, settlements do not stand separate and apart from decisional law. Settlements represent the view of industry, consumers, and the legal profession of what is necessary and desirable in mass consumer cases. It is entirely appropriate for courts to reflect this practice and to respect the modes used by private litigants in disposing of mass actions through aggregation and fluid recovery. *See generally* Samuel Issacharoff & John Fabian Witt, *The Inevitability of Aggregate Settlement: An Institutional Account of American Tort Law,* 57 Vand. L. Rev. 1571 (2004).

The courts' approach to fluid recovery in many of the post-Eisen settled cases suggests a continued willingness to apply fluid recovery beyond the settlement realm. In *Jones v. National Distillers,* a securities fraud class action, the District Court for the Southern District of New York approved a proposed donation of settlement residue to the Legal Aid Society. *Jones,* 56 F. Supp. 2d at 356. Noting that the Court of Appeals for the Second Circuit had "cautioned . . . against a 'fluid recovery' scheme that creates a class fund but deviates too much from principled individual damage calculations and pro rata distributions to class members," the district court nevertheless concluded that "*Eisen* does not forbid all fluid recoveries based on cy pres principles; it only cautions against going to excess in creating class funds that do not meaningfully benefit the class as a whole." *Id.* at 357. Likewise, while the Second Circuit Court

34

of Appeals' approval of fluid distribution in the *Agent Orange* settlement was based in part on the fact that it was a settlement, the court also found comfort in the fact that the distribution in that case, unlike the distributions in *Eisen* and *Van Gemert*, would benefit a class "essentially equivalent" to the class that claimed injury. *Agent Orange*, 818 F.2d at 185. According to the court of appeals, the distribution plan adopted by the district court "simply lack[ed] the sort of 'fluidity' between the class claiming injury and the class receiving recovery that existed in *Eisen* and *Van Gemert*." *Id.*

III.    APPLICATION OF LAW TO FACTS

The plaintiffs' proposed use of fluid recovery in this case would effectuate the policies of civil RICO, a law which was enacted both to provide compensation to injured people and to increase enforcement of federal law through the creation of "private attorneys general." *See, e.g., Rotella v. Wood*, 528 U.S. 549, 557 (U.S. 2000) ("The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity."); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (U.S. 1987) (civil RICO "bring[s] to bear the pressure of 'private attorneys general' on a serious national problem for which public prosecutorial resources are deemed inadequate"); *Sedima v. Imrex Co.*, 473 U.S. 479, 493 (U.S. 1985) (describing the "private attorney general provision" in civil RICO as "designed to fill prosecutorial gaps").

While the class members' estimated individual damages are significantly higher than those in *Eisen*, they are still low enough to make individual lawsuits cost-prohibitive. If the members of this class are to have a fair chance of receiving compensation for their alleged economic injuries—and if they are to hold responsible those corporations whose deliberate

actions allegedly caused those injuries—they may be compelled to do so through the device of a Rule 23(b)(3) class action. And, as in many large-scale consumer class actions, classwide damage determination and fluid distribution may well be necessary in order to effectively and fairly administer this litigation. Given the size of plaintiffs' purported class and the nature of the purchases involved—cigarettes are, like many other consumer products, relatively inexpensive and repeatedly consumed and replaced—"traditional methods of proof [may not be] worthwhile." *California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 472 (Cal. 1986). If plaintiffs' allegations regarding the defendants' actions are proved, then to "allow the defendant[s] to insist upon proof of individual claims [would] enable [them] to benefit from the cumbersome nature of legal proceedings and the lack of sophistication and indolence of the consumer," and would "reward [their] foresight in stealing from the multitude in small amounts." *Bruno v. Superior Court*, 127 Cal. App. 3d 120, 127 (Cal. Ct. App. 1981).

The application of fluid recovery in this case does run the risk of overcompensating some and undercompensating other members of the class who relied differently on the "lights" designation and acted differently and for different reasons relevant to damages. In terms of damage calculation, these important factual issues can be resolved by a jury with the aid of experts and statistical proof. In terms of distribution, concerns about over- and undercompensation may be at least partially allayed through requiring claimants to submit affidavits regarding their understanding of the health issues surrounding "light" cigarettes and their reliance on the "lights" descriptor in addition to information regarding their cigarette purchases. While a court must be alert to issues of due process and must not value efficiency over fairness to both parties, illegally injured plaintiffs should not be fobbed off on the basis of real and imagined management problems that can be circumvented in a fair adjudication.

