UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BARBARA SCHWAB, et al., )
individually, and on behalf of a class of all )
others similarly situated, ) Case No. CV-04-1945 (JBW) (SMG)
 )
Plaintiffs, )
 )
v. )
 )
PHILIP MORRIS USA, INC., et al., )
 )
Defendants. )

**PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER
REGARDING PRODUCTION OF MATERIALS RELATED TO
DR. HAUSER'S ATTEMPTED SURVEY**

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiffs respectfully object to the Magistrate Judge's order, announced at the February 27, 2006 hearing,[1] regarding production of materials related to Dr. Hauser's attempted survey.[2] Because those materials were not available to Dr. Hauser when he formed the opinions he is offering in this case and because Dr. Hauser has not revised his opinions in consideration of or reliance upon those materials, Plaintiffs submit that the ruling requiring their production is clearly erroneous and contrary to law.[3]

---

[1] The transcript of that hearing ("Tr. Feb. 27, 2006"), which contains the Magistrate Judge's order, is attached to the Declaration of Benjamin D. Brown ("Brown Decl.") as Exhibit A.

[2] Plaintiffs incorporate by reference their letters previously filed with the Court on this subject, *see* Docket Nos. 821 and 831, attached to Brown Decl. as Exhibits B and C, respectively, as well as their arguments at the February 27, 2006 hearing.

[3] *See* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (finding that matters involving pretrial discovery are generally considered "nondispositive of the litigation" and thus are subject to the "clearly erroneous or contrary to law standard") (citation

Because the Magistrate Judge has directed that these materials be produced by March 10, 2006, *see* Tr. Feb. 27, 2006 at 63 (Exhibit A), Plaintiffs request expedited consideration of these objections.

## I. BACKGROUND

### A. The Opinions Being Offered by Dr. Hauser in this Case

Dr. Hauser offers expert opinions as to "the value and importance of health risks to 'light' cigarette consumers in their decision to purchase a 'light' cigarette." Expert Witness Report by Dr. John R. Hauser, Aug. 22, 2005, attached to Brown Decl. as Exhibit D, ¶ 4. To reach his conclusions, Dr. Hauser used a methodology known as "web-based conjoint analysis." *Id.* ¶ 15. Conjoint analysis is very different from a standard survey in which respondents are simply asked their views on questions put directly to them. As Dr. Hauser explains in his report:

> The general idea behind conjoint analysis is that consumers' preferences for a particular product are driven by features or descriptions of features embodied in that product. For example, a cigarette might be described by features such as: (i) pack type (hard or soft); (ii) degree of perceived health risks; (iii) taste; and (iv) price. . . . When applying (decompositional) conjoint analysis respondents are asked to make holistic judgments about products (or product descriptions) or to choose among products (or product descriptions). That is, consumers are shown product profiles made up of the features or descriptions of features and asked to indicate their preferences for these profiles or to choose among these profiles ("choice task"). The conjoint analysis methods use the holistic judgments or choice tasks to decompose respondent preferences for a product into the partial contribution of these feature levels or descriptions

---

omitted); *Gorman v. Polar Electro, Inc.*, 137 F. Supp. 2d 223, 226 (E.D.N.Y. 2001) (sending discovery ruling back to the magistrate as it was contrary to law). The Supreme Court has held that a ruling is "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City, North Carolina*, 470 U.S. 564, 565 (1985) (quotation omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Pisacane v. Enichem America, Inc.*, No. 94 CIV. 7843 (JFK) (NRB), 1996 WL 391865, at *2 (S.D.N.Y. July 12, 1996).

W0DFD0791

("partworths"). These partworths are then estimated from respondent preferences or choices with the appropriate statistical methods. The partworths for feature levels are identified with the estimation methods so that the partworths best predict consumer preferences or choices. The difference between the smallest and largest partworths for levels of each feature can be used to calculate the relative importance of each feature in purchase decisions. Importance refers to the relative value of changing that feature from its least preferred level to its most preferred level.

*Id.* ¶ 16.

