Page 1

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ---------------------------------x
     McLAUGHLIN,
 3                 Plaintiff,

 4           versus                       CV 04-1945

 5   PHILLIP MORRIS, ET AL.,
                   Defendant.             United States Courthouse
 6                                        Brooklyn, New York
     ---------------------------------x
 7
                                          September 12, 2005
 8                                        10:00 a.m.

 9              TRANSCRIPT OF HEARING

10   Before:    HON. JACK B. WEINSTEIN,  District Judge

11                     APPEARANCES

12   Attorneys for Plaintiff:

13   COHEN MILLSTEIN HAUSFELD & TOLL, PLLC
     150 East 52nd Street
14   New York, N.Y.  10022
     BY:  MICHAEL D. HAUSFELD, ESQ.
15        PAUL GALLAGHER, ESQ.

16

17   SHELLER, LUDWIG & BADEY
     1528 Walnut Street
18   Philadelphia, Pa  19102
     BY:  JUDY SHOPP, ESQ.

19

20

21   SMOGER & ASSOCIATES, P.C.
     3175 Monterey Blvd
22   Orlando, Va  94602
     BY:  GERSON H. SMOGER, ESQ.

23

24

25
```

Page 110

1   THE COURT:  Yes, everybody, I think, agrees with
2   that, including the defendants.
3       Were they buying because they thought lights meant
4   something other than less tar which was right on packages?
5       MR. HAUSFELD:  And that gets us to certain analogies
6   by courts of the fraud aspects of a RICO violation.
7       THE COURT:  They were required to put the amount of
8   tar right on the cigarette, right?
9       MR. HAUSFELD:  No.
10      There is no package of lights that contain the FTC
11  numbers on the face of the package.  What is on the face of
12  the package is lights.
13      THE COURT:  What is on the face of the package is
14  the warning that these things have a habit but didn't all
15  their advertisements show the amount of tar?
16      MR. HAUSFELD:  I think so.  I think the
17  advertisements did but not the package.
18      We're focusing on the packages, your Honor, because
19  one of the elements that Courts looked at with respect to a
20  RICO fraud violation is:  Was the allegation of fraud written
21  or oral?  Was it uniform or variable?
22      That is all answered by the fact that we are
23  focusing on the descriptor lights on each and every package.
24      The courts in the Paine Webber case, for example,
25  the Second Circuit said:  How do we know even though there may

Page 111

1   have been a uniform written presentation that everyone
2   received that uniform written presentation?
3       Every package of lights had the word lights.  You
4   could not get a package --
5       THE COURT:  And none of them had the amount of tar?
6       MR. HAUSFELD:  I don't believe so.  Not the package
7   itself.
8       THE COURT:  Okay.
9       MR. HAUSFELD:  You did not get a package of lights
10  with that descriptor unless you asked for that package of
11  lights by name.
12      So part of the questions that have troubled the
13  circuits and the district courts, that is the variability in
14  the material representation, the uniformity of the
15  representation and the receipt of the representation are all
16  absent here.
17      THE COURT:  Do you have expert or other evidence
18  that lights meant less harmful to the user?
19      MR. HAUSFELD:  Yes, every one of them including the
20  public health community including the defendants' own
21  documents and the defendants' own officers.
22      THE COURT:  But the word lights independent of the
23  amount of tar meant less harmful?
24      MR. HAUSFELD:  Yes.
25      THE COURT:  And your experts say that?

Page 112

1   MR. HAUSFELD:  As to their documents and their
2   witnesses, yes.
3       So this boils down now to an industry understanding
4   that its very viability was in jeopardy, knowing that there
5   was a product which they were marketing called lights could
6   shift that market from regular to the light brand of cigarette
7   on the consumers's belief that lights were less harmful and
8   the market did shift and the documents that are in defendants'
9   own files unequivocally demonstrate that the lights market was
10  a health concerned market.  It was created not to pull the
11  market or respond to consumer demand but to push the market,
12  say here is a light, safer cigarette.
13      THE COURT:  Excuse me.  Your PX 1 on the board there
14  says what lights meant to the consumer was less tar.  Then you
15  had to go through the syllogism, less tar equals less harmful
16  therefore lights equal less harmful.
17      And the question I posed earlier to your learned
18  opponents and am posing to you is:  Did the consumer go
19  through the less tar step because the tar amounts were decided
20  by the FTC, right?
21      MR. HAUSFELD:  The precise amounts of tar delivery
22  to a machine were measured by the FTC but it was in the
23  defendants' own words common knowledge that less of something
24  harmful was safer.
25      THE COURT:  Are you in a sense saying that the

Page 113

1   consumer didn't go through the less tar analysis directly to
2   the conclusion at the instigation of the defendants that
3   lights meant less harmful?
4       MR. HAUSFELD:  Yes, less tar was synonomous with
5   less harmful.  So when they saw lights, lights was essentially
6   the -- was synonymous without going through the middle step
7   less harmful.  Lights had less tar, less tar meant less
8   harmful, regardless of the specific numbers.
9       THE COURT:  All right, I think you are giving up
10  something there but that's what you say, that is fine.
11      MR. HAUSFELD:  What I am saying, without giving up
12  anything, your Honor, is there did not have to be a segregated
13  three-step approach.
14      THE COURT:  If a kid wanted to go out and smoke and
15  he saw lights or she saw lights, did that kid go through the
16  lights equal less tar, less tar equals less harm, lights equal
17  less harm or did they just say lights means less medical
18  problems?
19      MR. HAUSFELD:  Probably at the time that lights were
20  first introduced, there was more of a lights was less tar,
21  less tar was less harmful.
22      THE COURT:  That is back in 1970.
23      MR. HAUSFELD:  And over time the less tar less
24  harmful became subsumed automatically in the descriptor
25  lights.