## Page 1

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                :    04 CV-0195
McLAUGHLIN, et al.,
                                :

            Plaintiffs          :

       V.                       :    U.S. Courthouse
                                     Brooklyn, New York
PHILIP MORRIS USA, et al,       :

            Defendants.
                                     March 17, 2006
- - - - - - - - - - - - - - - X     2:30 p.m.


            TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JACK B. WEINSTEIN
            UNITED STATES UNITED STATES JUDGE

APPEARANCES:

For the Plaintiffs:   COHEN, MILSTEIN, HAUFELD & TOLL PLLC
                      One South Broad Street
                      Philadelphia, Pa. 19107
                      BY:  MICHAEL E. HAUSFELD, ESQ.
                           PAUL T. GALLAGHER, ESQ.
                           BRENT LANDAU, ESQ.

For the Defendants:   JONES DAY
                      North Point
                      901 Lakeside Avenue
                      Cleveland, Ohio 44114-1190
                      BY:  THEODORE M. GROSSMAN, ESQ.
                      For RJ Reynolds & Brown



                        BHS OCR CM CSR
```

## Page 2

```
APPEARANCES:

                      ARNOLD & PORTER LLP
                      555 12th Street N.W.
                      Washington, D.C. 20004
                      BY: JUDITH BERNSTEIN-GAETA
                      For Philip Morris USA


                      GREENBERG TRAURIG
                      200 Park Avenue
                      New York, N.Y. 10166
                      BY: ALAN MANSFIELD, ESQ.
                          STEPHEN L. SAXL, ESQ.
                      For Lorillard Tobacco Company


                      KIRKLAND & ELLIS LLP
                      200 East Randolph Drive
                      Chicago, Il 60601
                      BY: DAVID M. BERNICK, P.C.
                      For Philip Morris USA, Inc.


                      CHADBOURNE & PARKE LP
                      30 Rockefeller Plaza,
                      New York, N.Y.
                      JOSEPH G. FALCONE, ESQ.
                      PHILIP PFEFFER, ESQ.
                      For British American Tobacco


Court Reporter:       Burton H. Sulzer
                      (718) 260-4526


Proceedings recorded by mechanical stenography, transcript
produced by CAT.



