UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BARBARA SCHWAB et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PHILIP MORRIS USA, INC., et al.,

Defendants.

Civ. Action No.CV04-1945 (JBW)(SMG)

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT
OF CLASS REPRESENTATIVES AND CO-LEAD COUNSEL**

**(FILED UNDER SEAL)**

provided an onset in all low tar cigarette packages that communicated the public health message of Monograph 13:

> The tar and nicotine yield numbers are not meant to communicate the amount of tar and nicotine actually inhaled by any smoker, as individuals do not smoke like the machine used in the government test method. . . . [I]f you smoke brands with descriptors such as "Ultra Light", "Light", "Medium" or "Mild," you may not inhale less tar and nicotine than you would from other brands. It depends on how you smoke.
>
> You should not assume that cigarette brands using descriptors like "Ultra Light", "Light", "Medium" or "Mild" are less harmful than "full flavor" cigarette brands or that smoking such cigarette brands will help you quit smoking.

Information for Smokers (Ex. 32). In addition, in 2002, PM USA placed an insert in major U.S. newspapers regarding light cigarettes providing similar information.[13]

In addition, PM USA filed a petition with the FTC in September 2002, requesting that the FTC reconsider its existing regulatory regime in light of Monograph 13. *See* In re Petition for Rulemaking Concerning Tar and Nicotine Testing and Disclosure (filed Sept. 18, 2002) (Ex. 33). That petition is pending.

Evaluation of the FTC Method and low yield cigarettes has continued after the publication of Monograph 13. Independent of PM USA's pending petition, the FTC has indicated that it is considering whether it should make any changes to its measurement program in light of Monograph 13. *See* FTC Press Release, Statement of the FTC's Bureau of Consumer

---

[13] *See* Links To Sources Of Information About Quitting Smoking at 8-9 ("A smoker should not assume that brand descriptors such as 'light' or 'ultra light' indicate with precision either the actual amount of tar and nicotine inhaled from any particular cigarette, or the relative amount as compared to competing cigarette brands.") (Ex. 35). PM USA also provides similar information on its website and runs extensive TV and radio campaigns directing consumers to its website. *See* http://www.philipmorrisusa.com/en/health_issues/low_tar_cigarettes.asp (Ex. 36). In addition, PM USA removed the statement "lowered tar and nicotine" from its packages of Marlboro Lights.

Protection on the National Cancer Institute's Report on Cigarette Testing Method (Nov. 27, 2001) (Ex. 34). Public health authorities have also continued to evaluate the issue and have come to varying conclusions. English Report ¶¶ 105-115. For instance, in 2004, the World Health Organization's International Agency for Research on Cancer (IARC) issued a report "conclud[ing]" that "changes in cigarettes since the 1950s have probably tended to reduce the risk for lung cancer associated with the smoking of particular numbers of cigarettes at particular ages." English Report ¶ 115; English Ex. 98; Thun Depo. at 286-87; Benowitz Depo. at 37.[14]

## II. Class Representatives

This action was brought in May 2004. *See* Summons and Compl. (filed May 11, 2004). Discovery has revealed that the current named plaintiffs purchased and smoked light cigarettes under different circumstances relating directly to the merits of their claims. For example:

***Continued Purchases Of Light Cigarettes.*** Three of the six class representatives continue to purchase light cigarettes even today – notwithstanding their participation in this lawsuit and their supposed belief that light cigarettes do not deliver less tar and nicotine and are not safer. For example, Ms. Bishop says that she has concluded that "the wording of lights" is "misleading," Deposition of Barbara Bishop at 185 ("Bishop Depo.") (Ex. 38), and that light cigarettes are actually "more dangerous" than full-flavor cigarettes. *Id.* at 184-86. Nevertheless, she continues to smoke light cigarettes. *Id.* at 192; *see also* Deposition of James Lee Sherman at 11 ("Sherman Depo.") (Ex. 39) (still smokes light cigarettes); *id.* at 19-20 (believes light cigarettes are no less harmful than full-flavor cigarettes); Deposition of Fergal Furlong at 10

---

[14] Similarly, in a book chapter published last year, noted epidemiologist Sir Richard Peto concluded that there is a "moderate reduction in the hazard per smoker" associated with a "reduction in the machine-measured tar delivery per cigarette." Peto & Lopez, *The Future Worldwide Health Effects Of Current Smoking Patterns* at 284, in TOBACCO AND PUBLIC HEALTH: SCIENCE AND POLICY (2004) (Ex. 37).

