# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO  44114-1190

TELEPHONE: (216) 586-3939 • FACSIMILE: (216) 579-0212

Direct Number:  (216) 586-3939
tgrossman@jonesday.com

JP003870:mje
629000-020638                    July 19, 2006

**BY ECF AND FACSIMILE**

The Honorable Jack B. Weinstein
United States District Judge
United States District Court for the Eastern
  District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

The Honorable Judge Steven M. Gold
United States Magistrate Judge
United States District Court for the Eastern
  District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

              Re:    Schwab, et al. v. Philip Morris USA, *et al.*
                     No. 04 Civ 1945 (JBW)(SMG)

Dear Judges Weinstein and Gold:

        We write to request relief in connection with two expert reports filed by plaintiffs in violation of the Court's scheduling orders.  On July 14, 2006, without first seeking leave of the Court and in contravention of the Case Management Order and a November 21, 2005 order by Judge Gold, plaintiffs filed rebuttal reports for two of their experts who support plaintiffs' request for certification of their multi-billion dollar damage claim:  Dr. John Hauser and Dr. John Beyer.  The stated purpose of both reports was to "respond to criticisms" made by defendants' experts nearly two months ago.  In fact, both experts offer entirely new, previously undisclosed opinions and new statistical analyses in support of those opinions, backed by data and computer runs that plaintiffs have never disclosed to defendants.  Neither the Case Management Order nor the carefully constructed schedule for completing discovery and briefing on the pending motions allows plaintiffs to submit rebuttal expert reports.  Indeed, the schedule in this case was designed to protect the parties from exactly this kind of last-minute disclosure of new opinions based on new analyses.

        Even on their face, the new reports have gaping holes.  They continue to make no effort to determine the percent of class members who relied on the alleged fraud or are barred by the

The Honorable Jack B. Weinstein, The Honorable Steven M. Gold
July 19, 2006
Page 2

statute of limitations, as this Court made clear plaintiffs must do. They make no effort to determine the source of proposed class members' beliefs about light cigarettes, nor the extent to which the word "light," rather than other communications, such as the publication of FTC-required tar and nicotine content, was the driver of any consumers' decisions. They conflict with other plaintiffs' experts' testimony. And so much more. The Court should simply strike the rebuttal reports in their entirety, and rule that they will not be considered or used in *any manner* in this case—in connection with the pending motions or at any time in the future. Enough is enough. The time has come to halt plaintiffs' consistent flouting of this Court's orders.

If the Court does not make such an unequivocal ruling, however, defendants should be allowed a meaningful opportunity to respond to the new opinions offered by plaintiffs. If the Court allows plaintiffs to submit these rebuttal reports in violation of its scheduling orders, defendants must have a full and fair opportunity to respond. It would be unjust and fundamentally unfair to allow plaintiffs to try to obtain an advantage before this Court as a result of their blatant violation of the Court's orders. Unless the Court strikes these rebuttal reports unequivocally, and allows for no possibility that they will be considered or used in this case at any time, the existing schedule should be adjourned so that defendants can (i) have their experts analyze the new opinions, supporting computer code, data, and analyses in the rebuttal reports; (ii) depose Dr. Hauser and Dr. Beyer concerning their rebuttal reports, and (iii) have defendants' experts submit responsive reports to Drs. Beyer and Hauser. Also, because the opinions offered by Drs. Beyer and Hauser bear directly on the *Daubert* motions to exclude their testimony, as well as many of the remaining motions that depend on them, the Court should adjourn the deadline for defendants to submit their reply briefs until after the above-requested discovery has been completed. This disruption to the schedule need not be long, because there are only two additional reports by plaintiffs' experts at issue.

We respectfully request that, in light of the imminent August 14 hearing and the July 28 due date for defendants' reply briefs, the Court schedule a telephone conference to resolve this matter at the Court's earliest available time.