36

A. *Eisen* and *Van Gemert*

Considering the Court of Appeals for the Second Circuit's failure to make clear the nature of its objections to fluid recovery, *Eisen* is best read as confined to its particular facts. The validity of this approach is confirmed by post-*Eisen* caselaw in the Second Circuit. *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 185 (2d Cir. 1987) (distinguishing the distribution approved in *Agent Orange* from the distribution in *Eisen* in part based on the fact that the *Agent Orange* distribution would more narrowly target the injured class); *Van Gemert v. Boeing Co.*, 553 F.2d 812, 816 (2d Cir. 1977), *aff'd on other grounds*, 444 U.S. 472 (1980) (expressly withholding a decision on the constitutionality of fluid recovery); *Jones v. National Distillers*, 56 F. Supp. 2d 355, 357 (S.D.N.Y. 1999) (concluding that "*Eisen* does not forbid all fluid recoveries based on cy pres principles; it only cautions against going to excess in creating class funds that do not meaningfully benefit the class as a whole"). Given a sensible view of what is necessary for a viable and fair administration of the instant litigation, the fluid recovery proposed by the plaintiffs in this case is not barred by *Eisen*.

Unlike the case in *Eisen*, fluid recovery will not serve in the case at bar as a means of dispensing with individual notice to identifiable class members. While individual notice is not practicable here, that impracticability stems not from concerns about its expense relative to the value of the estimated recovery, *see Eisen v. Carlisle & Jacquelin*, 41 F.R.D. 147, 151 (S.D.N.Y. 1966), but rather from the fact that an appreciable number of the class members cannot be identified in advance. Pls' Litig. Plan 1. The plantiffs' proposed plan of widespread paid media notice is the "best notice practicable under the circumstances," Fed. R. Civ. P 23(c)(2), and is therefore consonant with the requirements of both Rule 23 and the due process clause. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

37

More importantly, the class members in this case are in fact "likely . . . to share in an eventual judgment," as opposed to those in *Eisen*. *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 567 (2d Cir. 1968). In *Eisen*, very few members of the class were expected to come forward to claim their share of the total damages, and the court of appeals thought it likely that many of the class members would receive no benefit at all from the recovery, while many new traders who were not members of the class would receive some benefit from the proposed reduction in trading costs. *Eisen*, 479 F.2d at 1010-11. Although class members' estimated recoveries in the present case may be too low to justify the cost of individual litigation, they are significantly higher than the average damage claim of three dollars and ninety cents predicted in *Eisen*. *Id.* at 1010. As a result, a large number of class members can be expected to come forward to claim damages. Furthermore, while there are legitimate concerns about over- and undercompensation of class members because of individual reliance on the defendants' alleged misrepresentation, these concerns can be dealt with through requiring the kind of affidavit from claimants described above.

For much the same reason, the fluid distribution proposed in the present case does not run afoul of the court of appeals' decision in *Van Gemert*. In *Van Gemert*, class members who had already received their share of a total damage recovery requested that the court allow distribution of the unclaimed residue to them on a per capita basis. *Van Gemert*, 553 F.2d at 815. The Second Circuit Court of Appeals rejected this as an impermissible "windfall" to the claiming plaintiffs and an "expropriation" of the claims of the silent class members, who would receive no benefit at all from the distribution. *Id.* at 816. In the present case, no such windfall will occur. Damages can be distributed to claiming class members on the basis of the number of "light" cigarettes purchased in the relevant geographic locations during the relevant time period.

The residue—if any—can be distributed on the basis of cy pres principles to be determined at a later time.

### B. Due Process and Seventh Amendment Issues

The plaintiffs' proposed use of fluid recovery would not deprive the defendants of their right to due process or of their Seventh Amendment right to a trial by jury, for all of the reasons set forth by the District Court for the Southern District of New York in the *Antibiotic Cases*, 333 F. Supp 278 (S.D.N.Y. 1971), and by the Michigan and California courts of appeals in *Cicelski v. Sears, Roebuck & Co*, 132 Mich. App. 298 (Mich. Ct. App. 1984), and *Bruno v. Superior Court*, 127 Cal. App. 3d 120 (Cal. Ct. App. 1981). The defendants are not "constitutionally entitled to compel a parade of individual plaintiffs to establish damages." *Antibiotic Antitrust Actions*, 333 F. Supp. at 289. Rather, they are entitled to a full and fair hearing—by a jury if they so request—of all of the issues relevant to their liability to the plaintiff class. Aggregate determination of the plaintiff class' damages would provide this. In an aggregate determination, defendants would be able to challenge the plaintiffs' offers of proof regarding the extent of reliance by class members and the amount of their economic damages. If the jury does not find that the plaintiffs have proved the economic damages they allege the defendants caused them, the defendants will not be held liable. And if defendants are held liable, they will, as required by federal substantive law, be held liable for no more than treble the amount of the economic damages proved to have been caused by their actions. The fact that the proof is on a classwide rather than individual basis would not change this result. *See Antibiotic Antitrust Actions*, 333 F. Supp at 288-89; *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 839 (E.D.N.Y. 1984) ("No matter what system is used the purpose is to hold a defendant liable for no

more than the aggregate loss fairly attributable to its . . . conduct. As long as that goal is met a defendant can have no valid objection that its rights have been violated.").