### B. Dr. Hauser's Attempted Survey

In its ruling on the statute of limitations, this Court suggested that "plaintiffs' experts might develop a model showing how many smokers of 'light' cigarettes were ignorant of the alleged fraud in each relevant year." Order, Docket No. 774, attached to Brown Decl. as Exhibit E, at 11. Because Plaintiffs' counsel did not know whether such an analysis was possible, they asked Dr. Hauser to consult with them on this additional issue. Plaintiffs' counsel contemplated that, if he could conduct a reliable survey on this issue, it would be submitted in a new expert report. In fact, Dr. Hauser was unable to complete such a survey that would produce reliable results, as he explained in his revised report:

> In response to a ruling by the court on the issue of statute of limitations, counsel for Plaintiffs also asked me to conduct a test survey to determine whether accurate dates could be obtained from respondents regarding when they first learned that light cigarettes are no less harmful than regular cigarettes, and when they first learned that the cigarette companies had defrauded them. After attempting to conduct such a survey, I have concluded that I would have little confidence that the responses would be sufficiently accurate. *I do not rely on any such survey as part of my expert opinions in this case.*

W0DFD0792

Expert Witness Report by Dr. John R. Hauser, Dec. 19, 2005, attached to Brown Decl. as Exhibit F, ¶ 4 n.2 (emphasis added). This attempted survey did not involve conjoint analysis.[4]

Defendants thereafter requested production of materials related to this attempted survey, even though:

- Dr. Hauser specifically states that he "do[es] not rely on any such survey as part of [his] expert opinions in this case;"

- Dr. Hauser's opinions rest on conjoint analysis, while the attempted survey involved a totally different survey methodology;

- the attempted survey concerned a separate and distinct issue – *when* smokers first learned that light cigarettes were no safer and *when* they learned that they were defrauded – from the conjoint analysis, which concerned "the value and importance of health risks to 'light' cigarette consumers in their decision to purchase a 'light' cigarette;" and

- the attempted survey was conducted *after* Dr. Hauser had formed his opinions, reflected in his August 2005 report, based on the conjoint analysis.

Plaintiffs opposed production of these materials, and Defendants moved to compel.

### C. The February 27, 2006 Hearing

At the February 27, 2006 hearing, the Magistrate Judge granted Defendants' motion to compel, stating as follows:

---

[4] Dr. Hauser's conclusion that the survey he attempted would not produce reliable results is consistent with the independent testimony *elicited by Defendants* from Plaintiffs' other experts that such "retrospective" surveys would be difficult to conduct reliably. *See, e.g.*, Deposition of Stanley Presser, Ph.D., excerpts attached to Brown Decl. as Exhibit G, at 20:4-26:5 (there are "significant concerns" about retrospective surveys because "the longer the elapsed time [between the opinion and the survey] the more the concern should be about the accuracy of the report"); Deposition of Joel B. Cohen, Ph.D., excerpts attached to Brown Decl. as Exhibit H, at 329:16 – 330:19 (such a study "might be difficult" and "in the best of possible worlds you might not want to go back in time and do a retrospective survey"); Deposition of Marvin E. Goldberg, Ph. D., excerpts attached to Brown Decl. as Exhibit I, at 50:23-55:5 (while attempting such a survey would be "worth a shot" it would be "difficult" to perform a reliable retrospective survey).

4

W0DFD0793

> Federal Rule Of Civil Procedure 26(a)(2)(B) mandates disclosure of all data or information considered by an expert. It is, in other words, not necessary that an expert rely upon information or data before its disclosure is required by the federal rules. . . . The subject matter of the survey data in issue in the motion now before the court involves an attempt by Dr. Hauser made in connection with his role as an expert in this litigation and not for any other purpose but to conduct a survey intended to determine the time when respondents first learned that light cigarettes were no less harmful than regular ones. Thus, both the survey Dr. Hauser attempted to conduct and the subject matter of his expert report have to do essentially with smokers' perceptions of the relative health risks of light cigarettes and regular cigarettes. Thus, Dr. Hauser's attempted survey clearly bears some relation to the matters about which plaintiffs intend to have him testify and disclosure of the materials related to the survey is therefore required.

Tr. Feb. 27, 2006, at 56-57 (Exhibit A). Plaintiffs now respectfully object to this ruling.

## II. ARGUMENT

Production of materials related to Dr. Hauser's attempted survey is inappropriate for several reasons:

- Dr. Hauser did not consider or rely upon the attempted survey, placing it outside the scope of Federal Rule of Civil Procedure 26.