                        BHS OCR CM CSR
```

## Page 3

(case called-appearances noted.)

THE COURT: What can I do to help you counsel?

MR. LANDAU: Your Honor, Brent Landau for plaintiffs.

Your Honor, we have filed objections to the magistrate judge's ruling on the production of materials related to an attempted survey by Dr. Hauser, who is one of plaintiffs' experts in the case.

The issue here is whether the plaintiffs should be compelled to produce an attempted survey that was prepared by an expert in a consulting capacity and was not considered by the experts in forming the opinions that they will be offering in this case.

Under the Federal Rules of Civil Procedure, such materials do not need to be produced and so we submit, respectfully, that the magistrate judge's ruling on this issue requiring their production was clearly erroneous and contrary to law.

To place the issue, your Honor, in the proper context, Dr. Hauser's opinions in this case are about the value and importance of health risks to Lite cigarette consumers and their decision --

THE COURT: You don't have to stand if you're more comfortable sitting.

MR. LANDAU: Fine, your Honor.

Burton H. Sulzer - OCR, CM, CRR

## Page 4

The value and importance of health risks to consumers of Lite cigarettes in their decision to purchase Lite cigarettes, and the methodology that Dr. Hauser used is known as conjoint analysis.

It's important to note that conjoint analysis is not simply a straightforward survey in which respondents were asked to give their views on certain questions, it seeks to uncover the importance of particular product attributes by presenting respondents with choices and have them express their preference.

The survey that is at issue here, your Honor, was in response to the statute of limitations ruling that your Honor issued in which the court suggested that a survey be done to determine when it was that smokers learned, first, that they had been defrauded by the defendants, and because it was unclear whether such a survey could in fact be conducted, the plaintiffs' counsel consulted with their experts as to whether such a survey could be done and, in fact, as several of plaintiffs' experts testified during their depositions under questioning by the defendants' counsel, there were a number of concerns expressed by plaintiffs' experts as to whether such a survey was even possible.

Dr. Hauser agreed to try it, and he did try to conduct a survey on that issue, and certainly plaintiffs' counsel contemplated that if that survey were something that

Burton H. Sulzer - OCR, CM, CRR

## 21

here. It's always bothered me that there's a sharp distinction apparently made in the rule between those experts who are going to be witnesses and those who are just consultants, because you can have a party consult experts A to Z and get a series of reports that are not helpful. Finally, they get to expert AA. They show expert AA, or tell him about all the earlier problems, and he comes up with a brilliant discussion or a meretricious discussion that supports the litigant and the user.

There are many instances where I would be inclined to erase the distinction as leading to a misleading analysis, but I don't have to reach that problem here. It just seems to me I have to sustain a magistrate judge, who is wholly on top of the case.

Motion to set aside the order of the magistrate judge is denied.

There is another issue --

MR. HAUSFELD: Yes, your Honor. Good afternoon. Michael Hausfeld.

Consistent with the arguments just made now by counsel for the tobacco industry, plaintiffs feel somewhat prejudiced by the fact that throughout the decades of this litigation there has been no support literally from within the industry for the positions taken by the industry in litigation about the health and safety issues comparative risks as

Burton H. Sulzer - OCR, CM, CRR

## 22

between Lite and full flavored or regular cigarettes.

As the magistrate judge said at the last hearing, there is a context in which this litigation occurs, and there are three overriding, not necessarily presumptions, but inferences which this court and the magistrate have already upheld, inferences from which the court and the magistrate have found juries can make reasonable judgments against the industry.

The first was whether or not there was fraud. There is sufficient evidence from which a jury could, on the basis of the materials produced, conclude that there was fraud.

The second, and most importantly, that that fraud was a product of a conspiracy, a conspiracy at the highest levels of the --

THE COURT: All right, let's assume. Now what has that got to do with any matter?

MR. HAUSFELD: The third portion of the context is that the fraud and the conspiracy was overlaid, permeated by litigation.

With regard to health and safety, the fraud needed to be committed at the highest levels of the company which navigated the company to positions that would not place them in exposure in litigation.

THE COURT: Assuming all of that is true, what bearing does that have?

Burton H. Sulzer - OCR, CM, CRR

## 23

MR. HAUSFELD: Who then within the company has the ability to testify on behalf of the company --

THE COURT: There's plenty of evidence that arguably would support letting it go to the jury, and I've already ruled that, in effect, you can call the witnesses, or they can call the witnesses you want and their depositions will be taken.

But these things are, at least arguably, so clear that there is no point in burdening these people until they are needed. That's the point.

MR. HAUSFELD: The exception, your Honor, is certain of the representations made by the companies, both in defense and affirmative defense of the claims against them, depend upon some basis from within the company to support, for example, the knowledge of the companies with regard to compensation, smoker compensation.

THE COURT: There is no doubt that they had knowledge. We tried cases after cases, and the people who knew the mechanics and chemistry and the physics of all of this knew about it -- at least that's arguable and there is enough to go to the jury on.

MR. HAUSFELD: Agreed.

THE COURT: So what is the point of bringing in these former -- in the main, former CEOs and burdening them further with something that really isn't contested for the

Burton H. Sulzer - OCR, CM, CRR

## 24

purpose of where we are, where the critical issue in this case is your statute of limitations and knowledge problem of the smoker?