("Furlong Depo.") (Ex. 40) (still smokes light cigarettes); *id.* at 18-19, 99-100 (believes the term "light" to be a misrepresentation). The remaining three class representatives either quit smoking or switched to a different brand of cigarettes years before this lawsuit was filed. *See* Deposition of Patricia Scocozza at 148-49 ("Scocozza Depo.") (Ex. 41) (quit smoking in 2000 when she suffered a heart attack);[15] Deposition of Barbara Schwab at 12, 67, 108-09 ("Schwab Depo.") (Ex. 42) (switched to ultra-light cigarettes in 1995; she prefers the taste of her ultra-light brand); Deposition of David Rogers at 37-38 ("Rogers Depo.") (Ex. 43) (switched to regular cigarettes in 2000 or 2001). None switched to a full-flavor cigarette upon learning of the alleged fraud.[16]

***Reasons For Purchasing Light Cigarettes.*** As would be expected, plaintiffs' counsel hand-picked six class representatives (out of millions of potential class members) who testified that they originally believed light cigarettes to be safer. But even these representatives acknowledged that there were other reasons to purchase light cigarettes. Ms. Scocozza, for instance, testified that she thought Marlboro Lights had a "better taste" and that the fact that her friends were smoking them contributed to her decision to switch to Marlboro Lights. Scocozza Depo. at 74, 128, 148. Mr. Sherman agreed that he liked the taste of Marlboro Lights. Sherman

---

[15] Ms. Scocozza's doctors informed her that her heart attack was caused by smoking. Scocozza Depo. at 157. Notably, she does not seek to recover for any personal injuries related to her heart attack. *See infra* at ___ (named plaintiffs are inadequate because they have split claims).

[16] Similarly, in another case, a Marlboro Lights smoker and potential absent member of the class proposed here testified that she still smokes light cigarettes today, even though she concluded that they were not safer by the mid-1990s. Deposition of Emily Zimmatore at 49-53, *Piscetta v. Philip Morris USA Inc.*, No. 03VS048475J (Ga. Super. Ct. June 9, 2005) ("Zimmatore Depo.") (Ex. 44). Indeed, she explained that she threw away and did not even read the onsert that was included on packages of Marlboro Lights advising of the potential for compensation, because she did not believe it "would have told [her] anything that [she] didn't already know." *Id.* at 59. She explained further that, even if she had read the information in the onsert, she would have continued to smoke light cigarettes. *Id.* at 61. Notwithstanding her belief that light cigarettes are not safer, she would be opposed to PM USA taking Marlboro Lights off the market: "[T]his is what I smoke. This tastes good to me. I like this. So no, you can't take them off the market." *Id.* at 82.

Moreover, even years before filing this lawsuit, some of the representatives purchased light cigarettes despite full awareness that they may have been compensating and, as a result, getting more tar and nicotine. For example, Mr. Rogers conceded that he *intentionally covered* the ventilation holes, thereby increasing the amount of tar and nicotine he received. Rogers Depo. at 149; *see also* Burns Depo. at 239 ("some" smokers intentionally cover ventilation holes with tape); Henningfield Depo. at 242 ("some" class members are aware that they are compensating); Benowitz Depo. at 171 (some smokers recognize that they are taking deeper or more frequent puffs). A class member like Mr. Rogers cannot show that he relied on the purportedly misleading communication in the word "light" when he intentionally set out to defeat the design that made light cigarettes yield lower tar and nicotine levels.