\* \* \*

Plaintiffs' violation of the current scheduling order is all the more egregious because it is part of a larger pattern of ignoring Court orders and arrogating to themselves the decision of setting the schedule in this case. Last fall, the pending motions for class certification and summary judgment were fully briefed and ready to be decided. Plaintiffs submitted dozens of reports in February 2005, and, one month later, they filed a 130-page opening brief in support of their motion for class certification. Before defendants filed their opposition brief in July 2005, they submitted expert reports in response to the submissions by plaintiffs' experts. All of this was done in accordance with a detailed Case Management Order. In contravention of that order, however, plaintiffs did not disclose Dr. Hauser's report and eight other expert reports until they

The Honorable Jack B. Weinstein, The Honorable Steven M. Gold
July 19, 2006
Page 3

submitted their class certification reply brief on August 22, 2005—even though plaintiffs had
retained Dr. Hauser by no later than mid-February 2005.  *See* 2/16/05 e-mail from Shelley
Schusshein to John Hauser (stating that a "conjoint study" to support plaintiffs' damage theory
"had been sold" and asking Dr. Hauser to reserve time for an August 2005 *Daubert* hearing).  By
submitting Dr. Hauser's report with their reply brief, plaintiffs plainly hoped to deprive
defendants of a meaningful opportunity to respond to it.  But the Court refused to consider Dr.
Hauser's report (and the other tardy reports submitted by plaintiffs) in connection with class
certification.

    After oral argument, however, the Court ruled that it would delay decision of the motion
for class certification and certain other motions to allow for discovery of, among other experts
that plaintiffs were late in disclosing, Dr. Hauser.  The Court directed that this discovery was to
proceed expeditiously and in accordance with a schedule to be set by Judge Gold, and
subsequently gave plaintiffs an opportunity to revise their expert reports for both Dr. Hauser and
Dr. Beyer.  *See* 9/21/05 Order at 2 (Dkt. # 752) ("These new materials proffered by plaintiffs
bear on at least some of the critical pending motions, which cannot be decided on their merits
without giving the parties a chance to depose these potential witnesses and present countering
information.").  Indeed, the Court gave plaintiffs a second chance with Dr. Beyer after ruling that
the opinions expressed in his first two reports were "inconsistent with common sense" and had
"no survey or other acceptable data to support" them.  *See* 10/4/05 Mem. & Order on *Daubert*
Issues at 6 (Dkt. # 763)

    A nearly one-year delay ensued.  After getting frustrated by plaintiffs' repeated failures to
meet Court-ordered deadlines for completing discovery, Judge Gold ultimately resorted to asking
plaintiffs what schedule they would follow to complete disclosure of their expert reports:

> THE COURT:  . . . .  I'm at the point where I feel as though
> the deadlines we set are not followed.  And I'm loathe to
> set more, only to set us up for additional frustrating failures
> . . . .  So here's what I think we'll do for today's purposes,
> subject to hearing from the defendants whose patience I do
> appreciate. . . .  [T]he plaintiffs must understand by now
> that it is my unequivocal goal to have the materials and
> witnesses they intend to rely upon in connection with the
> pending motions identified and discovered before any other
> events occur in this case. . . .  So what schedule would the
> plaintiffs propose to accomplish these goals?

(10/26/05 Tr. 9:11-10:16.)  Plaintiffs' counsel assured Judge Gold that they would complete their
expert disclosures for Dr. Hauser, Dr. Beyer, and three other experts by mid-December 2005.
(10/26/05 Tr. at 11:12-15.)  Judge Gold then ordered that the reports for Drs. Beyer and Hauser

The Honorable Jack B. Weinstein, The Honorable Steven M. Gold
July 19, 2006
Page 4

were to be produced by December 19, and that, as of that date, *all* of plaintiffs' expert reports were to be produced.  *See* 11/21/05 Minute Order  ("Plaintiffs will produce expert reports for Hauser, Bayer, Byrnes, Proctor and Kinsella by December 19. All other reports have already been produced.").