Fluid distribution poses no due process or Seventh Amendment concerns. As the California Court of Appeals persuasively explained in *Bruno*, "a class action which affords due process of law . . . through the time when the amount of [the defendant's] liability is calculated cannot suddenly deprive him of his constitutional rights because of the way the damages are distributed." *Bruno*, 127 Cal. App. 3d at 129. If the defendants are held liable to the plaintiffs, they will be held liable only to extent of the "aggregate loss fairly attributable to their . . . conduct." *Agent Orange*, 597 F. Supp. at 839. The method by which the damages are then distributed has no bearing on the defendants' constitutional rights.


C. Rules Enabling Act

The plaintiffs' proposed use of fluid recovery would not alter the substantive requirements of RICO, and would not, therefore, violate the Rules Enabling Act. Under the civil RICO statute, the plaintiffs are required to prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima*, 473 U.S. at 496. In addition, plaintiffs must prove that they have been injured in their "business or property by the conduct constituting the violation." *Id.* Although the actual probative force of the plaintiffs' proposed classwide proof remains to be seen, these elements are not inherently less provable on a classwide than on an individual basis, and the plaintiff class will be held to exactly the same standard of proof as in individual trials. *See* Note, *Managing the Large Class Action: Eisen v. Carlisle & Jacquelin*, 87 Harv. L. Rev. 426, 448-49 (1973).

The rights of the plaintiff class members are not enlarged by the classwide nature of the damage determination. If the defendants' liability is established, total damages should be equivalent to what they would be if each class member were required to come forward and prove his or her damages separately. *Id.* at 449. Nor are the rights of the class members abridged by classwide adjudication. By submitting a claim, each individual member of the class will be able to receive his or her treble damages, "just as if he [or she] had brought an individual action." *Id.*

A more serious question under the Rules Enabling Act is posed by the danger of overcompensation inherent in the plaintiffs' fluid distribution plan. It is possible that some claimants will benefit from the plaintiff class' recovery despite the fact that they did not rely on defendants' alleged misrepresentations regarding "light" cigarettes and were not, therefore, injured in their business or property by defendants' actions. *See Metromedia v. Fugazy*, 983 F.2d 350, 368 (2d Cir. 1992) (in the context of an alleged RICO predicate act of mail fraud, requiring proof of reliance in order to establish the necessary causal connection between the defendant's actions and the plaintiff's injury). The risk of such overcompensation may be limited by requiring proof from claimants concerning the extent of their reliance during the distribution stage.

Ultimately, the risk of overcompensation here cannot be determinative. It is the large scale of the defendants' alleged fraud that makes fluid recovery necessary to fully effectuate the substantive law in this case. It would be paradoxical if civil RICO—a law which was enacted by Congress both to compensate victims and to increase enforcement of federal laws against organizations acting illegally—could not be applied precisely where defendants' fraud caused the broadest harm. *See, e.g.*, *Rotella*, 528 U.S. at 557; *Malley-Duff & Associates, Inc.*, 483 U.S. at 151; *Sedima*, 473 U.S. at 493.

RICO's "policy of compensation is. . . better advanced" by the use of a fluid distribution in this case than by "permitting the defendant[s] to retain profits that [they] procured in violation of the substantive statute[] from which the policy derives." Natalie A. DeJarlais, Note, *The Consumer Trust Fund: A Cy Pres Solution to Undistributed Funds in Consumer Class Actions,* 38 Hastings L.J. 729, 745 (1987). The fact that a relatively few uninjured individuals may also benefit from that distribution "should no more make such relief improper than does the fact that third parties may benefit from injunctions make that relief improper." *See* Note, *Managing the Large Class Action: Eisen v. Carlisle & Jacquelin,* 87 Harv. L. Rev. 426, 450 (1973); *see also* Newberg on Class Actions § 10:22 (4th ed. 2002) ("To the extent that cy pres distribution actually benefits a sufficient number of injured class members, the monies paid to third parties are an incidental but necessary cost that must be accepted in order to confer the benefits in a feasible way to a large proportion of the injured class members.").

IV.    CONCLUSION

The use of fluid recovery is appropriate in the instant case. It alone does not merit denial of certification and dismissal. The detailed methods of fixing damages and distribution will be left to determination after discovery is completed and the case is further developed.

SO ORDERED.

Jack B. Weinstein

Dated: November 14, 2005
        Brooklyn, New York

42