- with respect to the attempted survey, Dr. Hauser was acting as a *consulting expert*, not a testifying expert, making it immune from discovery; and

- Defendants' arguments are contrary to the Court's ruling on production of the Philip Morris Total Exposure Study ("TES") and the Defendants' prior arguments concerning that issue.

W0DF0794

A.  **Dr. Hauser Did Not Consider or Rely Upon the Attempted Survey**

In his order, the Magistrate Judge found that Dr. Hauser "considered" the attempted survey in reaching his opinions in this case even if he did not "rely upon" it. This is not correct. As discussed above, Dr. Hauser's opinions are based on his conjoint analysis, which involved a different methodology, concerned a different subject, and was conducted *at an earlier time* than the attempted survey. The attempted survey could not have been considered by Dr. Hauser in forming his opinions about his conjoint analysis because it had not yet been contemplated. Moreover, Dr. Hauser explicitly states that he "do[es] not rely on any such survey as part of [his] expert opinions in this case." That fact is uncontroverted. Materials related to the attempted survey are therefore outside the scope of Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(B) (requiring disclosure of "the data or other information considered by the witness *in forming the opinions*") (emphasis added).

B.  **With Respect to the Attempted Survey, Dr. Hauser Was Acting as a Consulting Expert, Not a Testifying Expert**

With respect to the attempted survey, Dr. Hauser acted merely as a *consulting expert* to Plaintiffs, and consequently, his work product in this regard is not discoverable, as Plaintiffs do not intend to have Dr. Hauser testify on this subject. Indeed, had this attempted survey been undertaken by some other consulting expert, Defendants clearly would not be entitled to it. The result should be no different simply because Dr. Hauser is serving as a testifying expert on a different issue in this case.

Consulting experts are "generally immune from discovery." *Chiquita Int'l v. M/V Bolero Reefer*, No. 93 Civ. 0167 (LAP), 1994 U.S. Dist. LEXIS 5820 (S.D.N.Y. May 6, 1994) (citing Fed. R. Civ. P. 26(b)(4)(B)). Although Dr. Hauser is serving as a testifying expert with respect to his opinions about "the value and importance of health risks to

'light' cigarette consumers in their decision to purchase a 'light' cigarette," one court recently explained that an expert can be a "testifying expert" at some times and a "consulting expert" at others:

> Dr. Rhodes was, and still is, a technical consultant for Astra in its worldwide litigations relating to omeprazole. Andrx has argued that all communications involving Dr. Rhodes must be disclosed because Dr. Rhodes testified as an expert during Astra's Korean proceedings. However, only some of Dr. Rhodes' work related to actual testimony. . . . Accordingly, some communications with Dr. Rhodes relate to his work as a non-testifying expert. *Andrx is only entitled to documents that formed the basis for his testimony.* Some of the documents Andrx seeks, however, were created after Dr. Rhodes testified in the Korean proceedings. Those documents could not form the basis for his opinions. Thus, documents dated after Dr. Rhodes testified in Korea on June 10, 1994, *are not discoverable because Dr. Rhodes was a consulting expert at that time.*

*Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 105 n.12 (S.D.N.Y. 2002) (citations omitted and emphases added); *see also Beverage Mktg. Corp. v. Ogilvy & Mather Direct Response, Inc.*, 563 F. Supp. 1013, 1014 (S.D.N.Y. 1983) ("It is conceivable that an expert could be retained to testify and in addition to advise counsel outside of the subject of his testimony. Under such a circumstance it might be possible to claim a work product privilege if this delineation were clearly made."). Here, the delineation between Dr. Hauser's expert report and his attempted survey is clear, as they concern two totally discrete issues.[5]

---

[5] The fact that Plaintiffs previously contemplated that Dr. Hauser would testify regarding his new survey if it produced reliable results is irrelevant. *See Ross v. Burlington N. R. Co.*, 136 F.R.D. 638, 638-39 (N.D. Ill. 1991) ("Although plaintiff may have originally designated the witness as a testifying expert, plaintiff has the prerogative of changing his mind. . . . The court cannot find, then, that the shift in designation affects the witness's current status as a non-testifying expert witness and denies him the protection afforded such a witness."); *Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11, 13-14 (N.D. Ill. 1972) (holding that when an expert originally was designated to testify as to two issues but later was limited to one issue, he could not be deposed as to the issue on which he was no longer testifying).