MR. HAUSFELD: We think that goes to the problem.

THE COURT: How?

MR. HAUSFELD: Because if you're looking, for example, as how members of the public can be identified as having knowledge of compensation, one of the things that I think would be reflective of that knowledge would be what is the knowledge of the companies --

THE COURT: Let's assume they had knowledge. I think you're beating a dead horse here. That's not the issue on which your case is hanging.

MR. HAUSFELD: It's the reverse, your Honor -- I apologize -- it's the fact that the highest level of the company did not have knowledge of compensation, did not do the tests --

THE COURT: Well, whether they had knowledge or not, they had all the underlings to whom knowledge could be attributable -- and that's your position, as I understand it, and as was the position in other litigations we've had.

That's not the problem we have. So why do I want to waste time with it? That's what the magistrate judge apparently held, and it does seem to me a sensible allocation of efforts.

Burton H. Sulzer - OCR, CM, CRR

25

1  Why are you concentrating on this side issue when
2  it's not the critical issue on which your case may founder? I
3  don't understand.
4      MR. HAUSFELD: I appreciate your Honor's context of
5  this being a side issue, but to us it's not.
6      THE COURT: It's not a main issue because it's
7  highly unlikely I'm going to grant summary judgment on the
8  fact that they didn't know there was compensation.
9      After all the litigation and all the reports for
10 this purpose of summary judgment, I think at least at this
11 argument, we can assume that they had knowledge of
12 compensation; they knew more than anybody else did about it.
13 They tried to get the FDC to change their machines.
14     The material in the record is so extensive, I don't
15 know why we're bothering with this.
16     MR. HAUSFELD: If we --
17     THE COURT: That is not a summary judgment matter,
18 so why are you wasting your time with it?
19     MR. HAUSFELD: Looking at the issue of statute of
20 limitations, one was just an affirmative defense. The claim
21 again, paradoxically, is that there was no fraud, but if there
22 was that the public knew about it.
23     THE COURT: Right?
24     MR. HAUSFELD: How did the public know about a fraud
25 that is denied to this day existed?
        Burton H. Sulzer - OCR, CM, CRR

26

1      THE COURT: I don't care about that. You have to
2  deal with the knowledge of your clients and when and how and
3  what was in the public domain, what was available to them.
4  That is what we have to concentrate on.
5      So why are we doing this little dance on the side?
6  It's not entertaining at this stage of tobacco litigation.
7      MR. HAUSFELD: I apologize, your Honor, if you
8  believe it's a dance, but it's not. We didn't raise --
9      THE COURT: I'm not saying that in any derogatory
10 sense, obviously. I don't mean that you're trying to bemuse
11 the court, but it is not an issue that I'm concerned about. I
12 don't care.
13     MR. HAUSFELD: Counsel for Philip Morris -- or RJ
14 Reynolds, one of the companies, said that there's an issue of
15 what people knew about the relative safety of Lites to regular
16 cigarettes.
17     THE COURT: Exactly.
18     MR. HAUSFELD: And if that is limited to what is in
19 the public, as opposed to what they then can argue from what
20 was in the public domain as an inference to all members of the
21 public, I'm willing to go along with --
22     THE COURT: No. I'm not going to bargain about it.
23 All I'm telling you is, let's stick with the main issue before
24 me and us, and knowledge of the CEOs is not something I'm
25 interested in on a motion for summary judgment.
        Burton H. Sulzer - OCR, CM, CRR

27

1  I'm going to assume that anybody who was at all
2  responsible in the companies knew what was going on, and the
3  record is comprehensible about that. Why you we wasting time
4  with it?
5      MR. HAUSFELD: I'm at a loss because we're concerned
6  with the fact that when defense counsel make representations
7  they are broad-based and without foundation.
8      THE COURT: What representation?
9      MR. HAUSFELD: When it is represented, for example,
10 that the public knew that Lites were no safer than regular
11 cigarettes --
12     THE COURT: That is an issue.
13     MR. HAUSFELD: -- before Monograph 13.
14     THE COURT: That is an issue in the case.
15     MR. HAUSFELD: If it's an issue, then it's not an
16 issue which can be decided, as they contend at this point,
17 unless plaintiffs can disprove that.
18     THE COURT: I don't understand. You mean disprove
19 it by calling one of these executives to say the executive
20 didn't know about it?
21     MR. HAUSFELD: No.
22     THE COURT: These are the executives that got up
23 before Congress and swore that they knew that cigarettes were
24 safe.
25     MR. HAUSFELD: And what I'm just trying to avoid --
        Burton H. Sulzer - OCR, CM, CRR

28

1      THE COURT: I don't really care what they say. Your
2  problem is to prove what your clients knew and when they knew
3  it. So far as what the companies knew, that has been
4  litigated over and over again.
5      MR. HAUSFELD: Let me try it this way, your Honor.
6  Again, I apologize.
7      What they are asking in the statute of limitations
8  is that basically we prove a negative, the negative being that
9  the public did not know that there was no difference between
10 Lites and regular cigarettes and they knew it early on.
11     THE COURT: Well, I don't want to debate it with
12 you. We have gone through this over and over again. I've got
13 a magistrate who is on top of these cases. The magistrate
14 says that you will get it shortly before the person testifies,
15 and I have no reason to set aside the magistrate's ruling, and
16 I'm not going to.
17     MR. HAUSFELD: The magistrate, likewise, has said
18 that there were other people within the company that would
19 have the information that we're seeking that do go to the
20 critical issues in the pending motions --
21     THE COURT: Whatever the magistrate tells you to
22 get, you'll give them. Whatever the magistrate tells them to
23 give you, they will give it, and if they don't, then you'll
24 come before me or the magistrate, but I am not going to get
25 involved in this kind of detailed discussion when I have a
        Burton H. Sulzer - OCR, CM, CRR