***Survey data.*** There is overwhelming survey data indicating that at least a majority of light cigarette smokers (1) did *not* believe that light cigarettes are safer than full-flavor cigarettes or (2) purchased light cigarettes for reasons entirely unrelated to tar and nicotine yields or health. These surveys are based on different populations, provide different percentage estimates, and are not specifically tailored to answer the issue here – the extent to which smokers relied on the descriptor "light" in their decision to purchase those cigarettes. Nevertheless, the surveys are uniform in one critical respect: *they all show tremendous variability in consumers' beliefs about and reasons for purchasing light cigarettes.*[37]

Plaintiffs' experts acknowledge that no survey supports the opinion that class members all believed that their brands of light cigarettes are safer than other cigarettes. *See, e.g.*, Cohen

---

[37] Plaintiffs do not contend that surveys can establish any percentage of class members that relied upon defendants' alleged misrepresentations when purchasing light cigarettes. To the contrary, plaintiffs' experts opine that surveys cannot produce such percentages and that they cannot be quantified. *See, e.g.*, Cohen Depo. at 54-56, 76.

38

Report at 14; Cummings Depo. at 161-62, 171-75, 180-89, 195-98; Cohen Depo. at 96, 229; Pollay Depo. at 198-204. Plaintiffs' expert Dr. Cummings agrees that his own studies show that:

- "the smoking public was divided about half and half" and thus "there was no predominant view on whether all cigarettes are equally hazardous or some cigarettes are more hazardous," Cummings Depo. at 192;

- "a majority of smokers did not believe that light cigarettes are less harmful," *id.* at 197;

- "among light smokers, approximately 40 percent" did not believe (or did not know) that reductions in tar "reduced the risk of smoking," *id.* at 187;

- "a majority of American smokers did not believe that light cigarettes give less tar," *id.* at 197;

- "almost two-thirds of smokers disagreed" that "low nicotine means less addictive," *id.* at 182, and a "majority of smokers" believed that light cigarettes were as addictive as full-flavor cigarettes, *id.* at 189.

*See also* Dennis Depo. at 83 (his surveys found that some light smokers believed that light cigarettes "were not less harmful").

These concessions are further supported by the report of Dr. Stewart, defendants' marketing expert. In particular, Dr. Stewart collects the survey data showing that consumers have different beliefs about and reasons for purchasing light cigarettes as Exhibit 2 to his report. For example:

*Smokers' Reasons for Purchasing Low Tar and Light Cigarettes*

- A 1976 study found that when asked for reasons why they chose low tar cigarettes, most people offered a reason related to the cigarette's taste. Stewart Aff. ¶ 19A; Stewart Ex. 2-J(I).

- A 1998 Gallup survey found that only 11% of light and ultra light smokers gave improving health as a reason they smoked their brand. In contrast, 33% of respondents cited taste as a reason. Stewart Aff. ¶ 28; Stewart Ex. 2-Y.

- A 1999 survey found that the most commonly reported reason (81% of respondents) for choosing light cigarettes was taste. Stewart Aff. ¶ 27; Stewart Ex. 12.

39

*Beliefs About Low Tar and Light Cigarettes*

- A 1975 survey by the U.S. Department of Health, Education & Welfare found that approximately 41% of current smokers said that all cigarettes are probably about equally dangerous. Stewart Aff. ¶ 53; Stewart Ex. 2-K.

- A 1986 survey by the CDC found that only 26% of light smokers think their brand is "less hazardous." Stewart Aff. ¶ 53; Stewart Ex. 20(1).

- A 1993 Gallup survey found that 42% of smokers "disagree[d]" or "strongly disagree[d]" that smoking low tar cigarettes is safer. Stewart Aff. ¶ 53; Stewart Ex. 2-T.