Plaintiffs filed reports for Dr. Hauser and Dr. Beyer on December 19, and the parties carefully worked out a Court-ordered schedule according to which discovery of plaintiffs' experts was to be complete by March 31, responsive reports by defendants' experts were due May 26, opening briefs on the pending motions were due June 9, oppositions by July 14, and reply briefs by July 28.  *See* 4/25/06 Minute Order (adopting schedule set forth in 4/25/06 Ltr. from Judy Bernstein-Gaeta to The Honorable Steven M. Gold (Dkt. # 871)); *see also* 11/21/05 Minute Order.  This detailed schedule did not allow for plaintiffs to submit any rebuttal or reply reports by their experts.  Nor did the Case Management Order allow for plaintiffs to submit rebuttal reports.  Indeed, though the parties' joint submissions to the Court regarding scheduling flagged several issues on which they did not agree—including whether reply briefs would be allowed (defendants proposed and the Court ultimately ordered them, but plaintiffs did not want the Court to get any reply briefs)—plaintiffs did not request in *any* of these joint submissions that they be permitted to submit rebuttal expert reports.  *See* 3/8/06 Ltr. from Judy Bernstein-Gaeta to The Honorable Steven M. Gold (Dkt. # 845); 4/25/06 Ltr. from Judy-Bernstein-Gaeta to The Honorable Steven M. Gold (Dkt. # 871).

That did not stop plaintiffs from submitting two rebuttal reports by ambush, however.  On June 9, in accordance with the agreed-upon briefing schedule, defendants made *Daubert* motions to exclude the testimony of, among other experts proffered by plaintiffs, Dr. Hauser and Dr. Beyer.  Plaintiffs opposed these motions on July 14.  But, incredibly, despite the nearly one-year delay to allow plaintiffs' experts to formulate their opinions and defendants to respond to those opinions, plaintiffs' oppositions are based almost entirely on previously undisclosed and undiscovered opinions.  As would-be "exhibits" to their oppositions to defendants' motions to exclude Dr. Hauser and Dr. Beyer, plaintiffs submitted lengthy "affidavits" that purported to "respond to criticisms" directed at their reports by defendants' experts and "clarify" the "structure," "soundness," and "robustness" of their opinions.  *See* 7/11/06 Hauser Rebuttal Rept. ¶ 2 (Dkt. # 938, Ex. 1 (in four parts)), 7/14/06 Beyer Rebuttal Rept. ¶ 1 (Dkt. # 933, Ex. 1). Neither these rebuttal reports, nor the analyses contained in them, had been previously disclosed to defendants.  And plaintiffs have still not disclosed any of the data, computer programs, and calculations that underlay these new analyses.

While plaintiffs were not permitted to submit rebuttal reports in any form under the Court's orders, it is important to emphasize that these two reports do not simply respond to defendants' experts and explain previously disclosed opinions.  They are wholly new analyses based on new statistical methodology.  By way of example only, Dr. Beyer's rebuttal report uses a new methodology—not disclosed in either of the two previous reports—"to identify the sub-

The Honorable Jack B. Weinstein, The Honorable Steven M. Gold
July 19, 2006
Page 5

periods [for what he calls the 'price impact of light cigarettes'] and estimate[] the price
regression using these periods." (Beyer Rebuttal Rept. ¶ 13.) He also undertakes an entirely
new analysis of "the consumption of cigarettes over the 1955 to 2003 period" to support a
previously undisclosed model—which contradicts the testimony of another plaintiffs' expert—
"to predict the but-for light cigarette consumption from 1971." (*Id.* ¶¶ 14-18.) Dr. Beyer's
rebuttal report also disclosed, for the first time in this case, several other regression analyses that
he has done to support his opinions and eight charts that reflect analyses for which plaintiffs have
not disclosed the underlying data used by Dr. Beyer.

        Dr. Hauser's rebuttal report is 85 pages, including three appendices and more than ten
tables reflecting new analyses and calculations. Among other things, Dr. Hauser submits a
previously undisclosed analysis whereby, according to plaintiffs, he "discovered" that his
estimates of "the partworth values for health risks *do not vary by brand*." Pls.' Hauser Br. at 23
(emphasis in original); *see also* Hauser Rebuttal Rept. ¶¶ 15-25 & tbls. 1-2. Dr. Hauser also
undertakes to "re-weight" data by demographic variables to arrive at new "weighted"
calculations to support his opinions. (Hauser Rebuttal Rept. ¶¶ 25-28 & tbl. 3.) And he
performs new analyses that purport to determine whether the "professional survey takers" that he
used skewed the results of his conjoint analysis. (*Id.* ¶¶ 39-40 & tbl. 5.) He has also performed
several detailed analyses that purport to "correct" analyses done by one of defendants' experts.
(*Id.* ¶¶ 61-67 & tbls. 7-9.)