W0DFD0796

### C.   Defendants' Arguments Are Contrary to the Court's TES Ruling

On April 20, 2005, the Court denied Plaintiffs' motion to compel production of the Total Exposure Study ("TES"). *See* Order, Docket No. 175, attached to Brown Decl. as Exhibit J.  Although Defendants strenuously argued before the Magistrate Judge that the TES should be governed by a different set of rules, this cannot be true.

Like the TES, Dr. Hauser is not relying on his attempted survey, specifically because he concluded he had no confidence in the results that it would have produced. The attempted survey is in this sense incomplete.  Therefore, the reasoning from the Court's April 20, 2005 order regarding the TES applies equally here: Dr. Hauser should not be required to produce the uncompleted attempted survey.

Significantly, at the hearing regarding the TES, Defendants' primary argument was that the TES was protected from discovery because Defendants did not plan to rely on it. *See* Tr., Apr. 19, 2005, at 3:3-5 (excerpts attached to Brown Decl. as Exhibit K) ("The first point is that Philip Morris is not relying on the study and no defense expert is relying on the study.").  As Defendants' counsel explained at that hearing, this was true despite the fact that some of Defendants' experts were themselves involved in the study:

> Obviously, to the extent that Philip Morris' internal scientists are called to testify [as expert witnesses], some of them have been involved in the study. *However, they're not going to be relying on the study.* And the reason they're not going to be relying on the study goes to my second point and that is it is an ongoing study and the statistical analysis of the study has barely begun.  There is nothing to rely on.  They're not going to rely on the results.  They don't have statistical analysis.

*Id.* at 4:12-23 (emphasis added).  Indeed, Defendants' counsel went on to argue that Plaintiffs' request for a study on which no expert would rely was *unprecedented*:

> There is *little utility* in the study for a number of reasons.  First, as I say, we're not relying on the study.  *No one will be relying on the study.*

8

> Plaintiffs have not cited a single case like this where no one is relying on the study that's not incorporated in anyone's analysis.

*Id.* at 6:1-7 (emphases added).

Similarly, Plaintiffs do not intend to rely on Dr. Hauser's attempted survey. As Defendants argued regarding the TES, there is "little utility" to the data because Dr. Hauser concluded that he would "have little confidence that the responses would be sufficiently accurate." If this Court were to rule that the raw, unanalyzed data from Dr. Hauser's attempted survey are relevant and discoverable despite the fact that Plaintiffs and their experts are not relying on it, the same would have to be true for the raw, unanalyzed data from the TES.

### III. CONCLUSION

For the foregoing reasons, the Court should set aside the Magistrate Judge's ruling and deny Defendants' motion to compel production of materials related to Dr. Hauser's attempted survey.

Dated: March 2, 2006.    Respectfully submitted,

/s/ Michael D. Hausfeld
Herbert E. Milstein
Michael D. Hausfeld
Lisa M. Mezzetti
Paul T. Gallagher
Douglas J. McNamara
Benjamin D. Brown
James J. Pizzirusso
Brent W. Landau
Andrea L. Hertzfeld
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005

W0DF0798

Phone:  (202) 408-4600
Fax:  (202) 408-4699

Burton H. Finkelstein
William P. Butterfield
Richard M. Volin
Hilary K. Ratway
FINKELSTEIN, THOMPSON
  & LOUGHRAN
1050 30th Street, N.W.
Washington, DC  20007
Phone:  (202) 337-8000
Fax:  (202) 337-8090

LEAD ATTORNEYS FOR PLAINTIFFS

W0DFD0799

OF COUNSEL

Jonathan Alpert
THE ALPERT LAW FIRM
5920 River Terrace
Tampa, FL 33604
Phone: (813) 223-4131
Fax: (813) 228-9612

David F. Sorenson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-5705
Fax: (215) 875-4604

Van Bunch
BONNETT, FAIRBOURN,
  FRIEDMAN & BALINT, P.C.
57 Carriage Hill
Signal Mountain, TN 37377
Phone: (423) 886-9736
Fax: (602) 274-1199