- A 1999 survey of light cigarette smokers found that only 31% believed that light cigarettes reduced the risk of having health problems as compared to regular cigarettes. Stewart Aff. ¶ 54; Stewart Ex. 2-CC.

- A 2002 survey of smokers found that only approximately 28% of smokers agreed that "light cigarettes are less harmful than regular cigarettes." Stewart Aff. ¶ 54; Stewart Ex. 2-NN.

***Public dissemination of information about light cigarettes***. The public has also been exposed to repeated, explicit warnings about the health risks of smoking light cigarettes, which makes it unsustainable for plaintiffs simply to assume that consumers universally believed that light cigarettes were safer due to defendants' use of the word "light." All cigarettes – regardless of their tar and nicotine yields – have carried identical government-mandated health warnings during the entire class period. 15 U.S.C. § 1333; *see also* English Report ¶ 64; Pollay Depo. at 183. These identical warnings suggest that all cigarettes pose identical health risks. Moreover, the media widely disseminated warnings to smokers that light cigarettes could be as harmful as full-flavor cigarettes or even more harmful to the extent smokers compensated. *See generally* Schaller Aff. ¶¶ 23-46; *see also* Benowitz Depo. at 63; Proctor Depo. at 304-08. For example:

- In July 1976, *Consumer Reports* published an article reporting on concerns that low yield cigarettes "may well do more harm than good," because smokers could find ways to "compensate," such as "smoking a cigarette to a shorter butt, increasing the size or frequency of each puff, drawing the smoke deeper into the

40

lungs, or smoking more cigarettes." Schaller Aff. ¶ 28. *Consumer Reports* provided similar information in a 1983 article, warning that smokers of low yield cigarettes "change the way they smoke, a phenomenon called compensation." Schaller Aff. ¶ 33.

- A 1976 article in the *Los Angeles Times* reported that low yield cigarettes might pose an "additional hazard to health . . . because smokers may be taking more and deeper puffs in an effort to get their nicotine fix." Schaller Aff. ¶ 29. The article explained that smokers who switched to low yield brands would be better off only if they consumed their new cigarettes "at the same rate as they did the higher-tar brands." *Id.*

- A 1982 *Miami Herald* article warned that, because of compensation, smokers who switched to low yield cigarettes in the hopes of reducing their health risks were "wasting their money and continuing to endanger their lives." Schaller Aff. ¶ 35.

- A 1987 *New York Daily News* article advised that smokers of low yield cigarettes "may be fooling themselves if they think they are lowering their health risk," based on a study finding that low yield smokers tend to "smoke more of them, inhale more deeply and smoke them to a shorter butt." Schaller Aff. ¶ 38.

- A 1997 NBC news report explained that smokers of light cigarettes lived in a "fools paradise" and were only "fooling themselves" in light of compensation. Schaller Aff. ¶ 44.

***No market evidence of reliance.*** If smokers were relying on the "light" descriptor as a representation of lower tar and nicotine deliveries, one would expect to see a decline in sales or price after the alleged "truth" was revealed. *See, e.g., Semerenko v. Cendant Corp.*, 223 F.3d 165, 178-79 (3d Cir. 2000) (under the fraud-on-the-market theory, "the presumption of reliance may be rebutted by showing that the market did not respond to the alleged misrepresentations"). But that never happened. To the contrary, the undisputed evidence here is that, since Monograph 13 was released and its conclusions about light cigarettes were "widely" publicized,[38] there was

---

[38] Plaintiffs' expert Dr. Burns concedes that the information in Monograph 13 was disseminated "widely" and "has had an affect on the understanding of the people who use the product." Burns Depo. at 124; *see also* Schaller Aff. ¶¶ 47-48. For instance, the *Los Angeles Times* reported on Monograph 13 as concluding that low tar and light cigarettes are "worthless as a way to reduce health risks to smokers." Schaller Aff. ¶ 47. As a result, Dr. Dennis concedes

Footnote continued on next page