        Just as they did during the last round of briefing on class certification, plaintiffs sprung
these new reports on defendants *after* the close of discovery and on the eve of the scheduled
August 14 argument on the pending motions. The Court has expressly told plaintiffs, in no
uncertain terms, that *if* plaintiffs were permitted to submit rebuttal reports (plaintiffs were not,
according to the schedule that Judge Gold ultimately ordered), defendants would have the
opportunity to take discovery on those rebuttal reports:

> THE COURT: Those are going to be your experts, or their
> experts?
>
> MR. HAUSFELD: They will be our experts, but in rebuttal
> to the expert reports that were submitted by the defendants
> in opposition.
>
> THE COURT: *If you are going to put in new reports, they
> are going to take their depositions.*
>
> MR. HAUSFELD: We agree for purposes of the record,
> although I'm still unclear, normally, for motions practice, if
> we submit a report, they submit an opposition, plaintiffs are

The Honorable Jack B. Weinstein, The Honorable Steven M. Gold
July 19, 2006
Page 6

> normally permitted to respond to those reports with some
> new reports by experts saying where the areas of
> disagreement are?
>
> THE COURT:  ***If you are going to submit new reports,***
> ***they can take a new deposition on those new aspects.***

(11/7/05 Tr. at 4-5, emphasis added.)  As the Court told defendants' counsel, "You're entitled to
discovery of anything that they are going to rely on."  (*Id.* at 20:14-15.)

Plaintiffs, however, continue to ignore and violate the Court's orders and refuse to accept
any direction from the Court.  As we describe in more detail in the pending motions, plaintiffs
have disregarded the Court's repeated rulings that it will not accept plaintiffs' notion that all
members of the putative class of tens of millions of smokers universally relied on the alleged
fraud in purchasing light cigarettes.  Now, after representing to Judge Gold that they would
finish all of their expert disclosures by December 19, 2005, plaintiffs have submitted rebuttal
reports in violation of Judge Gold's order and in contravention of Judge Weinstein's express
directive that defendants must be allowed to take discovery of any rebuttal reports plaintiffs
might be permitted to file.

The rebuttal reports that plaintiffs submitted for Dr. Hauser and Dr. Beyer on July 14
should therefore be stricken and not be used or invoked in any manner in connection with the
pending motions or at any later stage of this case.  If the Court does not unequivocally strike
these rebuttal reports, however, the scheduled August 14 hearing should be adjourned so that
defendants may (i) have their experts analyze the new opinions and supporting computer code,
data, and regression analyses in the rebuttal reports; (ii) depose Dr. Hauser and Dr. Beyer on
their rebuttal reports, (iii) submit expert reports responsive to plaintiffs' rebuttal reports; and (iv)
submit their reply briefs on all of the pending motions only after defendants complete discovery
of plaintiffs' rebuttal reports and defendants' experts respond to plaintiffs' rebuttal reports.

Unlike the last time when plaintiffs submitted nine additional expert reports on the eve of
the September 2005 class certification hearing—and five reports thereafter in December 2005—
this time plaintiffs have at least limited the scope to only two reports in violation of Judge Gold's
scheduling orders.  Accordingly, if the Court does not strike plaintiffs' rebuttal reports
unequivocally, we respectfully submit that only a short adjournment to the schedule, far shorter
than the one-year delay occasioned by plaintiffs' expert submissions in August and December
2005, will be necessary to allow defendants a full and fair opportunity to respond to plaintiffs'
new submissions.

The Honorable Jack B. Weinstein, The Honorable Steven M. Gold
July 19, 2006
Page 7

We look forward to a conference with the Court to resolve this matter.

Respectfully submitted,

*Ted Grossman*

Theodore M. Grossman

cc:    All Counsel of Record (by ECF and e-mail)