Gary M. Farmer, Jr.,
FREEDLAND, FARMER,
  RUSSO & SHELLER
2665 Executive Park Dr., Suite 3
Weston, FL 33331
Phone: (954) 467-6400
Fax: (954) 670-2530

G. Martin Meyers
LAW OFFICES OF G. MARTIN MEYERS
35 West Main Street, Suite 106
Denville, NJ 07834
Phone: (973) 625-0838
Fax: (973) 625-5350

Lisa J. Rodriguez
TRUJILLO, RODRIGUEZ &
  RICHARDS, LLC
8 Kings Highway West
Haddonfield, NJ 08033
Phone: (856) 795-9002
Fax: (856) 795-9887

Thomas V. Urmy, Jr.
Edward F. Haber
SHAPIRO, HABER & URMY, LLP
53 State Street
Boston, MA 02109
Phone: (617) 439-3939
Fax: (617) 439-0134

Stephen Sheller
SHELLER, LUDWIG & BADEY
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102
Phone: (215) 790-7300
Fax: (215) 546-0942

Russell Smith
R. Bryan Nace
A. RUSSELL SMITH LAW OFFICE
503 Key Building
159 S. Main Street
Akron, Ohio 44308
Phone: (330) 434-7167
Fax: (330) 434-1795

Gerson Smoger
SMOGER & ASSOCIATES, L.L.P.
3175 Monterey Blvd., Suite 3
Oakland, CA 94602
Phone: (510) 531-4529
Fax: (510) 531-4377

Esther Berezofsky
WILLIAMS, CUKER & BEREZOFSKY
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Phone: (856) 667-0500
Fax: (856) 667-5133

W0DFD0801

## CERTIFICATE OF SERVICE

I, Paul T. Gallagher, hereby certify that a true and correct copy of the foregoing Plaintiffs' Objections to the Magistrate Judge's Order Regarding Production of Materials Related to Dr. Hauser's Attempted Survey was served upon the counsel listed on the attached Service List via electronic mail.

Dated: March 2, 2006

/s/ _____
Paul T. Gallagher

W0DFD0802

## SERVICE LIST

Harold K. Gordon
Steven P. Harte
Jones Day
222 East 41st Street
New York, NY 10017-6702
212/326-3939
fax: 212/755-7306

Mark Belasic  mabelasic@jonesday.com
Theodore M. Grossman
Jones Day
901 Lakeside Ave., North Point
Cleveland, OH 44114-1190
216/586-3939   fax: 216/579-0212

*Counsel for R.J. Reynolds Tobacco Company*
*and Brown & Williamson Tobacco Corporation*

Guy Miller Struve
Matthew Stewart
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
212/450-4000   fax: 212/450-3800
Guy.struve@dpw.com
**Counsel for Altria Group Inc.**

Judith Bernstein-Gaeta
Brian T. Edmunds
Arnold & Porter
555 12th Street, N.W.
Washington, D.C. 20004
202/942-5493   fax: 202/942-5999
judith_gaeta-bernstein@aporter.com
**Counsel for Philip Morris USA Inc.**

Philip Pfeffer  Ppfeffer@chadbourne.com
Joseph Falcone  jfalcone@chadbourne.com
Chadbourne & Parke, LLP
30 Rockefeller Plaza
New York, NY 10112
212/408-5100   fax: 212/541-5369
**Counsel for Defendant British American Tobacco (Investments) Limited**
 **and British American Tobacco, p.l.c.**

Alan Mansfield      mansfielda@gtlaw.com
Stephen L. Saxl
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
212/801-2100   fax: 212/801-6400

William L. Allinder
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
816/474-6550   fax: 816/421-2708
wallinder@shb.com

**Lorillard Tobacco Company**

Peter A. Bellacosa
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
212/446-4800   fax: 212/446-4900
pbellacosa@kirkland.com

**Counsel for Philip Morris**

Leonard A. Feiwus
Julie R. Fischer  (JF-7755)
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019
212/506-1785   fax: 212/506-1800
*jfischer@kasowitz.com*

**Counsel for The Liggett Group, Inc.**

2

W0DFD0803